Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JINDI OU; STEADY STREAM, INC.;<br>MIZUMI BUFFET; LUCY CHEN; and<br>DOES 1-10,<br><br>　　　　Defendants. | Case no. 3:23-cv-1833-AR<br><br>DEFENDANTS JINDI OU,<br>STEADY STREAM, INC.,<br>MIZUMI BUFFET, AND LUCY<br>CHEN'S MOTIONS FOR<br>SUMMARY JUDGMENT<br>UNDER FED.R.CIV.P. 56(a);<br>MEMORANDUM OF POINTS<br>AND AUTHORITIES IN<br>SUPPORT<br><br>Oral Argument Requested<br><br>Case filing date: December 6, 2023<br>Trial date: TBD |

## MOTION

Defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen,

1

by and through counsel, hereby each separately move for summary judgment against each and every claim for relief in plaintiff's <u>Complaint,</u> such motions being brought pursuant to Fed.R.Civ.P. 56(a). These motions are based on the accompanying introduction, applicable standard of review, statement of material facts, legal argument, conclusions of law, memorandum of points and authorities, on the pleadings previously filed in this action by all parties, and on any oral argument permitted on the motions.

CERTIFICATION OF CONFERRAL

These motions are made following numerous good faith effort by defense counsel to consult with plaintiff's counsel pursuant to LR 7-1(a), including more than one attempt to discuss with plaintiff's counsel each claim that is the subject of the proposed motions pursuant to LR 7-1(a)(2), which first such conference took place by telephone on October 5, 2024 as well as through significant follow-up e-mail correspondence. Pursuant to LR 7-1(a)(1)(A), the parties were unable to reach a resolution which would have eliminated the necessity for these motions and a hearing on them.

INTRODUCTION

This case involves a *pro se* plaintiff's claim that he was denied "proper meal service" by four separate defendants, who together operate a local Chinese buffet restaurant. The core incident involved the defendant bringing his untrained pet dog

into defendants' restaurant, the dog then standing with its head up and leaning onto the buffet counter to try to get at food in the buffet, and the defendants informing him that the dog was too close to the food and asking him to keep the dog at his table.

Plaintiff has specifically identified his claims for relief via a list of five "counts", each identifying a purportedly different legal theory regarding the core event. The five are:

Count #1: "Negligence"

Count #2: "Gross negligence"

Count #3: "Violations of the Americans with Disabilities Act"

Count #4: "ADA Violation – Failure to Accommodate"

Count #5: "Intentional Infliction of Emotional Distress"

Plaintiff has the burden of showing a valid factual and legal basis for each and every claim for relief he has alleged in order to prevail on such claims against each individual defendant, yet plaintiff lacks sufficient facts or law to proceed on any of the claims against any of the named defendants and for that reason cannot prevail on any claim that has been pled.

It is critical to note at the outset that all five of the claims at issue are asserted generically against "defendants" as a group, and no allegation identifies which specific defendant in particular – Jindi Ou, Steady Stream, Inc., Mizumi

Buffet, or Lucy Chen – purportedly engaged in any conduct themselves

individually. Each defendant therefore brings a motion on their own behalf as

separate individuals. Since the separate motions share the same procedural basis,

statement of facts, and legal arguments, and are all brought under the same federal

rule with the same supporting affidavits, then solely for purposes of convenience

and judicial economy the motions are filed as a single document, but each

defendant asks for a ruling on each motion as applicable to each defendant as a

separate party.

## APPLICABLE STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is

no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To defeat a motion for summary judgment, denials are not enough; the

responding party must actually present admissible evidence sufficient to establish

any of the elements that are essential to the moving party's case and for which that

party will bear the burden of proof at trial. See generally, Taylor v. List, 880 F. 2d

1040, 1045 (9th Cir. 1989).

The Court may grant summary judgment if the motion and supporting

materials, including any facts considered undisputed, show the movant is entitled

to summary judgment and if the responding party fails to properly address the

moving party's assertions of fact as required by Rule 56(c). See Fed. R. Civ. P.

56(e). The responding party cannot point to mere allegations or denials contained

in the pleadings. It is not enough for the non-moving party to produce a mere

"scintilla" of evidence. Celotex Corp., at 252. Instead, the responding party must

set forth, by affidavit or other admissible evidence, specific facts demonstrating the

existence of an actual issue for trial. See KRL v. Moore, 384 F. 3d 1105, 1110 (9th

Cir. 2004).

### STATEMENT OF MATERIAL FACTS

The following set of 19 undisputable material facts are all that is required for

the Court to sufficiently determine these motions. The facts are taken from the

sworn Affidavit of Lucy Chen In Support, Etc., and from the sworn Affidavit of

Geordie Duckler In Support, Etc., both documents being filed contemporaneously

with and in support of the motions.

1.      Defendants' business is a highly reputable, clean and healthy,

professionally run, and well-established local Chinese buffet restaurant in Tigard,

Oregon. See, Affidavit of Lucy Chen In Support, Etc.

2.      Plaintiff was a "regular" at defendants' restaurant who had been a

customer three to four times a month for most months over the last six years. Every

time plaintiff had come into the restaurant, he had acted like he was at home, he had been treated very well and in a friendly and respectful fashion, and the staff knew exactly which table he preferred and what drink he liked to order. Id.

3.    The majority of times plaintiff had come into the restaurant he would bring the same gold colored pet dog with him, an animal which simply wears a collar with a leash attached and which usually sits under or near the table where plaintiff eats. The dog always walks behind him and never leads him anywhere. Nothing about the animal indicates in any manner that it is specially trained nor does it wear any vest or other signifying emblem, badge, or device indicating it is anything other than simply a person's pet, which is exactly what it acts like throughout every visit, including on the date plaintiff has identified as the date of the incident on which his Complaint is based. Over the course of six years of plaintiff being at the restaurant with his dog, plaintiff had never indicated or mentioned to any staff member that the dog was a service or assistance dog. Id.

4.    On March 4, 2022, the day when plaintiff came into the restaurant and the day which he refers to in his lawsuit as the date of the incident, he arrived around 2:00 p.m. as usual while defendant Lucy Chen was assisting a customer with their payment. Id.

5.    Before Ms. Chen had a chance to greet him like she normally would, plaintiff walked straight to the hot food counter with his dog to get food. Id.

6.      As plaintiff was helping himself to food from the buffet, another

customer noticed plaintiff's dog standing with its head up, leaning directly on the

buffet counter, sniffing a tray of spring rolls. The concerned customer informed the

staff. Id.

7.      One of the staff members then said to plaintiff that a customer said his

dog was too close to the food. A different customer then approached Ms. Chen and

noted that the dog's head was still on the buffet counter. Id.

8.      When Ms. Chen turned around, she saw that the dog's head was

indeed on the food counter, almost as high as a child of five or six right where the

food was. She immediately walked over to plaintiff and politely told him that his

dog was too close to the food, and that some other customers had complained. She

asked him if he could simply keep the dog under the table like he usually did. Id.

9.      Plaintiff gave no verbal response to her statement and simply took his

dog back to his seat. Id.

10.    Out of concern for the customers' health and hygiene, Ms. Chen then

arranged for the chef to throw away all six trays of food and remake them. Instead

of sitting down to eat, however, plaintiff then immediately walked over to the sushi

counter with his dog. As he passed by, Ms. Chen then offered to hold his dog while

he got some sushi. He ignored her completely, didn't even make eye contact, and

mumbled something under his breath as he walked away, which she couldn't make

out. <u>Id</u>.

11.    Plaintiff walked by the food again with his dog, stopping briefly to chat with another customer for about five minutes before finally leaving the restaurant. Throughout his entire visit, even when Ms. Chen spoke directly to him, plaintiff never once looked at her or said a single word. From the moment he entered to when he left, it couldn't have been much more than ten to fifteen minutes. <u>Id</u>.

12.    Defendants never ordered plaintiff to leave the restaurant or to take the dog out of the restaurant. Defendants never commanded or instructed or demanded of plaintiff anything in any fashion. To the contrary, defendants encouraged plaintiff to stay and enjoy his meal with his dog and asked him simply to refrain from allowing his dog to try to get food directly off the buffet for health and hygiene reasons. <u>Id</u>.

13.    Throughout the March 4th visit, no defendant or agent made any physical contact with plaintiff's dog or with plaintiff himself, nor did any defendant or agent of defendant expose plaintiff or plaintiff's dog to any risk of harm in any manner. <u>Id</u>.

14.    Over the course of six years of plaintiff having been at the restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, it has always been clear that no work or tasks have been or are ever being

performed by plaintiff's dog at all, much less any work or tasks directly related to any disability of plaintiff's. Id.

15.    At no time over the course of six years of plaintiff being at the restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog ever a) assisted plaintiff with vision issues or navigation problems; b) alerted plaintiff to the presence of people or sounds; c) provided non-violent protection or rescue work; d) pulled any wheelchair or other device; e) assisted plaintiff during any seizure or episode; f) alerted plaintiff to the presence of allergens or toxins; g) retrieved items such as medicine or other objects for plaintiff; h) provided any physical support or assistance with any mobility, balance, or stability issues plaintiff has had; or i) assisted plaintiff with any psychiatric or neurological disability by preventing or interrupting impulsive or destructive behaviors. Id.

16.    At no time over the course of six years of plaintiff having been at the restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog shown any sign whatsoever of being specially trained to assist plaintiff with any disability and it is clearly apparent that the animal is not trained in that or in any respect. Id.

17.    After plaintiff filed this action, defendants, through counsel, propounded discovery requests on plaintiff, specifically a First Request for

Production of Documents and a First Set Of Interrogatories, both served on

plaintiff on March 11, 2024. See, Affidavit of Geordie Duckler In Support, Etc.

18.    In those discovery requests, defendants specifically requested that

plaintiff provide "Copies of all documents showing any training of any type of the

animal at issue in this action" as well as demanded that plaintiff "State the factual

basis for every claim asserted in the complaint in this action" and "State the legal

basis for every claim asserted in the complaint in this action". See, Affidavit of

Geordie Duckler In Support, Etc.

19.    Plaintiff nevertheless refused to provide any documents or statements

at all in response to those specific discovery requests nor in fact provided

responses or documents to *any* of the discovery requests, and to date plaintiff has

failed to provide any proof or evidence in any manner that his pet dog at issue in

this action is in fact a trained service animal protected under the ADA. See,

Affidavit of Geordie Duckler In Support, Etc.

20.    On September 30th, plaintiff finally retained counsel. That date,

defense counsel inquired of plaintiff's new attorney about the existence of any

evidence that plaintiff's dog was actually a "service animal" as protected under the

ADA. None was provided. See, Affidavit of Geordie Duckler In Support, Etc.

21.    On October 5th, counsel spoke on the phone and defense counsel again

asked for any evidence as to the dog being a "service animal" protected under the

ADA. Again, none was provided. See, <u>Affidavit of Geordie Duckler In Support,</u>
<u>Etc</u>.

22.     On October 24th, plaintiff's counsel sent a letter which recited
plaintiff's factual description of the March 4th visit to the restaurant. In that letter,
counsel said that "Mr. Mahler went over to the hot food and began to put items on
his plate…Shortly after Mr. Mahler had filled his plate he was approached by Lucy
Chen. She told him "no dog" and instructed Mr. Mahler to leave. Mr. Mahler
handed his plate of food to Ms. Chen and followed her to the front of the
restaurant." A true and correct copy of that letter and factual description is attached
to the <u>Affidavit of Geordie Duckler In Support, Etc</u>. as Exhibit A thereto.

23.     At the close of plaintiff's counsel's letter, plaintiff's counsel stated
that "Mr. Mahler is obtaining the records regarding the training of his service dog
and we will provide them when received", however, again no records of any type
were attached. See, <u>Affidavit of Geordie Duckler In Support, Etc</u>.

24.     No records were ever sent or received after that exchange, and on
November 12th, defense counsel sent another e-mail again asking to be provided
any document or record that plaintiff possibly had of any type showing that the dog
was "individually trained to do work or perform tasks for the benefit of an
individual with a disability, where the work or tasks performed by the animal are
directly related to the individual's disability" as mandated by 28 CFR Section

36.104. Plaintiff's counsel did not respond and again no records were provided.
See, Affidavit of Geordie Duckler In Support, Etc.

25.    As of the date of filing these motions, November 20th, no records of
any training regarding the dog have ever been provided or received. See, Affidavit
of Geordie Duckler In Support, Etc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## LEGAL ARGUMENT

### A. Plaintiff Cannot Prevail Against Any Defendant On His First Claim For "Negligence"

To prevail on a claim of negligence, a plaintiff must prove that a defendant's
conduct created a foreseeable and unreasonable risk of legally cognizable harm to
the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff.
Chapman v. Mayfield, 358 Or 196, 361 P3d 566 (2015); Fazzolari By & Through
Fazzolari v. Portland Sch. Dist. No. 1J, 303 Or 1, 734 P2d 1326 (1987); Oregon
Steel Mills, Inc. v. Coopers & Lybrand, LLP, 336 Or 329, 83 P3d 322 (2004).

Critical here is that plaintiff must prove that *each actual named defendant in
this case* created a foreseeable and unreasonable risk of legally cognizable harm, as
well as that *each's actual conduct* in fact caused that kind of harm to him. Sloan on
behalf of Estate of Sloan v. Providence Health Sys.-Oregon, 364 Or 635, 437 P3d
1097 (2019).

Because this is a case where the parties are complete strangers and have no special status or legally recognized relationship between them, then only facts alone are what determine if any particular defendant's conduct or omissions somehow "caused" plaintiff to be harmed. Certainly, no defendant is required as a general principle to have to affirmatively protect plaintiff or all others from harm or to avoid causing injury to plaintiff or all others. Tomlinson v. Metro. Pediatrics, LLC, 362 Or 431, 412 P3d 133 (2018). It is therefore imperative to recognize that plaintiff is required to, yet cannot, establish a causal relationship between some *specific negligent conduct or omission of* any particular defendant and some specific harm to him in order to support any recovery. See, generally, Harris v. Kissling, 80 Or App 5, 721 P2d 838 (1986).

Moreover, a plaintiff who claims to have suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact. Norwest v. Presbyterian Intercommunity Hosp., 293 Or. 543, 558-61, 652 P.2d 318 (1982). It is telling to note that even under plaintiff's factual recitation, no physical impact occurred. The only exception to that rule is when the defendant violated a "legally protected interest" independent of the plaintiff's interest in being free from negligent conduct. Under that narrow exception, if a plaintiff can identify the violation of an "independent legally protected interest", then the tort can proceed.

In <u>Philibert v. Kluser</u>, 360 Or. 698, 385 P.3d 1038 (2016), the Oregon Supreme Court set out the framework for determining what is a "legally protected interest". The court a) identified it as an independent basis of liability separate from the general duty to avoid harm, b) added that not just any legally protected interest will suffice, and c) required that the interest be of sufficient importance as a matter of public policy to merit protection from emotional impact.

The Court noted that a legally protected interest may derive from a) a trial court <u>order</u> which creates one so that the violation of that order is the basis; b) a <u>statute</u> designed to protect the plaintiff from the type of emotional harm that occurred; or c) a trial court's <u>common-law authority</u> to recognize the existence of one apart from the interest in avoiding foreseeable risk of harm.

Since plaintiff does not allege any physical impact to himself personally nor did any occur, then analysis of this negligence claim has three required steps: First, plaintiff has to prove the violation of a legally protected interest. Second, plaintiff has to prove whether such interest is of sufficient importance as a matter of public policy to merit protection. Third, plaintiff has to prove that his distress was the foreseeable result of the violation of the legally protected interest. <u>K. v. Banana Republic, LLC</u>, 317 Or App 249, 254–55, 505 P3d 1078, 1081–82 (2022).

Under that analysis, his negligence claim fails entirely since he cannot prove the violation of a legally protected interest in the first place. No court order has

ordered that defendants "protect him from emotional harm", no statute imposes a specific duty on a restaurant business to protect a patron from emotional harm, and there is no common law rule generally protecting restaurant customers from emotional harm by others.

Even were the negligence claim to not fail for those reasons, it is also key that plaintiff also has no competent evidence at all establishing "causation" for purposes of the negligence claim anyway. To prove that any defendant's negligence <u>caused</u> a particular injury to support recovery, there must be sufficient evidence to establish that such a causal relationship is reasonably probable; i.e., testimony that an injurious consequence is *possible*, rather than probable, is not sufficient. <u>Elan v. Tate</u>, 294 Or App 76, 430 P3d 179 (2018). "Cause" has a well-defined legal meaning in Oregon: it means cause-in-fact. <u>Sandford v. Chev. Div. Gen. Motors</u>, 292 Or. 590, 605–06, 642 P.2d 624 (1982). Proof of cause-in-fact must have the quality of reasonable probability, and a mere possibility that the alleged fault of the defendants was the cause of plaintiff's injuries is not sufficient. See, <u>Joshi v. Providence Health System of Oregon Corp.</u>, 108 P.3d 1195, 1201 (Or. App. 2005) <u>aff'd,</u> 149 P.3d 1164 (Or. 2006).

Here, plaintiff is required to provide substantial evidence tending to show: (1) that each of the separate defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, or Lucy Chen themselves individually engaged in some specific careless

act; (2) that the particular act identified was the proximate cause of his harm; and (3) that each of the defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, or Lucy Chen, separately and individually knew or by the exercise of reasonable care ought to have known that what they were doing was then careless. If there is no substantial evidence tending to establish any one of the above essential elements, then cause is simply not established. See, Bogart v. Cohen-Anderson Motor Co., 164 Or 233, 237, 98 P2d 720, 721–22 (1940) (finding no substantial evidence tending to show that defendant knew or ought to have known that brakes were in a dangerous and defective condition in a motor vehicle accident).

More specifically, Oregon uses the "substantial factor" test to determine whether a defendant's activities were the cause of a plaintiff's harm. Seitz v. State By and Through Albina Human Resources Ctr., 788 P.2d 1004, 1010 (Or. App. 1990). Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. Plaintiff cannot evidence in any manner that he would not have been harmed at all had it not been for some particular act, and as noted above, he has no evidence of any particular "careless" act anyway.

A plaintiff is always required to provide a sufficient factual basis to show that the named defendant had *some* responsible involvement with an event in order to be found negligent for its occurrence. Fortney v. Crawford Door Sales Corp. of Oregon, 97 Or App 276, 280, 775 P2d 910, 912 (1989); see generally, Coleman v.

Stark, 1 Or 115, 116 (1854) ("One who is the cause or occasion of a mischievous act must suffer consequences thereof, rather than another who has had nothing to do with it"). Evidence of the requisite involvement is entirely absent here.

Here, no requisite relationship existed, no careless act occurred, and no damages resulted from any careless act. See, Affidavit of Lucy Chen In Support, Etc. Indeed, no defendant had any physical contact with plaintiff or his dog at all. Plaintiff therefore cannot establish *any* of the essential elements of the negligence claim and thus each of defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen are separately entitled to summary disposition of the negligence claim.

   B. Plaintiff Cannot Prevail Against Any Defendant On His Second
      Claim For "Gross Negligence"

To prevail on a claim of gross negligence, a plaintiff must prove that a defendant acted with conscious indifference to a substantial risk, where a reasonable person in defendant's situation would have had to know there was a strong possibility that serious harm would be inflicted on another or their property by such misconduct. Storm v. Thompson, 64 P.2d 1309 (1937). Gross negligence is such a want of care that would cause an inference of conscious indifference of consequences. It is something more than inattention and is the exhibition in the operation of a car as "I-don't-care-what-happens" mental attitude. It is something

more than ordinary negligence. Ordinarily, momentary inattention, or looking away from the road for a short distance does not amount to gross negligence.

The question of gross negligence must be resolved with reference to the particular circumstances of each case since there is no general definition that applies in all cases. <u>Reese v. Bridgmon</u>, 217 Or. 290, 291, 340 P.2d 573, 573 (1959). Nevertheless, what is essential is competent evidentiary proof that a specific defendant acted with indifference to the probable consequences of a specific act where the circumstances proclaimed danger and warned the defendant of the impending disaster. <u>Emerson v. Mt. Bachelor, Inc.</u>, 273 Or. App. 524, 525, 359 P.3d 510, 511 (2015).

Here, nothing of the sort exists in any fashion. No circumstances proclaimed danger at all to plaintiff or defendants; no circumstances warned plaintiff or any defendant of any impending disaster; no conduct of any defendant's indifference to consequences exists nor has been or can be evidenced. See, <u>Affidavit of Lucy Chen In Support, Etc</u>. Again, even under *plaintiff's* factual recitation, no evidence of reckless conduct exists. Plaintiff's personal opinion about such circumstances is absolutely immaterial; objectively, plaintiff cannot establish any of the essential elements of the gross negligence claim with actual evidence and thus each of defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen individually are entitled to summary disposition of this claim.

C. <u>Plaintiff Cannot Prevail Against Any Defendant On Either The Third Claim For "Violations of the Americans with Disabilities Act" Or On The Fourth Claim For "ADA Violation – Failure to Accomodate"</u>

For purposes of these motions, since plaintiff's next two claims for "Violations of the Americans with Disabilities Act" and for "ADA Violation – Failure to Accommodate" are technically identical and legally repetitive, and since both rely on the exact same statutory definition of "service animal" and on the exact same factual allegations, then both are analyzed together here.

First, 42 U.S.C. Section 12182(a) states that "*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*" Within that statute, Section 12182(b)(1)(A)(i) states that "*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*" The named defendants in this care are either an "establishment serving food or drink" as defined under 42 U.S.C. Section 12181(7)(B), or "persons who own or operate a place of public accommodation".

Second, 28 CFR Section 36.102 applies the ADA to places of public
accommodation, and 28 CFR Section 36.302(c)(1) states that *"Generally, a public
accommodation shall modify policies, practices, or procedures to permit the use of
a service animal by an individual with a disability."*

Third, and most dispositively of these two claims, is that 28 CFR Section
36.104 specifically defines "Service animal" in relevant part as:

*"any dog that is <u>individually trained to do work or perform tasks for the
benefit of an individual with a disability</u>, including a physical, sensory,
psychiatric, intellectual, or other mental disability...The work or tasks
performed by a service animal <u>must be directly related to the individual's
disability</u>. Examples of work or tasks include, but are not limited to,
assisting individuals who are blind or have low vision with navigation and
other tasks, alerting individuals who are deaf or hard of hearing to the
presence of people or sounds, providing non-violent protection or rescue
work, pulling a wheelchair, assisting an individual during a seizure, alerting
individuals to the presence of allergens, retrieving items such as medicine or
the telephone, providing physical support and assistance with balance and
stability to individuals with mobility disabilities, and helping persons with
psychiatric and neurological disabilities by preventing or interrupting
impulsive or destructive behaviors. The crime deterrent effects of an*

*animal's presence and the provision of emotional support, well-being,*

*comfort, or companionship do not constitute work or tasks for the purposes*

*of this definition.*" (Emphasis added).

All of the evidence is that plaintiff's dog was emphatically <u>not</u> an animal

"individually trained to do work or perform tasks for the benefit of an individual

with a disability" under Title II of the Americans with Disabilities Act ("ADA"),

per 42 U.S.C. 12101, and is therefore not a "Service Animal" as defined under

federal statute or protected by the ADA. See, <u>Affidavit of Lucy Chen In Support,</u>

<u>Etc.</u> Plaintiff has no evidence at all that the dog has been specially trained in the

manner required. In particular, when obligated to provide defendants with

documents or other evidence establishing or confirming any training of the dog,

plaintiff failed entirely to do so. See, <u>Affidavit of Geordie Duckler In Support, Etc.</u>

Since the dog in question was simply and clearly a pet only, and since

plaintiff has no competent objective evidence that on the date in question the

specific dog in question had been individually trained to do work or perform tasks

for the benefit of an individual with a disability, then for the core reason that no

"service animal" was involved here, both ADA based claims must necessarily fail

as a matter of law and fact. See, e.g., <u>Davis v. Ma</u>, 848 F. Supp. 2d 1105, 1107

(C.D. Cal. 2012) (summary judgment granted for defendant against ADA claims

where record did not contain admissible evidence demonstrating that plaintiff's

puppy was a trained service animal able to ameliorate plaintiff's disability).
Plaintiff therefore cannot establish the essential elements of *either* the claim for
"Violations of the Americans with Disabilities Act" *or* for "ADA Violation –
Failure to Accommodate", specifically under the definition required by 28 CFR
Section 36.104 and thus each of defendants Jindi Ou, Steady Stream, Inc., Mizumi
Buffet, and Lucy Chen, are each separately and individually entitled to summary
disposition of both of these claims against each.

### D. Plaintiff Cannot Prevail Against Any Defendant On the Claim For "Intentional Infliction of Emotional Distress"

Proof of a claim for IIED requires that a plaintiff establish that (1) a
particular defendant "intended to inflict severe emotional distress" on him, (2) the
particular defendant's acts "were the cause" of plaintiff's severe emotional distress,
and (3) the particular defendant's "acts constituted an extraordinary transgression
of the bounds of socially tolerable conduct." Mullen v. Meredith Corp., 271 Or
App 698, 713, 353 P3d 598, 607 (2015).

First, with every IIED claim, the trial court functions at the very outset as a
gatekeeper, performing that role in the first instance. Clemente v. State, 227 Or
App 434, 442, 206 P3d 249, 255 (2009) (citing Pakos v. Clark, 253 Or 113, 132,
453 P2d 682 (1969) and House v. Hicks, 218 Or App. 348, 358, 179 P3d 730
(2008)). This Court, in its role as gatekeeper, must therefore decide at the outset of

such a claim if *any* of the defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, or Lucy Chen's individual conduct even "may reasonably be regarded as so extreme and outrageous as to permit recovery" in the first place. House v. Hicks, 218 Or App 348, 357, 179 P3d 730, 735 (2008), rev den, 345 Or 381 (2008).

The *specific conduct at issue* must be found to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 358 (quoting from the RESTATEMENT (SECOND) OF TORTS § 46 comment d (1965)).

The classification of conduct as extreme and outrageous always depends on the character and degree of the conduct under the totality of circumstances. Id. Aggravating factors include ulterior motives, an intent to take advantage of a plaintiff in a vulnerable state, and the setting in which the conduct occurs. Id. at 360. In particular, Oregon courts have given substantial weight to whether a special relationship exists between a plaintiff and a defendant—that is, relationships with a heightened duty of care. Id.

Even were this Court to simply accept all of plaintiff's allegations as true, defendants' conduct here as identified by plaintiff is not in any way an "extraordinary transgression of the bounds of socially tolerable conduct" by any reasonable measure. The lack of outrageousness is confirmed by the complete lack

of any special relationship between the parties and the complete lack of any other aggravating factors. There undeniably is no "special relationship" in existence here with any named defendant. Plaintiff's inability to establish the existence of a special relationship, which is the most important factor in deciding whether conduct is outside the bounds of socially tolerable behavior (see, House, 218 Or App at 358), eviscerates the IIED claim at the outset.

Equally important is the fact that this case lacks any of the *aggravating* factors necessary for conduct to be outrageous in the extreme. The lack of outrageousness is confirmed by the lack of even a single aggravating factor, much less a suite of them. The only possible liability that has arisen from defendants' acts is their declining to allow a customer's dog to be near a buffet of food from which other people are eating. No fact reveals any defendant taking advantage of plaintiff in a vulnerable state, and the setting in which defendants' conduct occurred – a Chinese restaurant in a public place – does not reflect any particularly sensitive or specially recognized environment at all.

For all those reasons, this Court must exercise its gatekeeper role and determine that defendants' conduct in either asking that a dog not infect food being served or even declining service to a patron is not by itself so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community and thus the IIED claim must be dismissed for that reason alone.

Additionally, no reasonable jury could find that any particular individual defendant – either Jindi Ou, Steady Stream, Inc., Mizumi Buffet, or Lucy Chen – *intended* to inflict severe emotional distress on plaintiff and acted with some particular purpose to do so. In other words, even identifying any defendant's particular conduct here as "outrageous" certainly does not conclude the analysis *anyway*, since the tort of IIED has then *other* elements that are also necessary to meet, notably specific intent and a malicious purpose.

Initially, intent may be established in one of three ways. First, it may be done by proving the existence of a malicious motive or a purposeful design to inflict emotional distress on the plaintiff. Mullen v. Meredith Corp., 271 Or App 698, 713, 353 P3d 598, 608 (2015) (quoting Delaney v. Clifton, 180 Or App 119, 132, 41 P3d 1099 (2002). Second, it may be done by proving that a specific defendant knew that such distress was "certain, or substantially certain, to result from his conduct." Id. (quoting McGanty v. Staudenraus, 321 Or 532, 550, 901 P2d 841 (1995)). Third, intent can be inferred from the outrageousness and extent of a specific defendant's conduct. See Schoen v. Freightliner LLC, 224 Or App 613, 626, 199 P3d 332, 341 (2008).

Here, there is no fact possibly in existence evidencing any malicious motive or a purposeful design to inflict emotional distress on plaintiff by any specific defendant, nor does any evidence exist showing knowledge in that any specific defendant somehow knew that such distress was certain, or substantially certain, to result from their conduct. Neither can intent to inflict severe emotional distress on plaintiff be inferred from any specific defendant's conduct alone without any other evidence.

In short, even if the Court were to somehow determine that an "outrageous act" existed here, which it could not, there still is no evidence supporting the first element of IIED regardless. Again, plaintiff's personal beliefs on this specific topic are absolutely useless – objective evidence is required and objective evidence is nonexistent.

Worse, to proceed forward with this claim to trial, plaintiff also would have had to produce evidence from which a jury could conclude that each of the defendants' conduct was not only intentional, but was also *undertaken solely for the deliberate purpose of inflicting severe emotional distress*. Patton v. J.C. Penney Co., 301 Or. 117 (1986). That requisite "purpose" evidence is unquestionably not present here in any manner as well, and plaintiff has at the very most only useless rhetoric, speculation, and inadmissible personal opinion to propose to do so. Even looking at the facts in the light most favorable to plaintiff and drawing every

possible inference in his favor, there is just no factual basis to find that any specific defendant maliciously intended to cause either plaintiff himself severe emotional distress or could have possibly known with substantial certainty that they would be doing so.

Here, none of the defendants individually engaged in any outrageous act whatsoever, nor did any of them intend to cause plaintiff any distress, much less severe emotional distress. See, <u>Affidavit of Lucy Chen In Support, Etc</u>. Plaintiff therefore cannot establish the essential elements of the IIED claim and each of defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen are separately and individually entitled to summary disposition of the IIED claim.

<u>CONCLUSION</u>

Summary disposition of all five of plaintiff's claims is appropriate here. Plaintiff lacks sufficient, adequate, competent, or admissible evidence to demonstrate satisfaction of the essential elements of any and all of the five claims sufficient to entitle him to a trial on any of the claims, especially as to against any specific defendant, Jindi Ou, Steady Stream, Inc., Mizumi Buffet, or Lucy Chen.

Summary judgment is thus proper in exactly such circumstances, where there is no genuine issue as to any material fact and where each of the individual defendants are separately entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56.

All four defendants therefore respectfully submit that their independent and parallel motions should be granted.

Respectfully submitted,

DATED: November 20, 2024

By: _____
Geordie Duckler, OSB #873780
Attorney for Attorney for Defendants
JINDI OU, STEADY STREAM,
INC., MIZUMI BUFFET, and LUCY
CHEN

Submitted by:
Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

# CERTIFICATE OF SERVICE

I certify that on the 20th day of October, 2024, I served a true and correct copy of DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, AND LUCY CHEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AFFIDAVIT OF LUCY CHEN IN SUPPORT OF DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, AND LUCY CHEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AFFIDAVIT OF GEORDIE DUCKLER IN SUPPORT OF DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, AND LUCY CHEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT on:

> Kevin T Lafky
> Lafky & Lafky
> 429 Court St NE
> Salem OR  97301

by mailing said documents via first class mail in a sealed envelope with postage prepaid to the address shown above, and deposited in the U.S. Mail at Portland, Oregon, on the 20th day of November, 2024.

GEORDIE DUCKLER, P.C.

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　Geordie Duckler, OSB No. 873780
　　　Attorney for defendants

PAGE 1 - CERTIFICATE OF SERVICE