Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JINDI OU; STEADY STREAM, INC.;<br>MIZUMI BUFFET; LUCY CHEN;<br>and DOES 1-10,<br><br>　　　　Defendants. | Case no. 3:23-cv-1833-AR<br><br>AFFIDAVIT OF LUCY CHEN<br>IN SUPPORT OF<br>DEFENDANTS JINDI OU,<br>STEADY STREAM, INC.,<br>MIZUMI BUFFET, AND LUCY<br>CHEN'S MOTION FOR<br>SUMMARY JUDGMENT |

STATE OF OREGON    )
　　　　　　　　　　) ss.
County of Multnomah )

　　I, Lucy Chen, do hereby attest and declare:

1

1.	I am one of the named defendants in the instant civil action and am the owner and operator of the business which plaintiff has named in his suit. My business is a highly reputable, clean and healthy, professionally run, and well-established local Chinese buffet restaurant in Tigard, Oregon.

2.	I am aware of plaintiff as a "regular" at my restaurant who has been a customer for the last six years, a period as long as I myself have worked at the restaurant. He sometimes frequented our restaurant two to three times a month. Every time plaintiff has come in, he has acted like he was at home, he has been treated very well and in a friendly and respectful fashion, and staff knows exactly which table he prefers and what drink he likes to order.

3.	The majority of times plaintiff has come into the restaurant he brings the same gold colored dog with him, an animal which simply wears a collar with a leash attached and which usually sits under or near the table where plaintiff eats. The dog usually walks behind him and doesn't lead him anywhere. Nothing about the animal indicates in any manner that it is specially trained nor does it wear any vest or other signifying emblem, badge, or device indicating it is anything other than a person's pet, which is exactly what it acts like throughout every visit, including on the date in question. Over the course of six years of plaintiff being at my restaurant with his dog, plaintiff has never indicated or mentioned to myself or any staff member that the dog is a service or assistance dog.

4. On March 4, 2022, the day when plaintiff came into our restaurant and the day which he refers to in his lawsuit as the date of the incident, he arrived around 2:00 p.m. while I was assisting a customer with their payment.

5. Before I had a chance to greet him like I normally do, he walked straight to the hot food counter with his dog to get food.

6. As plaintiff was helping himself to food from the buffet, another customer noticed plaintiff's dog standing with its head up, leaning directly on the buffet counter, sniffing a tray of spring rolls. The concerned customer informed our staff.

7. One of my staff members then said to plaintiff that a customer said his dog was too close to the food. A different customer then approached me and noted that the dog's head was still on the buffet counter.

8. When I turned around, I saw that the dog's head was indeed on the food counter, almost as high as a child of five or six right where the food was. I immediately walked over to plaintiff and politely said to him that his dog was too close to the food, and that some other customers had complained. I asked him to please keep his dog under the table like he usually had done in the past.

9. Plaintiff gave no verbal response to my statement and simply took his dog back to his seat.

10. For the health and safety of other customers, I arranged for the chef to throw away all six trays of food and remake them. Instead of sitting down to eat, however, plaintiff then immediately walked over to the sushi counter with his dog. As he passed by, I offered to hold his dog while he got some sushi. He ignored me completely, didn't even make eye contact, and mumbled something under his breath as he walked away, which I couldn't make out.

11. The customers at tables B4, B5, and B6 overheard him and appeared to have said something to him, though I couldn't understand it either. Soon after, plaintiff was talking loudly with the customer at table B5. Just as the situation was escalating, I heard the phone ring and hurried to the front to answer it. The argument seemed to quiet down after that. Still visibly upset, plaintiff eventually walked by with his dog, stopping briefly to chat with the customer at table C2 for about five minutes before finally leaving. Throughout his entire visit, even when I spoke directly to him, he never once looked at me or said a single word. From the moment he entered to when he left, it couldn't have been much more than ten to fifteen minutes.

12. As a business owner, I especially welcome returning customers, so I never ordered plaintiff to leave the restaurant or to take the dog out of the restaurant. I never commanded or instructed or demanded of him anything in any fashion. To the contrary, I encouraged him to stay and enjoy his meal with his dog

4

and asked him simply to refrain from allowing his dog to try to get food off the buffet for health and hygiene reasons.

13.  Throughout the March 4th visit, neither I nor any of my staff made any physical contact with plaintiff's dog or plaintiff himself, nor did either I or any staff member expose plaintiff or his dog to any risk of harm in any manner.

14.  Over the course of six years of plaintiff being at my restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, I did not see any work or tasks being performed by plaintiff's dog at all, much less any work or tasks directly related to any disability of plaintiff's.

15.  At no time over the course of six years of plaintiff being at my restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog ever a) assisted plaintiff with vision issues or navigation problems; b) alerted plaintiff to the presence of people or sounds; c) provided non-violent protection or rescue work; d) pulled any wheelchair or other device; e) assisted plaintiff during any seizure or episode; f) alerted plaintiff to the presence of allergens or toxins; g) retrieved items such as medicine or other objects for plaintiff; h) provided any physical support or assistance with any mobility, balance, or stability issues plaintiff has had; or i) assisted plaintiff with any psychiatric or neurological disability by preventing or interrupting impulsive or

destructive behaviors.

16.   At no time over the course of six years of plaintiff being at my restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog shown any sign whatsoever of being specially trained to assist plaintiff with any disability. I am not aware of it as a service dog.

17.   I am competent to testify to the foregoing of my own personal knowledge, except for those matters stated upon information and belief, which such matters I do believe to be true.

Executed this 30 day of September, 2024, at Portland, Oregon.

I declare under penalty of perjury under the laws of the United States and of the state of Oregon that the foregoing is true and correct.

_____
Lucy Chen

Submitted by:
Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, and LUCY CHEN

# CERTIFICATE OF SERVICE

I certify that on the 20th day of October, 2024, I served a true and correct copy of DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, AND LUCY CHEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AFFIDAVIT OF LUCY CHEN IN SUPPORT OF DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, AND LUCY CHEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; AFFIDAVIT OF GEORDIE DUCKLER IN SUPPORT OF DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET, AND LUCY CHEN'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT on:

Kevin T Lafky
Lafky & Lafky
429 Court St NE
Salem OR  97301

by mailing said documents via first class mail in a sealed envelope with postage prepaid to the address shown above, and deposited in the U.S. Mail at Portland, Oregon, on the 20th day of November, 2024.

GEORDIE DUCKLER, P.C.

By:_____
Geordie Duckler, OSB No. 873780
Attorney for defendants