KEVIN T. LAFKY, OSB#852633
klafky@lafky.com
Lafky & Lafky
429 Court St NE
Salem, OR 97301
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| ROBERT MAHLER, | Case No. 3:23-cv-1833-AR |
|---|---|
| Plaintiff, | PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| vs. | |
| JINDI OU; STEADY STREAM, INC.; MIZUMI BUFFET; LUCY CHEN; and DOES 1-10, | |
| Defendants. | |

## RESPONSE

Plaintiff Robert Mahler ("Plaintiff") responds to Defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen's (collectively referred to as "Defendants") Motions for Summary Judgment and respectfully requests that this Court deny the motion in its entirety. Plaintiff relies on the points and authorities below and the Affidavit of Plaintiff to support his response in opposition to Defendants' Motion.

## STATEMENT OF MATERIAL FACTS

These facts are taken from the sworn Affidavit of Plaintiff Robert Mahler in Support, filed contemporaneously with and in support of this motion.

Plaintiff suffers from advanced osteo-arthritis, left-sided hemiplegia as the result of a C-3 spinal fracture, and vasovagal syncope. *See* Plaintiff's Affidavit, Paragraph 1. Plaintiff also has implant prosthetics in both knees. *Id*. All of these conditions cause Plaintiff significant impairments to major life activities such as sitting, standing, walking, bending over, and

thinking. *Id*. at Paragraph 2. Plaintiff has used a service dog to help mitigate the effects of his disability since the mid-1980s, and has always trained his service dogs himself. *Id*. at Paragraph 3, Paragraph 4. He has not habitually kept records of this training. *Id*. at Paragraph 4.

Plaintiff acquired a Doberman puppy in 2010. He named her Guliet (pronounced Juliet) at the suggestion of his granddaughter, and trained her to be a service animal. *Id*. at Paragraph 4. Excepting a beginner puppy training class at PetSmart, Plaintiff did all of Guliet's training himself. *Id*. Guliet was a purebred Doberman who fell within the breed standard. *Id*. When Plaintiff took Guliet in public to places that were not ordinarily dog-friendly, she wore a red vest which said "Ask to Pet" on one side and "Service Dog" on the other. *Id*. at Paragraph 9. Guliet was task-trained in light mobility tasks, including retrieval of items that Plaintiff's disability would have made it difficult to impossible for him to reach without assistance. *Id*. at Paragraph 5.

Plaintiff went to Mizumi Buffet occasionally after medical appointments in Portland; these were often appointments for which Plaintiff was required to fast, and after the appointment, he was hungry and needed to eat. *Id*. at Paragraph 7. He had been to Mizumi Buffet six or seven times in total. *Id*.

On March 4, 2022, Plaintiff went to Mizumi Buffet after a medical appointment, hoping to get some food after a long morning of medical tests. *Id*. at Paragraph 12. When he entered, accompanied by Guliet—who was leashed and vested—he spoke with an employee and asked if he could sit in an otherwise empty section of the restaurant, hoping not to disturb any employees or other patrons with Guliet's presence. *Id*. The employee agreed and Plaintiff went to get some food. *Id*. In the buffet line, he held his plate in one hand and Guliet's leash in the other. Guliet did not, at any point, try to put her head on the buffet table or near the trays; she remained on all four feet in a normal standing position. *Id*. at Paragraph 13.

After getting his food, Plaintiff went to sit down; before he could, Lucy Chen approached him and loudly said, "No dog." *Id*. at Paragraph 14. She told Plaintiff that he needed to leave, took his food, and walked him to the front of the restaurant. *Id*. Plaintiff tried to explain the law to Ms. Chen, including the two questions she would have been legally entitled to ask to ascertain

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

Guliet's service dog status. *Id*. Ms. Chen refused to listen to Plaintiff and continued to tell him to get out. *Id*. Plaintiff tried to tell Ms. Chen that she was legally required to allow him to stay and eat; again, she refused to listen. *Id*. The confrontation was so public, obvious, and outrageous that another patron approached the two in support of Plaintiff. *Id*. at Paragraph 17. Ms. Chen also refused to listen to that patron, and forced Plaintiff out of the restaurant. *Id*. at Paragraphs 17, 14.

Plaintiff was extremely emotionally distressed by Ms. Chen's actions; he was humiliated and ashamed by the fact that he had been treated as though he were doing something wrong, when all he had done was try to get some food while accompanied by his trained, controlled service animal. *Id*. at Paragraph 15. Plaintiff, aware that some people are afraid of dogs, had specifically gone out of his way to attempt to ensure that Guliet's presence would not disturb anyone else there. *Id*. at Paragraph 12. His consideration was repaid by public humiliation, blatant discrimination, and a deep sense of confusion, shame, and distress. *Id*. at Paragraph 15.

## APPLICABLE STANDARD OF REVIEW

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of any issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id*. at 324. The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). On summary judgment motions, the Court views the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court accepts the non-movant's version of the facts as true, and resolves conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of N. Amer. Inc.*, 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. den.*, 507 U.S. 912 (1993). A "material" fact exists if there is a "dispute over facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec.*

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

*Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Reasonable doubts about the existence of factual issues are resolved against the moving party. *Id*. at 630-31.

## ARGUMENT

**A. Defendants Jindi Ou, Steady Stream, Inc., and Mizumi Buffet are vicariously liable for Ms. Chen's conduct.**

Defendants Jindi Ou, Steady Stream, Inc., and Mizumi Buffet, as Defendant Lucy Chen's employers, are liable for her conduct under the doctrine of *respondeat superior*. Generally, an employer is liable for an employee's conduct if the conduct occurred "within the course and scope of her employment." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775-76 (9th Cir. 2002). Conduct is defined as occurring within the course and scope of employment when "(1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform." *Id*. at 776; *see also Fearing v. Butcher*, 328 Or. 367, 977 P.2d 1163, 1166 (1999); *see also Lourim v. Swensen*, 328 Or. 380, 977 P.2d 1157, 1159-60 (1999).

Ms. Chen's discrimination against Plaintiff occurred at Mizumi Buffet while she was on shift, which were the time and space limits authorized by her employment. By her own attestation, she was motivated to act to serve her employer by preventing a dog from being in the facility or near the food, which is, outside of a context involving reasonable accommodation such as this one, a health and safety violation. Finally, her conduct in denying service and telling Plaintiff to leave the restaurant was of a kind that she was hired to do—namely, serving customers, ensuring that the food was safe and the serving stations were sanitary, and removing risks to customer health and safety. Because Ms. Chen's conduct falls firmly within the bounds of her course and scope of employment, it falls under the doctrine of *respondeat superior*, and Defendants Jindi Ou, Steady Stream, Inc., and Mizumi Buffet are vicariously liable.

**B. Issues of fact remain as to Plaintiff's negligence claims.**

1     Defendants argue that Plaintiff is unable to prevail on either of his negligence claims against any defendant as a matter of law. For the reasons set forth below, these arguments fail to satisfy Defendants' burden on Summary Judgment.

    Under both federal and Oregon law, to support a claim of negligence, a plaintiff must prove that (1) it was a foreseeable risk that the defendant's conduct could cause harm, (2) that the risk of harm is something that the law protects against, (3) that said risk of harm made defendant's conduct unreasonable, (4) that the conduct did in fact cause harm to the plaintiff, and (5) both that the plaintiff was within the group of people that the law was intended to protect, and that the injury was the type of injury that the law was intended to prevent. *Pickens v. U.S.*, 750 F.Supp.2d 1243, 1252 (D. Or. 2010); *see also Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 14, 734 P.2d 1326 (1987).

    Generally, a plaintiff may not recover damages for emotional harm suffered as a result of a defendant's negligence without some sort of physical impact. *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61, 652 P.2d 318 (1982). There are three exceptions to this rule: (1) intentional infliction of emotional distress; (2) an intentional act where defendant both intended to cause grave distress and had a special relationship to the plaintiff; and (3) even if the conduct was negligent rather than intentional, the defendant's conduct infringed on a legally protected interest of the plaintiff's. *Hammond v. Central Lane Communications Ctr.*, 312 Or. 17, 22-23, 816 P.2d 593, 596 (1991). A "legally protected interest" is one that is separate from the general duty to avoid harm, and one that is sufficiently important to be protected from emotional impact as a matter of public policy. *Philibert v. Kluser*, 360 Or. 698, 707, 385 P.3d 1038 (2016); *see also Hilt v. Bernstein*, 75 Or. App. 502, 515, 707 P.2d 88, 95 (1985). Legal protection of an interest can arise from statute. *Philibert v. Kluser*, *supra*, at 706-07.

    For a plaintiff to prevail in a negligence action under a *Hammond* exception, they must prove the violation of a legally protected interest. They must also prove that that interest is sufficiently important to merit protection under a public policy rationale. Finally, they must prove that their emotional injury was a foreseeable result of the violation of that legally protected interest. *K. v. Banana Republic, LLC*, 317 Or. App. 249, 254-55, 505 P.3d 1078, 1081-82 (2022).

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

1    Here, Plaintiff has a legally protected interest in his ability to access places of public
2    accommodation without being discriminated against due to his disability. This interest is legally
3    protected by both federal statute (42 U.S.C. § 12182(a); 42 U.S.C. § 12182(b)(1)(A)(i)) and by
4    Oregon state law (ORS 659A.142(4)). The presence of statutes protecting this interest on both a
5    state and federal level argues that the interest in full and equal access to places of public
6    accommodation, without suffering discrimination, *is* a sufficiently important interest to be
7    protected as a matter of public policy—as does the fact that almost every state in the nation has a
8    similar law. The emotional injury that Plaintiff suffered was a direct result of Defendant Lucy
9    Chen's, and, vicariously, Defendants Jindi Ou, Steady Stream, Inc., and Mizmui Buffet's
10   violation of that legally protected interest.

11   Defendant's insistence that Plaintiff cannot establish any essential element of a
12   negligence claim, especially given the very different statements of fact offered by Plaintiff and
13   Defendant, points to an issue of fact that is appropriate to continue to trial and should be decided
14   by a finder of fact. Sufficient issues of material fact exist to deny all of Defendants' Motions for
15   Summary Judgment on the issue of Plaintiff's negligence claims.

16   **C.  Issues of fact remain as to Plaintiff's gross negligence claims.**

17   Defendants argue that Plaintiff is unable to prevail on his gross negligence claims against
18   any defendant as a matter of law. For the reasons set forth below, these arguments fail to satisfy
19   Defendants' burden on summary judgment.

20   Gross negligence occurs when a defendant acts with "indifference to the probable
21   consequences" of their actions. *Howard v. Chimps, Inc.*, 251 Or. App. 636, 647, 284 P.3d 1181
22   (2012), *rev. den.*, 353 Or. 410, 298 P.3d 1226 (2013); *see also WSB Investments, LLC v.
23   Pronghorn Development Co., LLC*, 269 Or. App. 342, 360, 344 P.3d 548, 560 (2015). Someone
24   who acts with an indifference to the rights of others or in a way that indicates they have no
25   concern for consequences acts with gross negligence. *Howard v. Chimps, Inc.*, *supra*, at 647,
26   *citing Rauch v. Stecklein*, 142 Or. 286, 293, 20 P.2d 387 (1933). To establish gross negligence, a
27   plaintiff must prove that, had they exercised even slight care, the defendant could have
28   recognized the danger of their actions and subsequently addressed that danger. *Emerson v. Mt.*

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

*Bachelor, Inc.*, 273 Or. App. 524, 528, 359 P.3d 510, 513 (2015); *see also Rauch v. Stecklein*, *supra*, at 293.

Here, Ms. Chen did not pause to consider whether Plaintiff's dog might be a service animal. She did not ask the two questions that the ADA entitles a business to ask of any service dog handler. She did not read the dog's vest, which marked it as a service animal. She exercised no caution, and did not exercise even slight care, before acting in a way that had a danger of causing Plaintiff severe emotional injury. Additionally, when Plaintiff informed her of the law—putting her on actual notice that she was acting in a way that posed a danger of causing Plaintiff injury—she doubled down on her stance, and continued to loudly and publicly insist that Plaintiff leave when another patron entered the conversation and backed up what Plaintiff was telling Ms. Chen about the law. Her continued insistence that Plaintiff leave the restaurant, when he had done nothing wrong and his dog was under his control, was blatantly and offensively indifferent to the rights of Plaintiff and any other disabled person who chooses to use a service dog to mitigate the symptoms of their disability.

Defendant's insistence that Plaintiff cannot establish any essential element of a gross negligence claim, especially given the very different statements of fact offered by Plaintiff and Defendant, points to an issue of fact that is appropriate to continue to trial and should be decided by a finder of fact. Sufficient issues of material fact exist to deny all of Defendants' Motions for Summary Judgment on the issue of Plaintiff's negligence claims.

**D. Issues of fact remain as to Plaintiff's discrimination claims.**

Defendants argue that Plaintiff is unable to prevail on either of his discrimination claims against any defendant as a matter of law. For the reasons set forth below, these arguments fail to satisfy Defendants' burden on summary judgment.

The Americans with Disabilities Act (ADA) protects individuals with disabilities from discrimination on the basis of their disability by a place of public accommodation, or by anyone who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a); *see also* 42 U.S.C. § 12182(b)(1)(A)(i); *see also* 28 CFR § 36.102. The ADA also applies to establishments serving food and drink (42 U.S.C. § 12181(7)(B)). Federal and Oregon law both

1 require that a place of public accommodation reasonably modify their "policies, practices, or
2 procedures" in order to allow the use of a service animal by a disabled person. 28 CFR §
3 36.302(c)(i); *see also* ORS 659A.143(6)(a). A service animal is defined by federal law as "any
4 dog that is individually trained to do work or perform tasks for the benefit of an individual with a
5 disability." 28 CFR § 36.104. In order to qualify for service animal protections, "[t]he work or
6 tasks performed by a service animal must be directly related to the individual's disability."

7       Disabled individuals are permitted to train their service dogs themselves; requiring
8 professional training could be a prohibitive expense, and would go against the purpose of the
9 ADA. *C.L. v. Del Amo Hospital*, 992 F.3d 901, 910 (9th Cir. 2021) (in which a disabled plaintiff
10 trained her service animal herself and was consequently the only one who could testify to the
11 details of the dog's first two years of training). Likewise, there is no requirement as to the
12 "amount or type of training" that a service dog must complete, only that the animal be trained to
13 perform some work or task that benefits the disabled person. *Id*. at 911. Creating or enforcing a
14 requirement for certification of a service animal's training goes against public policy and puts
15 disabled people at risk of losing access to important treatment tools in the form of service
16 animals. *Id*. at 911; *see also Johnson v. Oregon Bureau of Labor and Industries*, 290 Or. App.
17 335, 344, 415 P.3d 1071, 1076 (2018).

18       All defendants in this case fall under the above federal nondiscrimination statutes, as laid
19 out in Defendants' Motion for Summary Judgment. There is likewise no debate that Plaintiff was
20 accompanied by a dog on March 4, 2022. Plaintiff attests that he had trained the dog, Guliet,
21 since she was a small puppy to assist him. *See* Plaintiff's Affidavit. Plaintiff's disability makes it
22 extremely difficult, if not impossible, for him to bend over without experiencing severe pain or
23 loss of consciousness. *Id*. Guliet was task-trained to assist with this symptom of Plaintiff's
24 disability by retrieving items for him. *Id*. While not required by either federal or state law, it was
25 Plaintiff's habit to have Guliet wear a vest identifying her as a service animal, as a courtesy to
26 both businesses and other members of the public. *Id*. Guliet was not misbehaving or otherwise
27 out of Plaintiff's control on March 4, 2022, when Ms. Chen decided to remove Plaintiff and
28 Guliet from Mizumi Buffet. *Id*. Guliet did not put her head near the food. *Id*. Ms. Chen did not

Page **8** of 12

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

attempt to identify whether or not Guliet was a service animal, and did not at any point ask Plaintiff either whether Guliet was a service animal or what she was trained to do. *Id*.; *see also* Affidavit of Lucy Chen. In the interest of personal privacy, Plaintiff was not required to proactively approach Ms. Chen and inform her about his disability or Guliet's tasks; such a requirement would be absurd, humiliating, and discriminatory on its own.

Ms. Chen does not assert that she is an expert of any kind on dogs, or otherwise capable of assessing whether a dog is a service animal or not; she simply asserts that the dog was a pet and that she did not personally see it tasking. *See* Affidavit of Lucy Chen. She is not qualified to make any assessment or assertion as to whether Guliet was a trained service animal, and, indeed, does not appear to be discussing Guliet at all in her affidavit. Ms. Chen's affidavit is very clear that the dog was gold in color; that it only ever wore a collar and leash; that she saw Plaintiff and the dog often, two or three times a month at least; that she had seen the dog at that frequency for six years; and that she was very familiar with this dog. *Id*. Guliet was not a gold dog. *See* Plaintiff's Affidavit; *see also* Affidavit of Geordie Duckler, p. 22. Guliet—as Defendants were made aware on October 24th, in the letter marked as Defendant's Exhibit C-1 and filed with the Affidavit of Geordie Duckler—was a Doberman. *Id*. Dobermans do not come in gold; no color in the breed standard for a Doberman Pinscher could reasonably be described as gold. Guliet specifically was a black-and-tan Doberman, and was that color for the entirety of her life. *See* Plaintiff's Affidavit. Not only is Ms. Chen not qualified to assess whether a dog is a service animal or not, her affidavit makes it clear that she is unable to reliably relay any information or recollection about this dog.

Guliet was a service animal that Plaintiff was entitled by both federal and state law to have accompany him into places of public accommodation, and said places of public accommodation had a responsibility to make reasonable accommodations to their normal policies, practices, or procedures to allow Plaintiff to bring Guliet in. Ms. Chen's refusal to allow Plaintiff to stay and eat while accompanied by Guliet was unlawful discrimination.

Defendant's insistence that Plaintiff cannot establish any essential element of a discrimination claim, especially given the very different statements of fact offered by Plaintiff

Page 9 of 12

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

and Defendant, points to an issue of fact that is appropriate to continue to trial and should be decided by a finder of fact. Sufficient issues of material fact exist to deny all of Defendants' Motions for Summary Judgment on the issue of Plaintiff's discrimination claims.

**E. Issues of fact remain as to Plaintiff's intentional infliction of emotional distress claims.**

Defendants argue that Plaintiff is unable to prevail on his intentional infliction of emotional distress claim against any defendant as a matter of law. For the reasons set forth below, these arguments fail to satisfy Defendants' burden on Summary Judgment.

A claim for intentional infliction of emotional distress (IIED) requires a plaintiff to prove that (1) the defendant intended to cause the plaintiff severe emotional distress, or, alternatively, "knew with substantial certainty that their conduct would cause such distress"; (2) that the conduct at issue be "extraordinarily beyond the bounds of socially tolerable behavior"; and (3) that the conduct must have actually caused the plaintiff to experience severe emotional distress. *House v. Hicks*, 218 Or. App. 348, 357-58, 179 P.3d 730, 736 (2008).

For conduct to be sufficiently outrageous to allow for a plaintiff's recovery, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 358, *quoting* Restatement (2nd) of Torts § 46 cmt. d (1965). This assessment is made in consideration of the totality of the circumstances, and is "a judgment of social standards rather than of specific occurrences." *Id*. at 358-59. Part of this assessment includes whether the conduct is favored or disfavored by law; whether conduct is illegal is relevant to determining its outrageousness, but not dispositive. *Id*. at 359.

Several factors can aggravate circumstances and conduct to a point where it is considered outrageous. *Id*. The most important factor is whether a relationship with a special or heightened duty of care has been established between the defendant and the plaintiff, especially any relationship that "imposes on the victim a greater obligation to refrain from subjecting the victim to abuse, fright or shock than would be true in arms-length encounters among strangers." *Id*. at 360, *quoting McGanty v. Staudenraus*, 321 Or. 532, 547-48, 901 P.2d 841, 851 (1995). The

1 setting in which the contact takes place can also be an aggravating factor, as can the plaintiff's
2 status as an especially vulnerable person. *Id*.

3     Ms. Chen knew, with substantial certainty, that her conduct would cause significant
4 emotional distress. It is no secret that being treated differently from others because of some
5 uncontrollable physical characteristic is extremely emotionally painful, extremely humiliating,
6 and extremely distressing; indeed, it is common sense. Even had Ms. Chen not known this,
7 Plaintiff attempted to explain the law to her as she was denying him service and attempting to
8 force him to leave the restaurant—and had Plaintiff's explanation not been sufficient to advise
9 her of the fact that she was engaging in discrimination, which, again, is something widely
10 understood with substantial certainty to be unjustifiable and intensely painful, another patron
11 stepped in to inform her that Plaintiff was correct and she was breaking both the law and all
12 reasonable social standards.

13     Plaintiff is an elderly man who has visible difficulty walking, and who was accompanied
14 by a marked service animal. He was, plainly, a vulnerable person, and would have been
15 understood as such as soon as Ms. Chen looked at him. Ms. Chen was under a statutorily
16 imposed duty, as the operator of a place of public accommodation, not to discriminate against
17 Plaintiff; while the relationship imposed by such a duty is not the same as a landlord-tenant or
18 other special relationship, it is certainly above that of strangers at arms' length. No patron in the
19 restaurant owed a duty to Plaintiff to not discriminate against him. Ms. Chen, as one of the
20 buffet's employees, did owe Plaintiff that duty, and breached it in spectacular fashion. Her
21 conduct—namely, removing Plaintiff from the buffet area, taking his food away, and berating
22 him into leaving the restaurant—was extremely public, and so loud and obvious that not only did
23 other customers overhear, one felt sufficiently uncomfortable with the situation to attempt to
24 intervene. It is outrageous in the extreme, and generally regarded as atrocious in the society we
25 find ourselves in today, to remove and exclude someone from a public place for an immutable
26 characteristic they cannot control, whether that be gender, race, or medical equipment. As a
27 service animal, Guliet was legally considered medical equipment, in the same category as a
28

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450

1  wheelchair, and it is inexcusable in 2024 to exclude an elderly, disabled man from a restaurant
2  simply because an employee takes personal exception to the presence of his medical equipment.
3        Had Ms. Chen not unlawfully discriminated against Plaintiff and forced him out of
4  Mizumi Buffet simply because he was a disabled man with a treatment tool that she did not like,
5  he would not have experienced the emotional distress that he was subjected to that day. Ejection
6  from the restaurant was extremely humiliating, shameful, and embarrassing to Plaintiff, and it
7  caused him great emotional distress for a substantial period of time. *See* Plaintiff's Affidavit.
8        Defendant's insistence that Plaintiff cannot establish any essential element of an
9  intentional infliction of emotional distress claim, especially given the very different statements of
10 fact offered by Plaintiff and Defendant, points to an issue of fact that is appropriate to continue to
11 trial and should be decided by a finder of fact. Sufficient issues of material fact exist to deny all
12 of Defendants' Motions for Summary Judgment on the issue of Plaintiff's intentional infliction
13 of emotional distress claims.

## CONCLUSION

For the reasons stated above, and because there are multiple issues of triable fact which make summary judgment inappropriate in this case, Plaintiff respectfully requests the Court deny all of Defendants' Motions for Summary Judgment in their entirety.

DATED this 20th day of December, 2024.

                s/ *Kevin T. Lafky*
                Kevin T. Lafky, OSB # 852633
                Lafky & Lafky, Attorneys at Law
                Attorney for Plaintiff

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

LAFKY & LAFKY
429 Court St NE
Salem, OR 97301
Tel: (503) 585-2450