Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER,<br><br>                Plaintiff,<br><br>        vs.<br><br>JINDI OU; STEADY STREAM, INC.;<br>MIZUMI BUFFET; LUCY CHEN; and<br>DOES 1-10,<br><br>                Defendants. | ) Case no. 3:23-cv-1833-AR<br>)<br>)<br>)<br>) DEFENDANTS JINDI OU,<br>) STEADY STREAM, INC.,<br>) MIZUMI BUFFET, AND LUCY<br>) CHEN'S REPLY TO RESPONSE<br>) TO MOTIONS FOR SUMMARY<br>) JUDGMENT UNDER<br>) FED.R.CIV.P. 56(a)<br>)<br>)<br>) Case filing date: December 6, 2023<br>) Trial date: TBD<br>) |

Defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen,

by and through counsel, hereby each separately reply to plaintiff's Response to the

pending motions for summary judgment against each and every claim for relief in

plaintiff's Complaint brought pursuant to Fed.R.Civ.P. 56(a).

1

A. <u>No Evidence Or Law Supports Any *Individual* Defendant's Liability</u>

Among the important issues raised in these motions were very specific

challenges to plaintiff to provide both law and evidence demonstrating that the two

individual defendants – Jindi Ou and Lucy Chen – were themselves *personally*

liable for any torts which plaintiff has alleged caused him harm.

As to a legal basis, plaintiff's peculiar solution in the <u>Response</u> was to

propose that the doctrine of *respondeat superior* somehow surmounts those

challenges. Plaintiff, however, grievously misunderstands the *respondeat superior*

doctrine and has it turned completely on its head: *respondeat superior* is the rule

that makes an **employer** liable for an **employee's** torts when the employee acts

within the scope of employment – not the other way around. <u>Chesterman v.</u>

<u>Barmon</u>, 305 Or. 439, 442, 753 P.2d 404, 406 (1988). *Respondeat superior* could

only be an argument to apply, if at all, to the corporate defendants Steady Stream,

Inc. and Mizumi Buffet being bound by acts of Mr. Ou and Ms. Chen, not the

reverse. Plaintiff has failed utterly to produce any competent legal authority

holding that the *employee* must be bound by their *employer's* acts by virtue of their

relationship, which is understandable since no such law exists.

As to a factual basis, while plaintiff launches plenty of inflammatory

rhetoric around to describe his own reactions of "confusion, shame, and distress",

his fatal omission on the individual liability issue is to fail to present any evidence

about what it was he was actually reacting to as to actions taken by these two persons, i.e., as to *Mr. Ou's and Ms. Chen's own* (apparently "tortious") acts.

As to Mr. Ou, plaintiff's <u>Response</u> simply ignores him completely, not *identifying a single act or statement of Mr. Ou or mentioning him separately at all*. That brutal collapse in factual proof eliminates any possibility of plaintiff being able to continue against Mr. Ou as a separate defendant.

As to Ms. Chen, the only conduct of hers which plaintiff claims to be able to identify consists of her apparently uttering two short phrases: her a) saying the words "No dog" to him and her b) telling him that he "needed to leave". <u>Affidavit of Robert Mahler, Etc</u>. at 3:6-10. That's it – that is the sum total of what plaintiff has been able to come up with as to Ms. Chen herself being personally and individually liable.

Even when taken as true for purposes of these motions, those twin statements by that defendant, however, are *fundamentally inadequate* to meet the criteria of negligence, gross negligence, or IIED as outlined in the moving papers. While defendants concede, solely for purposes of this motion, that a plaintiff claiming those phrases were spoken by a defendant would likely be sufficient to at least create a question of fact on the third and fourth claims for relief for ADA violations, those third and fourth claims nevertheless fail for other distinct reasons as explained in more detail below.

Failing to meet his statutory burden as to showing valid law and material fact against the individual defendants Jindi Ou and Lucy Chen enabling any of the five claims to survive, then all five claims against those two individuals must therefore be summarily disposed of.

B. <u>Plaintiff's Evidence Fails To Support Liability For Negligence</u>

Plaintiff tries to bring himself within the "legally protected interest" exception to circumstances where, like here, there has been no physical impact to the plaintiff, but he vastly overreaches in applying that narrow exception. Our courts have explicitly stated that the "legally protected interest" claimed must be distinct from liability grounded in the generic common-law duty to avoid foreseeable harm. <u>Curtis v. MRI Imaging Servs. II</u>, 148 Or. App. 607, 617, 941 P.2d 602, 608 (1997). To utilize the exception, a plaintiff is charged with identifying a *distinct source of duty*, and those sources arise from the types of relationships in which a heightened duty of care exists in that the party owes the duty because they have a *special responsibility* toward the other party to protect them. <u>Id</u>.

In other words, the plaintiff must be the type of person whom defendant owes a duty because they were placed in a position of reliance, because the defendant has been given responsibility and control over the situation at issue to the plaintiff, and because the plaintiff has a right to rely upon the defendant

achieving a desired outcome or resolution. In other words, this can only work where the plaintiff has hired the defendant in a professional capacity, or has created a principal-agent relationship. Yet here, **no relationship exists at all between these parties**, much less a *special* relationship. Plaintiff is not the employee of defendants, nor is he their client, agent, ward, beneficiary, or patient. Moreover, plaintiff's disability condition does not magically create a special relationship with them, or, truly, with anyone or everyone whom plaintiff chances to encounter.

For plaintiff's wild theory of negligence to work, not only every customer of every business would have to be owed a heightened duty of care simply by virtue of them being a customer (not just the disabled ones), but every person a disabled person interacts with would owe the disabled person a heightened duty of care regardless of the presence or absence of control which that person might in fact actually have over the plaintiff. That is an absurd and tortured rendering of what the "legally protected interest' cases are actually protecting.

These parties being complete strangers and having no special status or legally recognized relationship between them, then the claim for negligence has to fail as a matter of law and each of defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen individually are entitled to summary disposition of this claim.

C. <u>Plaintiff's Evidence Fails To Support Liability For Gross Negligence</u>

Not one word from plaintiff's affidavit points to any risk of harm being inflicted on him, much less a substantial risk of serious harm as this tort requires. Embarrassingly, plaintiff decimates his own position on this issue by citing to <u>Howard v. Chimps, Inc.</u>, 251 Or. App. 636, 649, 284 P.3d 1181, 1188-89 (2012) in supposed support. That case involved the Oregon Court of Appeals soundly rejecting the fundamental premise of the therein plaintiff's contention that she had adequately supported a gross negligence claim when – as an intern at defendant's chimpanzee sanctuary – a chimpanzee viciously attacked and injured her while she was cleaning its cage. In denying that even *that* graphic scenario rose to the level of gross negligence, the Court noted that leaving unlocked a tunnel door to the cage of a wild animal – though reasonably viewed as reflecting a general indifference to plaintiff's physical safety – still didn't meet the requisite criteria of showing that the defendant "acted with reckless disregard of safety or indifference to the probable consequences of its acts" toward the intern. <u>Howard v. Chimps, Inc.</u>, 251 Or. App. 636, 649, 284 P.3d 1181, 1188-89 (2012).

The <u>Howard</u> case decimates, not supports, establishing a litigable question of gross negligence here: plaintiff's physical safety is unaffected by getting or not getting food at a buffet counter, there is zero risk to his person or property simply on account of him being asked to leave a restaurant, and no consequence of any act

6

by any defendant includes actual harm being inflicted on him – other than the purely psychic harm he rails on about, which the tort of gross negligence does not of course encompass in any manner. The claim for gross negligence has to fail as a matter of law and each of defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen individually are entitled to summary disposition of this claim as well.

D. Plaintiff's Evidence Fails To Support Liability For ADA Violations

As with the miscite to Howard, plaintiff makes a similar critical error in his Response by claiming that his position on the two ADA claims is somehow supported by what is in fact an *inapposite* case, that of C.L. v. Del Amo Hosp., Inc., 992 F.3d 901 (9th Cir. 2021), a case which in great detail supports *defendants'* position, not plaintiff's. In that case, the plaintiff therein had provided evidence that she had trained her dog "Aspen to perform specific tasks to mitigate symptoms of her disability". Id. at 906. In reviewing all the things she did, and in then determining the relevant question of whether "Aspen was a trained service dog at the time of trial", the Court defined the applicable test:

"…the statute defines a service dog by the outcome of training—what the dog is capable of doing **to ameliorate an individual's disability**. The language also makes clear that the dog's capabilities must be trained **for that purpose**; a well-trained companion animal that happens to alleviate a

person's anxiety would not suffice, *see id.*, but a dog trained by the individual to perform **certain tasks to alleviate that anxiety would**." (Emphasis added).

Id at 911.

While plaintiff's Response here then noted the court's observation in C.L. that "[T]here is no requirement as to the amount or type of work a service animal must provide for the benefit of the [person with a disability]", plaintiff conveniently (and unfairly) omitted the very next, and more important, sentence the court stated right after that one: "**There must be some evidence of individual training to distinguish the service animal from the ordinary pet**." Id at 911.

In other words, it is uncontested in this case, and very clear under the caselaw, that individuals may self-train service animals without obtaining formal certification. That Mr. Mahler did not get any "certification", or did not have another person train his dog, is simply not the issue of concern here. That Mr. Mahler did not train his dog *specifically assist with his disability*, in contrast, is. Just as 28 CFR Section 36.104 specifically requires ("the work or tasks performed by a service animal must be directly related to the individual's disability"), whatever the training actually is, the result of it **must be distinctive to and directed to aiding the disability**. If there is no identification of the training as resulting in being specially assistive, then it is not the type of training that is

8

protected under the ADA.

Here, the only evidence on that particular requirement which plaintiff can muster is a single, almost painfully mundane, event: that he had trained the dog in "*retrieving objects and handing them to me so I did not have to bend down*". Affidavit of Robert Mahler, Etc. at 2:6-7. There is another name for that most classic of pet dog tricks: it is called "fetch". If Mr. Mahler's best "evidence" that his dog is a service animal is because it can fetch, then C.L. v. Del Amo Hosp., Inc., *supra*, demands that his ADA claims fail at the outset since this dog's fetching an object reflects exactly what the Court *disallowed* as protected in the C.L. case: a well-trained companion animal which happens to alleviate a person's discomfort, yet which does not particularly ameliorate their disability. Were being taught to "fetch" alone sufficient to meet ADA requirements, then the element of "training" would be divested of all content and meaning, as there would be no discernable distinction between an "ADA trained dog" and "every pet dog in the country that isn't too dumb to pick up something off the ground and bring it to their owner".

Plaintiff's abject failure to provide the Court a single piece of evidence *beyond* that his dog fetches objects, makes both ADA based claims fail as a matter of law and fact and defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen, are each separately and individually entitled to summary disposition of

both of those claims.

E. Plaintiff's Evidence Fails To Support Liability For IIED

Again, while plaintiff's Response is not shy at all about articulating (and expends considerable effort trying to trigger this Court's emotional reaction to) plaintiff's *own* purportedly compromised mental state, the Response completely miscomprehends the significance of how cause and effect operate in IIED: it is not a tort controlled by the effect of "how the plaintiff specifically feels" – it is a tort controlled by the cause of "what the defendant has specifically done". If the tort elements were satisfied every time any plaintiff simply registered an adverse emotive response to any unwanted stimulus, no possible endpoint to liability would exist.

Instead, plaintiff was tasked in his Response with doing what is commanded of all such opponents to this type of motion: presenting evidence of a *particular act of the defendants* as "an extraordinary transgression of the bounds of socially tolerable conduct", i.e., pointing out exactly what they did that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". House v. Hicks, 218 Or App 348 at 358 (2008), rev den, 345 Or 381 (2008) (quoting from the Restatement (Second) Of Torts Section 46, cmt. d (1965)).

The only evidence of defendants' actual conduct which plaintiff has found for consideration, though, is Ms. Chen saying "No dog" to plaintiff and then telling him that he "needed to leave". Affidavit of Robert Mahler, Etc. at 3:6-10. Saying those words to a customer in a restaurant, loudly or otherwise, isn't conduct even remotely *near* the level of egregiousness which those definitions especially require.

As icing on that cake, moreover, neither of those spoken phrases (nor anything else recited in Mr. Mahler's affidavit) evidences the requisite "intent to harm" either; i.e., this Court has been given nothing from which to legitimately discern or infer that Ms. Chen was expressing such phrases to plaintiff for the deliberate purpose of inflicting severe emotional distress on him as also required by the tort. Patton v. J.C. Penney Co., 301 Or. 117 (1986). It is the most shallow of opposing ploys for counsel to proclaim "Ms. Chen knew, with substantial certainty, that her conduct would cause significant emotional distress" (Plaintiff's Response, Etc. at 11:3-4) yet to then make no citation to the record whatsoever to independently support that personal opinion about her mental state. Not a deposition excerpt of hers, a response to a request for admission by her, a scrap of written correspondence by her, a sworn affidavit of hers, or a revealing document inferring her mental state is proffered, so the inadmissible opinion by plaintiff's advocate sits there bare and alone as the only "proof".

That type of "proof" is useless, and for that and all the other reasons listed, plaintiff therefore cannot establish the essential elements of the IIED claim and each of defendants Jindi Ou, Steady Stream, Inc., Mizumi Buffet, and Lucy Chen are separately and individually entitled to summary disposition of the claim.

CONCLUSION

All four defendants continue to respectfully submit that their independent and parallel motions should be granted.

Respectfully submitted,

DATED: January _6_, 2025

By: _____
Geordie Duckler, OSB #873780
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

Submitted by:
Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

1

## CERTIFICATE OF SERVICE

2      I certify that on the 6th day of January, 2025, I served a true and correct copy

3
of DEFENDANTS JINDI OU, STEADY STREAM, INC., MIZUMI BUFFET,
4
5      AND LUCY CHEN'S REPLY TO RESPONSE TO MOTION FOR SUMMARY

6      JUDGMENT on:

7
                    Kevin T Lafky
8                    Lafky & Lafky
                    429 Court St NE
9                    Salem OR  97301

10      by mailing said documents via first class mail in a sealed envelope with postage

11      prepaid to the address shown above, and deposited in the U.S. Mail at Portland,

12      Oregon, on the 6th day of January, 2025.

13
                    GEORDIE DUCKLER, P.C.
14

15                    By:_____
16                       Geordie Duckler, OSB No. 873780
                         Attorney for defendants
17

18

19

20

21

22

23

24

25

26

PAGE 1 - CERTIFICATE OF SERVICE