Kevin T. Lafky, OSB#852633
klafky@lafky.com
**LAFKY & LAFKY**
429 Court Street NE
Salem, OR 97301
Tel: 503.585.2450
Fax: 503.585.0205
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| ROBERT EVANS MAHLER, <br><br> Plaintiff, <br><br> vs. <br><br> JINDI OU; STEADY STREAM, INC.; MIZUMI BUFFET; LUCY CHEN; and DOES 1-10, <br><br> Defendants. | Case No. 3:23-cv-1833-AN <br><br> *Plaintiff's* <br> **WITNESS STATEMENTS** |

Plaintiff intends to introduce the following witnesses, the anticipated substance of the direct testimony thereof which is set forth below.

Page 1 of 5 – WITNESS STATEMENTS

| Witness Name: | Robert Mahler |
|---|---|
| Estimated Time for Direct: | 1 hour |
| Relationship to Case: | Plaintiff |

**Substance of Testimony:**

Mr. Mahler will testify as follows:

- He is the plaintiff in this matter.
- He suffers from several disabilities including but not limited to advanced osteo-arthritis, left-sided hemiplegia as a result of a C-3 cervical fracture, vasovagal syncope, and left and right knee implant prosthetics.
- His conditions cause significant impairment to one or more major life activities including sitting, standing, walking, bending over, and thinking.
- He has used a service dog for at least 15 years as a result of, and to accommodate, his disabilities.
- He trained each of his service dogs himself.  Guliet was initially trained as a puppy at PetSmart, but he trained her afterward.
- At all times relevant to the present matter, his service dog was a Doberman named "Guliet".
- His service dog assisted with multiple activities of daily living, but primarily assisted with reduction of anxiety and assisting him reach and retrieve items.
- When he went out into public at places that were not ordinarily dog-friendly, he put a red vest on Guliet that read, "Ask to Pet" on one side and "Service Dog" on the other.
- On March 4, 2022, he visited Mizumi Buffet with Guliet.  He was hungry because he had just had an medical appointment for which he had to fast in advance.
- Guliet was a trained service dog and well-behaved.  On the day in question, Guliet was leashed and wearing her red vest.
- When he entered the restaurant, he asked an employee whether there was a fairly empty section of the restaurant in which he could sit. He had hoped not to disturb other patrons who might be disturbed by Guliet's presence.  The employee agreed and Plaintiff went to gather food.
- While in the buffet line, Plaintiff held his plate in one hand and Guliet's leash in the other.  Guliet remained on all four feet in a normal standing position the entire time. She did not put her head on the buffet table or near trays.

Page 2 of 5 – WITNESS STATEMENTS

- When he went to go sit down, defendant Lucy Chen approached him and loudly said, "No dog." Ms. Chen told him that he needed to leave, took his food, and walked him to the front of the restaurant.
- Defendants told him that he could not have his service dog accompanying him in the restaurant.
- He explained that the dog accompanying him was his service dog and explained the ADA federal law to defendants including the two questions Ms. Chen was legally allowed to ask to determine whether Guliet was a service dog.
- Ms. Chen refused to listen and kept telling him to get out.
- He tried to inform Ms. Chen that she was required by law to allow him to stay and eat but she refused to listen. The confrontation was public, obvious, and outrageous.
- Another restaurant patron approached them and supported him, but Ms. Chen refused to listen to the patron and forced Plaintiff out of the restaurant.
- Guliet was under his control at all times and was behaving herself.
- Guliet had accompanied him to several restaurants for dining and was regularly calm, friendly, and in control.
- Guliet has passed away but was a very smart, well-behaved service canine and companion.
- Defendants told him he could not serve himself in the buffet line.
- Other patrons admonished defendants to allow him to have his service dog with him but defendants ignored the patrons.
- Defendants ordered him to leave the restaurant without eating.
- When defendants ordered him to leave the restaurant, they did so loudly and in front of several restaurant patrons.
- As a direct and proximate result of defendants' conduct in and around ordering him to leave Mizumi Buffet, he was publicly humiliated, blatantly discriminated against, and suffered undue and excessive anxiety, shame, confusion, distress, fear, uncertainty, embarrassment, conscious pain and suffering, and mental and emotional anguish in various forms.

| Witness Name: | Lucy Chen |
|---|---|
| Estimated Time for Direct: | 45 minutes |
| Relationship to Case: | Defendant |
| Substance of Testimony: | |

Page 3 of 5 – WITNESS STATEMENTS

Ms. Chen is expected to, in part, testify as follows:

- She has worked at several restaurants throughout her life.
- She saw service animals in those restaurants.
- She recognized service animals by a specific look and they would walk in front of their owners or beside their owners.
- She is familiar with service dogs that wear all types of different vests.
- When she worked at a restaurant in New York, service dogs would have vests. Owners would tell them that the dog was a service dog.
- When she worked in restaurants in Pennsylvania, they would ask customers to be careful and keep an eye on their dog and keep their dog at the table.
- She worked at her brother's restaurant in Roseburg, Oregon for 13 years. Customers would bring service animals there and they would have a vest and leash symbolizing it was a service dog. Sometimes she would ask for certification and people would show her. If they did not have certification, they would let the dog stay under the table and ask them to be careful.
- If the customer needed help getting food, they told them to be careful and keep a safe distance from the food.
- Sometimes she could tell from the manners of the owner whether the owner really needed the dog's help to get their food.
- If the dog did not have a vest and the owner did not have proof of certification, they would not let the dog go to the food counter and would have the dog stay under the table. This is the way it was at all restaurants where she worked.
- She remembers Mr. Mahler and the day he came into the restaurant.
- She saw him come into the restaurant often and he came 2-3 times per month.
- She saw Mr. Mahler come to the restaurant with his friends and she knew if dogs were service dogs because some of them were pretty and had long hair or fur so those were not service dogs. The service dogs had short hair or fur and looked upbeat and wore service dog clothes.
- They let Mr. Mahler take his dog to the buffet because he told them Guliet was a service dog and she wore service dog clothes.
- She denies telling him to leave the restaurant. She denies that a customer told her what she was doing to him was not legal.
- A customer complained that the dog was too close to the buffet.
- She did not help him with the buffet.

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

| Witness Name: | (name being determined and will be updated) |
|---|---|
| Estimated Time for Direct: | 30 minutes |
| Relationship to Case: | Witness |

| Substance of Testimony: |
|---|
| This witness will testify as follows:<br><br>▪ They were a patron at the restaurant on March 4, 2022.<br>▪ They saw and heard the confrontation between Ms. Chen and Mr. Mahler.<br>▪ They approached Ms. Chen and told her what she was doing regarding the dog was unlawful.<br>▪ They supported Mr. Mahler's right to have his service dog. |

DATED this April 2, 2026.

/s/ Daemie M. Kim
Daemie M. Kim, OSB#123624
dkim@lafky.com
**LAFKY & LAFKY**
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I certify that on the 2ND day of April 2026, I served a true and correct copy of the foregoing on Geordie Duckler, attorney for defendants through the court's electronic filing system.

DATED April 2, 2026.

/s/ Daemie M. Kim
Daemie M. Kim, OSB#123624
dkim@lafky.com
**LAFKY & LAFKY**
*Attorneys for Plaintiff*

Page 5 of 5 – WITNESS STATEMENTS