Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER, | Case no. 3:23-cv-1833-AN |
| Plaintiff, | |
| vs. | DEFENDANTS' TRIAL MEMORANDUM |
| JINDI OU; STEADY STREAM, INC.; MIZUMI BUFFET; LUCY CHEN; and DOES 1-10, | |
| Defendants. | |

Pursuant to the Court's February 20, 2026 Trial Management Order and

Supplemental Jury Trial Management Order Regarding the JERS System, and on

the 21st day before the pretrial conference in this action as ordered, defendants, by

and through counsel, hereby provide this Court their trial memorandum regarding

1

the factual and legal issues anticipated to be raised before the jury for determination at trial:

MATERIAL FACTS

Plaintiff was a customer at a local Chinese buffet restaurant operated by defendants. The core incident involved the defendant bringing his dog into defendants' restaurant, the dog then standing with its head up and leaning onto the buffet counter to try to get at food in the buffet, and the defendants informing him that the dog was too close to the food and asking him to keep the dog at his table.

Plaintiff was a regular at the restaurant for nearly six years, frequenting it two to three times a month, and each time he came in would bring his dog with him which would then sit under or near the table where he eats. Each time plaintiff was treated well in a friendly and respectful fashion, and staff knew exactly which table he prefers and what drink he liked to order.

At around 2:00 pm on March 4, 2022, plaintiff came into the restaurant as normal. Defendant owner and manager Lucy Chen was assisting a customer and before she had a chance to greet him, he walked straight to the hot food counter with his dog to get food. As plaintiff was helping himself to food from the buffet, another customer noticed plaintiff's dog standing with its head up, leaning directly on the buffet counter, sniffing a tray of spring rolls.

The concerned customer informed restaurant staff and a staff member told

plaintiff that a customer said his dog was too close to the food. A different customer approached Ms. Chen and noted that the dog's head was still on the buffet counter. Ms. Chen herself saw the dog's head on the food counter, almost as high as a child of five or six right where the food was. She walked over to plaintiff and politely said to him that his dog was too close to the food, and that some other customers had complained. She asked him to please keep his dog under the table like he usually had done in the past.

Plaintiff did not respond but simply took his dog back to his seat. For the health and safety of other customers, Ms. Chen had the chef throw away all six trays of food and remake them. Instead of sitting down to eat, however, plaintiff then immediately walked over to the sushi counter with his dog. As he passed by, Ms. Chen offered to hold his dog while he got some sushi. He ignored her and spoke with another customer for a few minutes before then leaving the restaurant.

Ms. Chen never ordered plaintiff to leave the restaurant or to take the dog out of the restaurant. She never commanded or instructed or demanded of him anything in any fashion. To the contrary, she encouraged him to stay and enjoy his meal with his dog and asked him simply to refrain from allowing his dog to try to get food off the buffet for health and hygiene reasons. Numerous state and county health rules, several via posted signs in the restaurant, reflect that it is both unhealthy and unsafe for the dog to be touching or near the food in the buffet.

## PROCEDURAL POSTURE, CLAIMS AND DEFENSES

Plaintiff filed his complaint on December 6, 2023, over a year and one half later. He claims he was denied "proper meal service", listed five "counts" each identifying a different legal theory regarding the core event, identified four defendants, and alleged $750,000.00 in general, special, and punitive damages.

Defendants asserted and preserved the following affirmative defenses: failure to state a claim, comparative fault, consent, no constitutional violation, noncompliance with statutory requirements, direct threat to health or safety, and no individual liability.

After defendants' summary judgment motion, three defendants and three of the counts remain in place for trial: negligence, gross negligence, and "ADA Violation – Failure to Accommodate" all against the three defendants Steady Stream, Inc., Mizumi Buffet, and individual Lucy Chen. All affirmative defenses remain. Plaintiff now seeks only $250,000.00 in general damages alone against all three defendants, has no documents to present other than a photo of the dog, and has no witnesses other than himself.

## APPLICABLE LAW

### 1. Negligence

To prevail on his negligence claim, plaintiff will have to prove that each defendant's conduct created a foreseeable and unreasonable risk of legally

cognizable harm to him and that the conduct in fact caused that kind of harm to him. Chapman v. Mayfield, 358 Or 196 (2015); Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J, 303 Or 1 (1987); Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP, 336 Or 329 (2004).

Plaintiff must prove that each defendant created a foreseeable and unreasonable risk of legally cognizable harm, as well as that each's actual conduct in fact caused that kind of harm to him. Sloan on behalf of Estate of Sloan v. Providence Health Sys.-Oregon, 364 Or 635 (2019).

Because this is a case where the parties are complete strangers and have no special status or legally recognized relationship between them, then only facts alone are what determine if any particular defendant's conduct or omissions somehow "caused" plaintiff to be harmed. Certainly, no defendant is required as a general principle to have to affirmatively protect plaintiff or all others from harm or to avoid causing injury to plaintiff or all others. Tomlinson v. Metro. Pediatrics, LLC, 362 Or 431 (2018). Plaintiff is thus required to establish a causal relationship between some specific negligent conduct or omission of any particular defendant and some specific harm to him in order to support recovery on this theory. Harris v. Kissling, 80 Or App 5 (1986).

Moreover, a plaintiff who claims to have suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such

5

emotional harm in the absence of some sort of physical impact. Norwest v. Presbyterian Intercommunity Hosp., 293 Or. 543, 558-61 (1982). The only exception to that rule is when the defendant violated a "legally protected interest" independent of the plaintiff's interest in being free from negligent conduct. Under that narrow exception, if a plaintiff can identify the violation of an "independent legally protected interest", then the tort can proceed.

In Philibert v. Kluser, 360 Or. 698 (2016), the Oregon Supreme Court set out the framework for determining what is a "legally protected interest". The court a) identified it as an independent basis of liability separate from the general duty to avoid harm, b) added that not just any legally protected interest will suffice, and c) required that the interest be of sufficient importance as a matter of public policy to merit protection from emotional impact.

The Court noted that a legally protected interest may derive from a) a trial court order which creates one so that the violation of that order is the basis; b) a statute designed to protect the plaintiff from the type of emotional harm that occurred; or c) a trial court's common-law authority to recognize the existence of one apart from the interest in avoiding foreseeable risk of harm.

Since plaintiff does not allege any physical impact to himself personally nor did any occur, then analysis of this negligence claim has three required steps: First, plaintiff has to prove the violation of a legally protected interest. Second, plaintiff

has to prove whether such interest is of sufficient importance as a matter of public policy to merit protection. Third, plaintiff has to prove that his distress was the foreseeable result of the violation of the legally protected interest. K. v. Banana Republic, LLC, 317 Or App 249, 254–55 (2022).

Finally, under this theory, to prove that any defendant's negligence caused a particular injury to support recovery, there must be sufficient evidence to establish that such a causal relationship is reasonably probable; i.e., testimony that an injurious consequence is *possible*, rather than probable, is not sufficient. Elan v. Tate, 294 Or App 76, 430 P3d 179 (2018). "Cause" has a well-defined legal meaning in Oregon: it means cause-in-fact. Sandford v. Chev. Div. Gen. Motors, 292 Or. 590, 605–06 (1982). Proof of cause-in-fact must have the quality of reasonable probability, and a mere possibility that the alleged fault of the defendants was the cause of plaintiff's injuries is not sufficient. See, Joshi v. Providence Health System of Oregon Corp., 108 P.3d 1195, 1201 (Or. App. 2005) aff'd, 149 P.3d 1164 (Or. 2006).

Here, plaintiff is required to provide substantial evidence tending to show: (1) that each of the defendants Steady Stream, Inc., Mizumi Buffet, or Lucy Chen themselves separately and individually engaged in some specific careless act; (2) that the particular act identified was the proximate cause of his harm; and (3) that each of the defendants Steady Stream, Inc., Mizumi Buffet, or Lucy Chen,

separately and individually knew or by the exercise of reasonable care ought to have known that what they were doing was then careless. If there is no substantial evidence tending to establish any one of the above essential elements, then cause is simply not established. Bogart v. Cohen-Anderson Motor Co., 164 Or 233, 237 (1940).

More specifically, Oregon uses the "substantial factor" test to determine whether a defendant's activities were the cause of a plaintiff's harm. Seitz v. State By and Through Albina Human Resources Ctr., 788 P.2d 1004, 1010 (Or. App. 1990). Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct. Plaintiff is required to provide a sufficient factual basis to show that each defendant had *some* responsible involvement with the event in order to be found negligent for its occurrence. Fortney v. Crawford Door Sales Corp. of Oregon, 97 Or App 276, 280 (1989); see generally, Coleman v. Stark, 1 Or 115, 116 (1854).

2. Gross Negligence

To prevail on a claim of gross negligence, plaintiff must prove that each defendant acted with conscious indifference to a substantial risk, where a reasonable person in the defendant's situation would have had to know there was a strong possibility that serious harm would be inflicted on another or their property by such misconduct. Storm v. Thompson, 64 P.2d 1309 (1937). Gross negligence

is such a want of care that would cause an inference of conscious indifference of consequences. The question of gross negligence must be resolved with reference to the particular circumstances of each case since there is no general definition that applies in all cases. Reese v. Bridgmon, 217 Or. 290, 291 (1959).

What is essential to this claim is competent evidentiary proof that each specific defendant acted with indifference to the probable consequences of a specific act where the circumstances proclaimed danger and warned the defendant of the impending disaster. Emerson v. Mt. Bachelor, Inc., 273 Or. App. 524, 525 (2015).

3. Failure to Accommodate under the ADA

42 U.S.C. Section 12182(a) states that "*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*" Within that statute, Section 12182(b)(1)(A)(i) states that "*No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*"

28 CFR Section 36.102 applies the ADA to places of public accommodation, and 28 CFR Section 36.302(c)(1) states that *"Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability."*

Specifically here, a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, is considered actionable discrimination unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1078 (9th Cir. 2004).

The determination of whether a particular modification is "reasonable" involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it. The issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might be necessary to ensure his ability to enjoy a public accommodation. Fortyune v. Am. Multi-

Cinema, Inc., *supra*.

As to this claim, defendants note the special significance of their affirmative defense of "direct threat". 28 C.F.R. § 36.208 provides that an individual can be denied an accommodation when the individual's actions pose a direct threat to the health or safety of others. Subsection (b) notes that direct threat means that the significant risk cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services. Lockett v. Catalina Channel Express, Inc., 496 F.3d 1061, 1063 (9th Cir. 2007). In Lockett, a case directly relevant to the claims brought here, plaintiff was a legally blind passenger who used a guide dog to assist her. Pursuant to a policy of excluding animals from the ferry lounge, which was initiated based on a request for a dander-free zone, the defendant, a ferry operator, refused to sell the passenger a ticket in the lounge because it would not allow her to take her guide dog into the area. The court found that the defendant ferry operator was entitled to summary judgment as to the passenger's ADA claim because the ferry operator, when suddenly faced with a possible threat to the health and safety of its passengers, made a one-time reasonable judgment under 28 C.F.R. § 36.208. Id.

As to service animals in particular, a place of public accommodation does not discriminate, if (1) the accommodations would fundamentally alter the nature of the facility or service it provides, 42 U.S.C.S. § 12182(b)(2)(A)(ii); or (2) based

11

upon an individual assessment, the place of public accommodation determines that the service animal poses a substantial and direct threat to health or safety which cannot be mitigated by reasonable accommodations, 28 C.F.R. § 36.208. Tamara v. El Camino Hosp., 964 F. Supp. 2d 1077 (N.D. Cal. 2013).

Finally, as to damages, damages for emotional distress under the "failure to accommodate" claim require testimony regarding the effect of the defendants' actions on the plaintiff's mental and emotional health. Daily deterrence damages require plaintiff to prove that he was deterred on a particular occasion from attempting to attend a place of public accommodation. This inquiry involves as much an examination of the plaintiff's mental state as it does an examination of the extent of the alleged ADA violations. Wander v. Kaus, 304 F.3d 856, 857 (9th Cir. 2002).

Respectfully submitted,

DATED: April 8, 2026

By: _____
Geordie Duckler, OSB #873780
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

## CERTIFICATE OF SERVICE

I certify that on the 8th day of April, 2026, I served a true and correct copy of DEFENDANTS' TRIAL MEMORANDUM; DEFENDANTS' LAY WITNESS STATEMENT; DEFENDANTS' PREMARKED EXHIBIT LIST on:

> Kevin T Lafky
> Lafky & Lafky
> 429 Court St NE
> Salem OR  97301
> klafky@lafky.com

by mailing and emailing said documents via first class mail in a sealed envelope with postage prepaid to the address shown above, and deposited in the U.S. Mail at Portland, Oregon, on the 8th day of April, 2026.

GEORDIE DUCKLER, P.C.

By:_____
Geordie Duckler, OSB No. 873780
Attorney for defendants

PAGE 1 - CERTIFICATE OF SERVICE