Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER,<br><br>Plaintiff,<br><br>vs.<br><br>JINDI OU; STEADY STREAM, INC.;<br>MIZUMI BUFFET; LUCY CHEN; and<br>DOES 1-10,<br><br>Defendants. | Case no. 3:23-cv-1833-AN<br><br>DEFENDANTS' PREMARKED<br>EXHIBIT LIST |

Pursuant to the Court's February 20, 2026 Trial Management Order and

Supplemental Jury Trial Management Order Regarding the JERS System, and on

the 21st day before the pretrial conference in this action as ordered, defendants, by

and through counsel, hereby provide this Court their list of premarked exhibits

1

which defendants anticipate offering into evidence at trial:

**EXHIBIT NO.**                    **DESCRIPTION**

501.                    Photographs (2) of general buffet area

502.                    Photographs (2) of posted "Food Sanitation Rule"

503.                    Photographs (2) of posted buffet shielding diagram

504.                    Photograph (1) of posted employee health sign

505.                    Photographs (3) of Lucy Chen at buffet area

506.                    Photographs (1) of length of dining area from front

register to dining area

507.                    Photograph (1) of table area where plaintiff sat

508.                    Photograph (1) of posted service animal notice

509.                    Oregon Health Authority Rule 6-501.115 entitled

"Prohibiting Animals"

510.                    Oregon Health Authority "Oregon Food Sanitation

Rules"

511.                    Complaint for Damages in Clackamas County

Circuit Court case number 29CV44282

DATED: April _8_, 2026

By: _____

Geordie Duckler, OSB #873780
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

2

## CERTIFICATE OF SERVICE

I certify that on the 8th day of April, 2026, I served a true and correct copy of

DEFENDANTS' TRIAL MEMORANDUM; DEFENDANTS' LAY WITNESS

STATEMENT; DEFENDANTS' PREMARKED EXHIBIT LIST on:

Kevin T Lafky
Lafky & Lafky
429 Court St NE
Salem OR  97301
klafky@lafky.com

by mailing and emailing said documents via first class mail in a sealed envelope

with postage prepaid to the address shown above, and deposited in the U.S. Mail at

Portland, Oregon, on the 8th day of April, 2026.

GEORDIE DUCKLER, P.C.

By:_____
        Geordie Duckler, OSB No. 873780
        Attorney for defendants

PAGE 1 - CERTIFICATE OF SERVICE



3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 501a



3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 501 b



**Environmental Health Services**

Multnomah County
Health Department
Public Health

## Oregon DHS Food Sanitation Rule: 6-501.115-Prohibiting Animals*

(A) Except as specified in (B) and (C) of this section, live animals may not be allowed on the premises of a food establishment.

(B) **Live animals may be allowed in the following situations** if the contamination of food; clean equipment, utensils, and linens; and unwrapped single-service and single-use articles cannot result:

   (1) Edible fish or decorative fish in aquariums, shellfish or crustacea on ice or under refrigeration, and shellfish and crustacea in display tank systems;

   (2) Patrol dogs accompanying police or security officers in offices and dining, sales, and storage areas, and sentry dogs running loose in outside fenced areas;

   (3) In areas that are not used for food preparation and that are usually open for customers, such as dining and sales areas, service animals that are controlled by the disabled employee or person, if a health or safety hazard will not result from the presence or activities of the service animal;

   (4) Pets in the common dining areas of group residences at times other than during meals if:
      (a) Effective partitioning and self-closing doors separate the common dining areas from food storage or food preparation areas,
      (b) Condiments, equipment, and utensils are stored in enclosed cabinets or removed from the common dining areas when pets are present, and
      (c) Dining areas including tables, countertops, and similar surfaces are effectively cleaned before the next meal service; and

   (5) In areas that are not used for food preparation, storage, sales, display, or dining, in which there are caged animals or animals that are similarly restricted, such as in a variety store that sells pets or a tourist park that displays animals.

(C) **Live or dead fish bait may be stored** if contamination of food; clean equipment, utensils, and linens; and unwrapped single-service and single-use articles cannot result.

847 NE 19th Ave Suite 250  •  Portland, OR 97232  •  mchealthinspect.org  •  Phone: 503.988.3400  •  Fax: 503.988.5844

星期一 | 星期二 | 星期三 | 星期四 | 星



3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 502b



3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 503*a*



3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 503 *b*





3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 505a



3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 505b



3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 505c



3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 506a



3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 507a



3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 508 a



# Oregon Food Sanitation Rules

## EFFECTIVE JANUARY 1, 2026

OAR 333-150 – Food Sanitation Rules
OAR 333-157 – Inspection and Licensing Procedure
OAR 333-158 – Combination Food Service Facilities
OAR 333-160 – Destruction of Food Unfit for Human Consumption
OAR 333-162 – Mobile Units, Commissaries and Warehouses

Foodborne Illness Prevention Program
Food, Pool & Lodging Health and Safety Program

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 509a

## 6-501.114 Maintaining Premises, Unnecessary Items, and Litter.

The PREMISES shall be free of:

(A) Items that are unnecessary to the operation or maintenance of the establishment such as EQUIPMENT that is nonfunctional or no longer used; and

(B) Litter.

## 6-501.115 Prohibiting Animals.

(A) Except as specified in ¶¶ (B), (C), (D) and (E) of this section, live animals may not be allowed on the PREMISES of a FOOD ESTABLISHMENT. ᴾᶠ

(B) A FOOD ESTABLISHMENT shall permit the use of a SERVICE ANIMAL by an individual with a disability on its premises unless the SERVICE ANIMAL poses a direct threat to the health and safety of others.

    (1) For purposes of section 6-501.115 the term "direct threat" means a significant RISK to the health or safety of others that cannot be eliminated by modification of policies, practices, or procedures or by provision of auxiliary aids or services.

    (2) In determining whether a SERVICE ANIMAL poses a direct threat to the health or safety of others, a FOOD ESTABLIHSMENT must make an individualized assessment, based on reasonable judgment that relies on the best available objective evidence, to ascertain: The nature, duration, and severity of the RISK; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the RISK.

    (3) A FOOD ESTABLISHMENT may ask an individual with a disability to remove a SERVICE ANIMAL from the premises if:

        (a) The animal is out of control and the animal's handler does not take effective action to control it; or

        (b) The animal is not housebroken.

(C) *Live animals may be allowed in the following situations if the contamination of FOOD; clean EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE and SINGLE-USE ARTICLES cannot result:*

    (1) *Edible FISH or decorative FISH in aquariums, shellfish or crustacea on ice or under refrigeration, and shellfish and crustacea in display tank systems;*

    (2) *Patrol dogs accompanying police or security officers in offices and dining, sales, and storage areas, and sentry dogs running loose in outside fenced areas;*

    (3) *In areas that are not used for FOOD preparation and that are usually open for customers, such as dining and sales areas, SERVICE ANIMALS that are controlled by the disabled EMPLOYEE or PERSON, if a health or safety HAZARD will not result from the presence or activities of the SERVICE ANIMAL;*

    (4) *Pets in the common dining areas of institutional care facilities such as nursing homes, assisted living facilities, group homes, or residential care facilities at times other than during meals if:*

        (a) *Effective partitioning and self-closing doors separate the common dining areas from FOOD storage or FOOD preparation areas,*

---

138

DEFENDANTS' EXHIBIT 509b

(b) *Condiments, EQUIPMENT, and UTENSILS are stored in enclosed cabinets or removed from the common dining areas when pets are present, and*

(c) *Dining areas including tables, countertops, and similar surfaces are effectively cleaned before the next meal service; and*

(5) *In areas that are not used for FOOD preparation, storage, sales, display, or dining, in which there are caged animals or animals that are similarly confined, such as in a variety store that sells pets or a tourist park that displays animals.*

(D) *Live or dead fish bait may be stored if contamination of FOOD; CLEAN EQUIPMENT, UTENSILS, and LINENS; and unwrapped SINGLE-SERVICE AND SINGLE-USE ARTICLES cannot result.*

(E) *Pet dogs may be allowed in outside seating areas of a FOOD ESTABLISHMENT under the following conditions:*

(1) *The FOOD ESTABLISHMENT prepares written procedures that include:*

(a) *A diagram of the outdoor area to be designated as available to CONSUMERS with pet dogs;* Pf

(b) *The establishment's procedure for assuring that employees do not touch, pet or otherwise handle pet dogs and for immediately cleaning accidents involving dog waste. The procedure must also describe the location of materials and EQUIPMENT necessary to clean up accidents involving dog waste;* Pf *and*

(c) *The establishment's procedure for notifying employees and CONSUMERS of the requirements of this paragraph.* Pf

(2) *Pet dogs may not come into contact with serving dishes, UTENSILS and TABLEWARE. Pet dogs are also not allowed on chairs, tables and other furnishings.* Pf

(3) *Employees and CONSUMERS may not provide FOOD to pet dogs.* Pf

(4) *Pet dogs must be on a leash and under control of the CONSUMER at all times.* Pf

(5) *At no time may pet dogs be permitted to travel through the indoor or non-designated outdoor portions of the FOOD ESTABLISHMENT.* Pf

---

139

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 509ᴄ

Home        Business        Voting        Elections        State Archives        Audits

# Oregon Health Authority

OARD Home

Search Current Rules

Search Filings

Access the Oregon Bulletin

Access the Annual Compilation

FAQ

Rules Coordinator / Rules
Writer Login

## Public Health Division - Chapter 333

### Division 150
### FOOD SANITATION RULES

**333-150-0000**
**Food Sanitation Rule**

(1) Authority and Purpose. Unless exempted, food establishments must comply with this rule. This rule establishes definitions, sets standards for management and personnel, food protection, and equipment and facilities, water supply, sewage disposal, provides for food establishment plan review, and employee restriction to safeguard public health and provide consumers food that is safe, unadulterated, and honestly presented.

(2) Incorporation by Reference. The requirements in the U.S. Public Health Service, Food and Drug Administration (FDA), Food Code 2022, Chapters 1 through 8 are adopted and incorporated by reference. The Food Code is available at https://www.fda.gov/food/fda-food-code/food-code-2022.

(a) The structural nomenclature of the 2022 FDA Food Code is as follows:

Chapter 9

Part 9-1

Subpart 9-101

Section (§) 9-101.11

Paragraph (¶) 9-101.11(A)

Subparagraph 9-101.11(A)(1).

(b) References in these rules to the 2022 FDA Food Code use the structural nomenclature identified in subsection (2)(a) of this rule.

(3) Deletions. The following sections, paragraphs or subparagraphs of the 2022 FDA Food Code are deleted in their entirety: 2-301.13, 3-204.10, 3-401.15, 3-602.12, 4-301.12(C)(5), (D) and (E), 4-603.16(C), 8-302.11, 8-302.14(E), 8-401.10(B), 8-401.20, 8-402.20(A)(3), 8-402.40, 8-406.11, 8-501.40 and Annex 1 through 8.

(4) Definitions. Adopt paragraph 1-201.10(B) with the following amendments and additions to read:

(a) "Assembly" means the act of putting together foods that do not require further preparation. This includes but is not limited to placing a hot dog on a bun, or placing beans, lettuce, and cheese on a tortilla.

(b) "Authority" means the Oregon Health Authority.

(c) "Base of operation" means the licensed restaurant, commissary or warehouse that services a mobile unit or vending operation.

(d) "Benevolent meal site" means:

(A) A periodic food service operation run by a benevolent organization that provides food to the needy or indigent without charge; and

(B) The meal service does not operate from a permanent kitchen facility.

(e) "Catering" means the preparation of food in an approved food establishment and the transportation of the food for service and consumption at some other site for a private event.

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 a

(f) "Close" means to summarily stop the operation of a food establishment pursuant to ORS 624.073 and 624.370.

(g) "Code" shall have the same meaning as administrative rule.

(h) "Combination food service establishment" means any food establishment located within a single structure or at a single site, and which is engaged in activities subject to licensing or inspecting requirements of both the Authority and the Oregon Department of Agriculture, and the regulated activities are common to the same operator.

(i) "Commercial warewashing machine" means a machine designed and manufactured specifically for use in a food service establishment such as a restaurant and not for domestic or light-commercial purposes.

(j) "Commissary" means a commissary catering establishment, restaurant, or any other place in which, food, beverage, ingredients, containers, or supplies are kept, handled, packaged, prepared or stored, and from which vending machines or mobile units are serviced. A licensed commissary may only be used for catering if licensed mobile food units or vending machines are serviced by the establishment as specified in ORS 624.310.

(k) "Complete inspection" means any inspection conducted at the election of the licensing agency evaluating all items on the inspection form.

(l) "Confection" means candy or sweets, including, but not limited to, salted caramel. fudge, marshmallow bars, chocolate covered marshmallows, and hard candy.

(m) "Consumer" means a person who is a member of the public, takes possession of food, is not functioning in the capacity of an operator of a food establishment or food processing plant, and does not offer the food for resale.

(n) "Cut leafy greens" means fresh leafy greens whose leaves have been cut, shredded, sliced, chopped, or torn. The term "leafy greens" includes iceberg lettuce, romaine lettuce, leaf lettuce, butter lettuce, baby leaf lettuce (i.e., immature lettuce or leafy greens), escarole, endive, spring mix, spinach, cabbage, kale, arugula and chard. The term "leafy greens" does not include herbs such as cilantro or parsley. The term "cut" does not mean removing and discarding exterior leaves.

(o) "Director" means the Director of the Oregon Health Authority or Oregon Department of Agriculture or authorized representative.

(p)(A) "Food establishment" means:

(i) An operation that prepares, assembles, packages, serves, stores, vends, or otherwise provides food for human consumption; or

(ii) Any room, building, structure or place, used or intended for use, or operated for storing, preparing, compounding, manufacturing, processing, freezing, packaging, distributing, handling, salvaging or displaying food; or

(iii) The ground upon which such place or business is operated or used and so much ground adjacent thereto as is also used in carrying on the business of the establishment. The Authority or Department of Agriculture may prescribe additional areas or places which, although they may not be contiguous or adjacent to the above area or establishment, may be included therein; or

(iv) Vehicles, machinery, equipment, utensils, tools, fixtures, implements, and all other articles or items, used in operating or carrying on the business of a food establishment.

(B) Food establishment regulated by the Oregon Health Authority includes but is not limited to:

(i) Bars, bed and breakfast facilities, cafeterias if open to the public, catered feeding locations, caterers, coffee shops, commissaries, conveyance used to transport people, hospitals if open to the public, hotels, microbreweries, motels, private clubs if open to the public, restaurants, satellite sites, senior citizen centers, snack bars, taverns, vending locations, warehouses (associated with a mobile food unit), or similar food facilities.

(ii) An operation that is conducted in a mobile food unit, temporary food establishments, or permanent facility or location; where consumption is on or off premises; and regardless of whether there is a charge for the food.

(iii) The premises of a fraternal, social, or religious organization where food is prepared for the public.

(iv) School food service that is provided by a private person, business, or organization; and that serve persons other than enrolled students, invited guests or staff.

(v) An establishment that relinquishes possession of food to a consumer directly through a restaurant takeout order.

(C) Food establishment regulated by the Oregon Department of Agriculture includes but is not limited to:

(i) Markets, food banks, warehouses (distribution), wineries, microbreweries, grocery stores or other food facilities;

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 b

(ii) An establishment that predominantly sells foods that are not for immediate consumption, such as take and bake pizza, whole pies and cakes, loaves of bread, and pre-made dinners that must be cooked or reheated;

(iii) An establishment that offers only prepackaged or bulk foods that are not potentially hazardous;

(iv) A produce stand that offers fresh fruits and vegetables;

(v) A food processing plant;

(vi) Mobile food units that are operated by an Oregon Department of Agriculture licensed establishment and located on the property of the Oregon Department of Agriculture licensed establishment;

(vii) Outdoor cooking and beverage dispensing area operated by a market that is located on the property of the market and is under the jurisdiction of the Oregon Department of Agriculture; or

(viii) Food prepared in a private home that is licensed as a domestic processor.

(D) Food establishment does not include:

(i) A private home where food is prepared or served for family and guests, and where the public is not invited.

(ii) A private home that receives catered or home-delivered food.

(iii) An establishment or organization that prepares or sells the following food items for immediate consumption only:

(I) Non-time/temperature control for safety confections;

(II) Commercially prepackaged ice cream and frozen desserts sold in individual servings;

(III) Commercially pickled products, commercially processed jerky, nuts, nutmeats, popcorn, and prepackaged foods such as potato chips, pretzels, and crackers;

(IV) Unopened commercially bottled and canned non-time/temperature control for safety beverages to include alcoholic beverages;

(V) Coffee and tea, with non-time/temperature control for safety ingredients;

(VI) Non- time/temperature control for safety hot or cold beverages prepared from individually packaged powdered mixes and commercially bottled water, not to include fresh squeezed juice;

(VII) Non-time/temperature control for safety foods or beverages provided by a non-food service business or organization as a courtesy for no charge to customers; and

(VIII) Other food items as determined by the Authority or the Oregon Department of Agriculture.

(iv) An establishment or organization that prepares or sells only non-time/temperature control for safety food items for immediate consumption at an event if:

(I) Food employees do not contact exposed, ready-to-eat food with their bare hands and use suitable utensils such as deli tissue, spatulas, tongs, single-use gloves, or dispensing equipment;

(II) A handwashing facility that complies with 5-203.11 is provided;

(III) A notice is posted in public view that states: "NOTICE: Food served at this location may not have been inspected by the regulatory authority" or similar language that has been approved by the regulatory authority;

(IV) All ingredients, including water and ice, are from an approved source and the product is produced using safe food handling practices;

(V) The establishment vends raw citrus juices that are expressed at the event location and prepared and sold only for immediate consumption in individual servings. The establishment may add only non-time/temperature control for safety, commercially processed ingredients to the juice, not to include other fresh fruits or vegetables. If raw citrus juice is sold or served that has not been specifically processed to prevent, reduce, or eliminate the presence of pathogens, the following notice must be provided, "NOTICE: This product has not been pasteurized or processed". An establishment that vends raw juices other than raw citrus juices at an event must obtain a temporary restaurant license; and

(VI) An Exempt Foods Agreement Form is completed and kept at the event location during all hours of operation;

(VII) The regulatory authority may require a food establishment license if there are food safety concerns associated with an exempt food service operation.

(v) Private vehicles used for home deliveries.

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510

(vi) Personal chef who prepares food for an individual or private party.

(vii) Continental breakfast served by a traveler's accommodation licensed under ORS chapter 446 and that is limited to the following: individual or bulk dispensed containers of commercially prepared juices; commercially prepared non-time/temperature control for safety pastries; whole uncut fresh fruit with peel, and coffee and tea with non-time/temperature control for safety ingredients.

(viii) A beverage dispensing unit, operating in conjunction with and on the same premises as a facility with a licensed restaurant, that vends beverages to customers participating in an activity at that food establishment. These beverage dispensing units cannot vend to members of the public that are not participating in an activity at the food establishment. Examples include beverage carts operating at stadiums, golf courses and hotel conferences. The beverages must be served in containers that are either single-service articles or multi-use containers that are not refilled.

(ix) School food service that provides food only to students, teachers, other school staff, and invited guests.

(x) Any person holding a "one-day, special retail beer or special retail wine license" for a private residence; or anyone who possesses a "temporary" license from the Oregon Liquor Control Commission who serves alcoholic beverages to the public but serves only foods exempted under 1-201.10(B) of the 2022 FDA Food Code and uses single-service articles.

(xi) A bed and breakfast facility with two or less rooms for rent on a daily basis.

(xii) Home delivery of grocery orders.

(xiii) Institutions that do not serve the public.

(xiv) Produce stands located on a farmer's own property wherein only produce grown by the farmer is sold and no food processing is done as specified in OAR 603-025-0030(2).

(xv) Farm Direct Marketers as defined in OAR 603-025-0225.

(xvi) A domestic processor licensed by the Oregon Department of Agriculture that sells only prepackaged and labeled food at a farmer's market.

(xvii) A food operation in a residential dwelling that sells only baked goods or confectionary items under the provisions of OAR 603-025-0320.

(q)(A) "Food processing plant" means a commercial operation or a domestic kitchen licensed by the Oregon Department of Agriculture that manufactures, packages, labels, or stores food for human consumption, and provides food for sale or distribution to other business entities such as food processing plants or food establishments.

(B) "Food processing plant" does not include a food establishment.

(r) "Integral" means that all equipment associated with a mobile unit must be rigidly and physically attached to the unit without restricting the mobility of the unit while in transit.

(s) "License" means the same as permit for the purposes of this rule.

(t) "License holder" means the same as permit holder for the purposes of this rule.

(u) "Maximum contaminant level (MCL)" means the maximum allowable level of a contaminant in water for consumption delivered to the users of a system, except in the case of turbidity where the maximum allowable level is measured at the point of entry to the distribution system.

(v) "Mobile unit" means any vehicle that is self-propelled or that can be pulled or pushed down a sidewalk, street, highway or waterway, on which food is prepared, processed or converted or which is used in selling and dispensing food to the ultimate consumer.

(w) "Outdoor beverage dispensing operation" means an outdoor area on the premises of a food establishment where beverages are dispensed to consumers.

(x) "Outdoor cooking operation" means an outdoor area on the premises of a food establishment where food is cooked for service to consumers.

(y) "Personal chef" means an individual that provides cooking services using only the home kitchen of the client and cooks only for the client and non-paying guests. A personal chef shall purchase food from an approved source and may use their own equipment, utensils and spices. A personal chef may not store or prepare food in advance.

(z) "Potentially hazardous food" has the same meaning as "time/temperature control for safety food" as defined in the 2022 FDA Food Code.

DEFENDANTS' EXHIBIT 510 d

(aa) "Preparation" means the process whereby food is transformed into a consumable form. This includes, but is not limited to, slicing or dicing vegetables, grating cheese, portioning foods, slicing sandwiches, blending foods, or cooking or reheating foods.

(bb) "Priority item" means a provision in this code whose application contributes directly to the elimination, prevention or reduction to an acceptable level, hazards associated with foodborne illness or injury and there is no other provision that more directly controls the hazard.

(A) Priority item includes items with a quantifiable measure to show control of hazards such as cooking, reheating, cooling, and handwashing.

(B) Priority item is an item that is denoted in this code with a superscript P; and

(C) Priority item is an item that carries a weight of five points on the Food Service Inspection Report or Inspectional Guide and is considered a critical violation as referenced in ORS chapter 624.

(cc) "Priority foundation item":

(A) "Priority foundation item" means a provision in this code whose application supports, facilitates or enables one or more priority items;

(B) "Priority foundation item" includes an item that requires the purposeful incorporation of specific actions, equipment or procedures by industry management to attain control of risk factors that contribute to foodborne illness or injury such as personnel training, infrastructure or necessary equipment, HACCP plans, documentation or record keeping, and labeling;

(C) "Priority foundation item" is an item that is denoted in this code with a superscript "Pf" (i.e., Pf);

(D) "Priority foundation item" is an item that carries a weight of three points on the Food Service Inspection Report or Inspectional Guide and is considered a critical violation as referenced in ORS chapter 624; and

(E) "Priority foundation item" includes items that relate to the design and operation of a mobile unit that are fundamental to maintaining them as a vehicle as defined in ORS chapter 624, such as mobility and integral operations.

(dd) "Recheck inspection" means:

(A) An inspection to determine whether specified corrections have been made or alternative procedures maintained for violations identified in previous inspections; or

(B) An inspection to determine whether specific corrections have been maintained for critical violations creating a significantly increased risk for foodborne illness. Recheck inspections may also be referred to as reinspections or follow-up inspections.

(ee) "Repeat violation" means a violation of a rule which is the same specific problem or process as indicated on the Food Service Inspection Report occurring in two consecutive semi-annual inspections.

(ff) "Sample" means a three ounce or less portion of a food or beverage.

(gg) "Semi-annual inspection" means an unannounced complete inspection conducted twice during the calendar year; one in each half of the year, but not less than 90 days or more than 270 days apart.

(hh) "Temporary food establishment" means the same as ORS 624.010(4), (11) and (12).

(ii) "Transport vehicle" means a vehicle used to transport foods or utensils from the base of operation to a mobile food unit.

(jj) "Variance" means a written document issued by the Authority that authorizes a modification or waiver of one or more requirements of this Code if, in the opinion of the Authority, a health hazard or nuisance will not result from the modification or waiver.

(kk) "Vehicle" means any device in, upon or by which any person or property is or may be transported or drawn upon a public highway and includes vehicles that are propelled or powered by any means. This definition includes watercraft.

(ll) "Violation" means any condition which fails to meet a requirement of ORS chapter 624 or this rule.

(mm) "Violations creating an imminent danger to public health" means those priority item violations in which at least one of the following conditions exits:

(A) Food and drink is spoiled, unwholesome, or contaminated with pathogenic or fecal organisms, toxic chemicals, insect or rodent parts or excreta, or other harmful substances or articles;

(B) Time/temperature control for safety foods have been kept at temperatures above 5 degrees Celsius (41 degrees Fahrenheit) and below 57 degrees Celsius (135 degrees Fahrenheit) for four hours or more;

(C) A food employee has a reportable disease or medical condition under subpart 2-201 of the 2022 FDA Food Code.

(nn) "Violations creating a potential danger to public health" means all priority and priority foundation item violations other than those that create an imminent danger to public health.

(oo) "Violations creating a significantly increased risk for foodborne illness" include:

(A) Time/temperature control for safety foods at improper temperatures;

(B) Cross contamination of raw to ready-to-eat foods; and

(C) Poor personal hygiene and handwashing.

(pp) "Warehouse" means any place where food, utensils, single-service articles, cleaning or servicing supplies for vending machines, mobile units, or commissaries are stored.

(qq) "Wild mushroom" means mushrooms in the fresh state with no additional processing such as drying.

(5) Amendments to Federal Regulation. The following amendments or additions are made to the 2022 FDA Food Code, as adopted and incorporated by reference. All references to part, subpart, sections, paragraphs and subparagraphs relate to the 2022 FDA Food Code:

(a) Amend paragraph 2-101.11(C) to read: (C) This section does not apply to certain types of food establishments deemed by the Authority to pose minimal risk of causing, or contributing to, foodborne illness based on the nature of the operation and extent of the food preparation. Pf

(b) Amend section 2-102.12 to read: 2-102.12 Certified Food Protection Manager.

(A) By January 1, 2029, at least one person in charge shall be a certified food protection manager who has shown proficiency of required information through passing a test that is part of an accredited program.

(B) By January 1, 2031, at least one person in charge shall be a certified food protection manager who has shown proficiency of required information through passing a test that is part of an accredited program. The certified person in charge must be present each day the establishment operates and during the hours of operation that represent the highest food safety risk to the food establishment.

(C) This section does not apply to certain types of food establishments deemed by the Authority to pose minimal risk of causing, or contributing to, foodborne illness based on the nature of the operation and extent of food preparation, including but not limited to, temporary food establishments.

(c) Amend 2-103.11(N) to read: Except when approval is obtained from the Authority as specified in paragraph 3-301.11(E), employees are preventing cross-contamination of ready-to-eat food with bare hands by properly using suitable utensils such as deli tissue, spatulas, tongs, single-use gloves, or dispensing equipment; Pf

(d) Amend section 2-201.11 to read: Responsibility of Person in Charge.

(A) The permit holder shall require food employees to report to the person in charge information about their health and activities as they relate to diseases that are transmissible through food. A food employee or conditional employee shall report the date of onset of symptoms, diagnosis of an illness, or of a diagnosis without symptoms that are listed under 2-201.12.P

(B) The person in charge shall notify the regulatory authority that a food employee is:

(i) Jaundice;Pf or

(ii) Diagnosed with an illness listed in 2-201.12.Pf

(C) A food employee shall:

(i) Report to the person in charge if they have been diagnosed with an illness or are experiencing symptoms specified under 2-201.12;P

(ii) Report to the person in charge if they have been living in the same household or working in a setting where there is a confirmed disease outbreak with an illness specified under 2-201.12;P and

(iii) Comply with exclusions and restrictions specified under section 2-201.12.P

(e) Amend section 2-201.12 to read: Exclusions and Restrictions. The person in charge shall exclude or restrict a food employee from a food establishment in accordance with the following:

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510ƒ

(A) Except when the symptom is from a noninfectious condition, exclude a food employee that has any of the following signs or symptoms caused by illness, infection, or other source that is associated with an acute illness:

(i) Vomiting;P

(ii) Diarrhea;P

(iii) Sore throat with fever;P or

(iv) Jaundice.P

(B) Exclude or restrict a food employee that has a lesion containing pus such as a boil or infected wound that is open or draining and is:

(i) On the hands or wrists, unless an impermeable cover such as a finger cot protects the lesion and a single use glove is worn over the impermeable cover;P

(ii) On exposed portions of the arms, unless the lesion is protected by an impermeable cover;P or

(iii) On other parts of the body, unless the lesion is covered by a dry, durable, tight-fitting bandage.P

(C) Exclude a food employee from a food establishment if the food employee is diagnosed by a health practitioner or presumptive with:

(i) Norovirus;P

(ii) Hepatitis A virus;P

(iii) Shigella spp.;P

(iv) Shiga Toxin-Producing Escherichia coli;P

(v) Typhoid fever (caused by Salmonella Typhi);.P or

(vi) Salmonella (non-typhoidal). P

(f) Amend section 2-201.13 to read: Removal of Exclusions and Restrictions. The person in charge shall adhere to the following conditions when removing, adjusting, or retaining the exclusion or restriction of a food employee:

(A) Restrictions or exclusions on persons diagnosed with or presumptive with an illness as specified in 2-201.12(C) (2-6) shall not be lifted until a licensed laboratory has determined that the employee is free of pathogens in accordance with OAR 333-019-0014. Such restrictions or exclusions may be waived or modified at the discretion of the regulatory authority.P

(B) Except as specified in (A) of section 2-201.13, the person in charge may remove a restriction or exclusion specified under 2-201.12 if the restricted person:

(i) Is free of the symptoms specified under 2-201.12(A)(1)-(3) for 24 hours;P or

(ii) Provides to the person in charge written medical documentation from a health practitioner that states the symptom is from a noninfectious condition;P or

(iii) The person in charge obtains approval from the regulatory authority.P

(C) Reinstate a food employee who was diagnosed or presumptive with an infection from Norovirus if the person in charge obtains approval from the regulatory authority and one of the following conditions is met:

(i) The food employee provides to the person in charge written medical documentation from a health practitioner stating the food employee is free of a Norovirus infection;P or

(ii) The food employee's symptoms of vomiting or diarrhea have resolved, and the food employee has been asymptomatic for least 48 hours;P or

(iii) The food employee did not develop symptoms and at least 48 hours have passed since the food employee was diagnosed.P

(g) Amend paragraph 2-301.14(H) to read: Before donning gloves for working with food unless a glove change is not the result of glove contamination.P

(h) Amend paragraph 2-401.11(A) to read: Eating, Drinking, or Using Tobacco. Except as specified in (B) of this section, an employee may not eat, drink, or use any form of tobacco products except in designated areas where the contamination of exposed food; clean equipment, utensils, and linens; unwrapped single-service and single-use articles; or other items needing protection cannot result.Pf

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510 g

(i) Amend section 2-401.12 to read: Discharges from the Eyes, Nose, and Mouth. Food employees experiencing persistent sneezing, coughing, or a runny nose that causes discharges from the eyes, nose, or mouth may not work with exposed food; clean equipment, utensils, and linens; or unwrapped single-service or single-use articles.Pf

(j) Amend paragraph 2-402.11(A) to read: Employees shall use effective hair restraints to prevent the contamination of food or food-contact surfaces.

(k) Amend paragraph 2-403.11(A) to read: Except as specified in paragraph (B) of this section, food employees may not care for or handle animals that may be present such as patrol dogs, service animals, or pets that are allowed as specified in 6-501.115(B)(2)-(5) and (E).Pf

(l) Amend paragraph 3-201.11(B) to read: Except as specified in paragraphs (J) and (K) of section 3-201.11, food prepared in a private home may not be used or offered for human consumption in a food establishment.P

(m) Add paragraph 3-201.11(H) to read: Game meat which has been donated to a charitable organization and has been inspected and processed as provided in ORS 619.095 may be served for human consumption by that charitable organization.P

(n) Add paragraph 3-201.11(I) to read: Except as required in 3-201.11(A) through (H) of the 2022 FDA Food Code and in accordance with ORS 624.116, any person, business or volunteer group may donate food to a benevolent organization that meets the requirements in ORS 624.101. The Internal Revenue Service (IRS) may issue a "letter of determination" that should be used as the basis for assessing compliance with benevolent status of ORS 624.101. The person, business or volunteer group making the donation shall inspect the food to ensure its fitness for human consumption and discard all food that is unwholesome. The following donated food items are approved for use by benevolent organizations:

(A) Commercially prepared foods, canned goods, and milk products, marine and freshwater fishery products or meat animals; i.e., cattle, sheep, goats, equine, swine, poultry or rabbits obtained from establishments licensed by the Oregon Department of Agriculture or the Oregon Health Authority according to ORS chapters 603, 616, 621, 622, 624, 625 and 635;P

(B) Home baked bread, rolls, pies, cakes, doughnuts or pastries not having perishable fillings, icings, toppings or glazes;P

(C) Fresh fruit and produce from private gardens or commercial growers;P

(D) Salvageable food which has lost the label or which has been subjected to possible damage due to accident, fire, flood, adverse weather or similar cause. Reconditioning of salvageable food shall be conducted according to the Model Consumer Commodity Salvage Code recommended by the Association of Food and Drug Officials and U.S. Department of Health and Human Services;P

(E) Other food as may be approved by the Oregon Health Authority upon prior notification by the donator or benevolent organization;

(F) Unless alternative language has been approved by the regulatory authority, a notice shall be posted in public view that says: "NOTICE: Food served at this location may not have been inspected by the regulatory authority."Pf

(o) Add paragraph 3-201.11(JK) to read: Food prepared in a private home that is licensed as a home processor by the Oregon Department of Agriculture.P

(p) Add paragraph 3-201.11(K) to read: A Benevolent Meal Site may serve food prepared by volunteers in an unlicensed kitchen under the following conditions:

(A) Volunteers must obtain a food handler certificate as required in OAR chapter 333, division 175. If the food is prepared by a group of people at the same location, only the person supervising the food preparation shall be required to obtain a certificate. The person supervising the food preparation shall be at the preparation site at all times.

(B) Volunteers that provide only non-time/temperature control for safety baked goods as allowed under paragraph (J) of section 3-201.11 or whole, uncut fresh fruits and vegetables are exempt from the food handler certification requirement.

(C) The organization sponsoring the Benevolent Meal Site must obtain a signed statement from the volunteers that they have reviewed and will follow the requirements of section 3-201.11. The signed statement must include the volunteer's name, contact information and the kinds of food donated; and

(D) The signed statement shall be maintained at the Benevolent Meal Site and be available for review.

(E) Food Preparation and Service:

(i) The following foods may not be provided: home-canned or home processed foods, wild mushrooms, wild game, shellfish, sport-caught fish, raw milk, raw animal foods, eggs from non-commercial sources, unpasteurized juices, and water and ice from unapproved water systems;P

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 h

(ii) Except whole, uncut fresh fruit and vegetables and non-time/temperature control for safety baked goods as described under paragraph (J) of section 3-201.11, leftover food prepared by volunteers must be returned to the volunteer or discarded.P

(iii) Food obtained from licensed establishments may be donated to other food establishments if the food is held under proper temperature control and protected from contamination during serving;

(iv) At least one portable handwashing facility as described in paragraph 5-203.11(C) shall be provided at the service location;Pf

(v) Self-service of food is limited to packaged or wrapped items and condiments dispensed in a sanitary manner;

(vi) A statement must be posted at the meal site in public view that states: "Notice: Food served at this location may not have been inspected by the regulatory authority."Pf

(vii) Food must be stored, prepared, handled, transported and served in a manner that is consistent with the food safety requirements in these rules.

(q) Amend section 3-201.16 to read:

(A) Except as specified in paragraph (B), identification of mushroom species picked in the wild shall have a written buyer specification which is to remain on file in the food establishment for a minimum of 90 days from the date of sale or service.Pf This written specification shall include:

(i) Identification by the scientific name and the common name of the mushroom species;Pf

(ii) Identification in the fresh state;Pf

(iii) The name and contact information of the person who identified the mushroom and the mushroom seller;Pf and

(iv) A statement as to the qualifications and training of the identifier, specifically related to mushroom identification.Pf

(B) Paragraph (A) of 3-201.16 does not apply to cultivated wild mushroom species that are grown, harvested, and processed in an operation that is regulated by the food regulatory agency that has jurisdiction over the operation.

(C) The food establishment that sells, uses or serves fresh mushrooms picked in the wild shall ensure the mushrooms are conspicuously identified by a label, placard, or menu notation that states:

(i) The common and usual name of the mushroom;Pf and

(ii) The statement "Wild mushrooms: not an inspected product".Pf

(r) Amend section 3-201.17 to read: If game animals are received for sale or service, they shall be:

(A) Commercially raised for food;P and

(i) Raised, slaughtered, and processed under a voluntary inspection program that is conducted by the agency that has animal health jurisdiction;P or

(ii) Under a routine inspection program conducted by a regulatory agency other than the agency that has animal health jurisdiction;P and

(iii) Raised, slaughtered, and processed according to:

(I) Laws governing meat and poultry as determined by the agency that has animal health jurisdiction and the agency that conducts the inspection program;P and

(II) Requirements which are developed by the agency that has animal health jurisdiction and the agency that conducts the inspection program with consideration of factors such as the need for antemortem and postmortem examination by an approved veterinarian or veterinarian's designee; P

(B) Under a voluntary inspection program administered by the United States Department of Agriculture (USDA) or the Oregon Department of Agriculture (ODA) State Meat Program for game animals such as exotic animals (reindeer, elk, deer, antelope, water buffalo, or bison) that are "Inspected and Approved" in accordance with OAR 603-029-4000 to 603-029-4075, and 9 CFR 352 Exotic Animals; and voluntary inspection for rabbits that are "Inspected for Wholesomeness" in accordance with 9 CFR 354 Voluntary Inspection of Rabbits and Edible Products Thereof;P

(C) As allowed by law, for wild game animals that are live-caught:

(i) Under a routine voluntary inspection program conducted by a regulatory agency such as the agency that has animal health jurisdiction;P and

(ii) Slaughtered and processed according to:

DEFENDANTS' EXHIBIT 510 i

(I) Laws governing meat and poultry as determined by the agency that has animal health jurisdiction and the agency that conducts the inspection program;P and

(II) Requirements which are developed by the agency that has animal health jurisdiction and the agency that conducts the inspection program with consideration of factors such as the need for antemortem and postmortem examination by an approved veterinarian or veterinarian's designee;P or

(D) As allowed by law, for field-dressed wild game animals under a routine inspection program that ensures the animals:

(i) Receive an ante-mortem and postmortem examination by an approved veterinarian or veterinarian's designee;P or

(ii) Are field-dressed and transported according to requirements specified by the agency that has animal health jurisdiction and the agency that conducts the inspection program;P and

(iii) Are processed according to laws governing meat and poultry as determined by the agency that has animal health jurisdiction and the agency that conducts the inspection program.P

(E) A game animal may not be received for sale or service if it is a species of wildlife that is listed in 50 CFR 17 Endangered and threatened wildlife and plants.

(s) Add section 3-201.18 to read: Outdoor Cooking and Beverage Dispensing Operations.

(A) Outdoor cooking and beverage dispensing by a food establishment shall be allowed as a part of the operation when conducted on the premises of the food establishment.Pf

(B) Enclosure of an outdoor cooking and beverage dispensing operation is not required unless necessary to protect food from contamination. The outdoor cooking and beverage dispensing operation must be designed to protect food, equipment, utensils, single-use articles and other items from contamination when not in operation.

(C) Outdoor cooking and beverage dispensing operations must be equipped with or located adjacent to a plumbed handwashing sink. Outdoor cooking and beverage dispensing operations that are not permanently constructed may provide a handwashing system that meets the requirements of 5-203.11(C) if approved by the regulatory authority.Pf

(D) Outdoor cooking shall be limited to the use of a barbeque, hearth oven, tandoori oven, barbeque pit or other similar cooking equipment. The use of equipment such as flat top grills or griddles, woks, steamtables or other cooking, storage or holding devices is not allowed.Pf

(E) Other than cooking food, no preparation, assembly, storage or service of food may be done at the outdoor cooking operation. Non-time/temperature control for safety (non-TCS) condiments may be dispensed at the outdoor cooking operation.Pf

(F) Employees or consumers may be served directly from the outdoor cooking operation if the food is portioned for immediate service. Consumers may not serve themselves from an outdoor cooking operation.

(G) Outdoor beverage dispensing may include alcoholic and other beverages. Consumers may serve themselves from beverage dispensing equipment that meets the requirements of 4-204.13.

(H) Outdoor cooking and beverage dispensing operations must be monitored by food service employees.

(I) Section 3-201.18 does not preclude the service of foods prepared inside the establishment to consumers at outdoor seating areas.

(t) Add paragraph (E) to 3-202.14 to read: Raw milk from goats and sheep that is in compliance with the labeling requirements in OAR 603-024-0543 and the standards defined in OAR 603-024-0041 may be sold in licensed Oregon Department of Agriculture establishments.P

(u) Amend paragraph 3-301.11(E)(1) to read: (E) Food employees not serving a highly susceptible population may contact exposed, ready-to-eat-food with their bare hands if: (1) The permit holder obtains prior approval from the Authority;

(v) Amend paragraph 3-301.11(E)(6) to read: (6) Documentation that food employees contacting ready-to-eat food with bare hands use two or more of the following control measures to provide additional safeguards to hazards associated with bare hand contact:

(A) Double handwashing;

(B) Nail brushes;

(C) A hand antiseptic after handwashing as specified under section 2-301.16;

(D) Incentive programs such as paid sick leave that assist or encourage food employees not to work when they are ill; or

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510

(E) Other control measures approved by the Authority.

(w) Amend paragraph 3-304.12(F) to read: In a container of water if the container is cleaned at a frequency specified under subparagraph 4-602.11(D)(7); and

(A) The water is maintained at a temperature of 57 degrees Celsius (135 degrees Fahrenheit) or above; or

(B) At 5 degrees Celsius (41 degrees Fahrenheit) or less.

(x) Add paragraph 3-304.15(E) to read: The use of latex gloves in food service establishments is prohibited.

(y) Amend section 3-304.17 to read:

(A) Except as specified in paragraphs (B) through (F) of this section, empty food containers returned to a food establishment for cleaning and refilling with food shall be cleaned and refilled in a regulated food processing plant.

(B) A container may be refilled at a food establishment with food if the container:

(i) Is designed and constructed for reuse and in accordance with the requirements specified under Parts 4-1 and 4-2;

(ii) Was initially provided by the food establishment to the consumer;

(iii) Is returned to the food establishment or a designated collection point by the consumer;

(iv) Is subject to the following actions by the food establishment before being refilled:

(I) Cleaned as specified under paragraph (C) of section 3-304.17 and Part 4-6.

(II) Sanitized as specified under Part 4-7; and

(III) Verified to continue to meet the requirements specified under Parts 4-1 and 4-2.

(C) A container may be refilled at a food establishment with beverage if:

(i) The design of the container and the nature of the beverage, when considered together, allow effective cleaning at home or in the food establishment;

(ii) The consumer-owned container returned to the food establishment for refilling is refilled for sale or service only to the same consumer; and

(iii) The container is refilled by:

(I) An employee of the food establishment; or

(II) The owner of the container if the beverage system includes a contamination-free transfer process as specified under paragraphs 4-204.13(A), (B), and (D) that cannot be bypassed by the consumer.

(D) Consumer-owned containers that are not food-specific may be filled at a water vending machine or system.

(E) If a food establishment has written procedures prepared in advance and maintained at the food establishment that are made available to the regulatory authority upon request that specify its written procedures for compliance with paragraph 3-304.17(E), a food establishment may:

(i) Allow consumers to refill a visibly clean consumer owned container meeting the requirements of sections 4-101.11, 4-201.11 and paragraph 4-202.11(A) with non-ready-to-eat food, bulk food, and packaged food;

(ii) Permit employees to refill a visibly clean consumer-owned container meeting the requirements of sections 4-101.11, 4-201.11 and paragraph 4-202.11(A) with food using a contamination free process.

(F) A food establishment may allow consumers to refill a visibly clean consumer owned container with nuts in the shell and whole and raw fruits and vegetables or that are intended to be washed by the consumer before consumption.

(z) Amend section 3-306.11 to read: Except for nuts in the shell and whole, raw fruits and vegetables that are intended for hulling, peeling, or washing by the consumer before consumption, food on display shall be protected from contamination by the use of packaging; counter, service line, or salad bar food guards; display cases; or other effective means.Pf

(aa) Amend section 3-306.12 to read: Condiments, Protection.

(A) Condiments shall be protected from contamination by being kept in dispensers that are designed to provide protection, protected food displays provided with the proper utensils, original containers designed for dispensing, or individual packages or portions.Pf

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510 K

(B) Condiments at a vending machine location shall be in individual packages or provided in dispensers that are filled at an approved location, such as the food establishment that provides food to the vending machine location, a food processing plant that is regulated by the agency that has jurisdiction over the operation, or a properly equipped facility that is located on the site of the vending machine location.Pf

(bb) Add section 3-307.12 to read: Protection from Contamination, Use of Private Vehicles for Food Deliveries.

(A) Private vehicles may be used for food deliveries if the food is packaged so that it is protected from contamination under Part 3-3 of the 2022 FDA Food Code, and adequate means are provided for maintaining proper food temperatures under section 3-501.16.

(B) Private vehicles shall not be used in any activity that is incompatible with safe and sanitary transportation of food.

(cc) Amend 3-401.11(D)(4) to read: The Authority grants a variance from paragraph (A) or (B) of this section as specified in section 8-103.10 based on a HACCP plan that:

(A) Is submitted by the permit holder and approved as specified under section 8-103.11;

(B) Documents scientific data or other information showing that a lesser time and temperature regimen results in a safe food; and

(C) Verifies that equipment and procedures for food preparation and training of food employees at the food establishment meet the conditions of the variance.

(dd) Amend section 3-501.14 Cooling to read:

(A) Except as specified under (B) of this section, cooked time/temperature control for safety food shall be cooled:

(i) Within 2 hours from 57 degrees Celsius (135 degrees Fahrenheit) to 21 degrees Celsius (70 degrees Fahrenheit);P and

(ii) Within a total of six hours from 57 degrees Celsius (135 degrees Fahrenheit) to 5 degrees Celsius (41 degrees Fahrenheit) or less.P

(B) Time/temperature control for safety food shall be cooled uncovered and protected from contamination in a shallow layer of two inches or less in equipment that maintains an ambient air temperature of 5 degrees Celsius (41 degrees Fahrenheit) or less.P

(C) Time/temperature control for safety food shall be cooled within four hours to 5 degrees Celsius (41 degrees Fahrenheit) or less if prepared from ingredients at ambient temperature, such as reconstituted foods and canned tuna.P

(D) Except as specified under paragraph (D) of this section, a time/temperature control for safety food received in compliance with laws allowing a temperature above 5 degrees Celsius (41 degrees Fahrenheit) during shipment from the supplier as specified in paragraph 3-202.11(B), shall be cooled within four hours to 5 degrees Celsius (41 degrees Fahrenheit) or less.P

(E) Raw eggs shall be received as specified under paragraph 3-202.11(C) and immediately placed in refrigerated equipment that maintains an ambient air temperature of 7 degrees Celsius (45 degrees Fahrenheit) or less.P

(ee) Amend paragraph 3-501.15(B) to read: When placed in cooling or cold holding equipment, food containers in which food is being cooled shall be:

(A) Arranged in the equipment to provide maximum heat transfer through the container walls;Pf and

(B) Loosely covered or uncovered if protected from overhead contamination as specified under subparagraph 3-305.11(A)(2), during the cooling period to facilitate heat transfer from the surface of the food.Pf

(ff) Add paragraph 3-501.15 (C) to read: For mobile food units: Mobile food units may not cool time/temperature control for safety food (TCS) unless they comply with one of the following conditions:

(A) The food is cooled in a licensed commissary that meets the requirements of OAR 333-150-0000;Pf

(B) Commercial refrigeration equipment is provided on the unit that is capable of cooling foods in accordance with section 3-501.14;Pf or

(C) Written cooling procedures are prepared in advance by the operator and approved by the regulatory authority prior to conducting cooling on the unit. The person in charge shall maintain cooling logs and record temperature measurements to document that food is cooled in accordance with section 3-501.14. The logs must be maintained on the unit for 90 days and be available for inspection upon request.Pf

(D) Units licensed prior to February 1, 2020 must meet this requirement by July 1, 2020.Pf

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 ℓ

(gg) Amend 3-501.11 to read: A food establishment shall obtain a variance from the Authority as specified in section 8-103.10 and under section 8-103.11 before: Pf;

(hh) Amend 3-501.11 (G) to read: Preparing food by another method that is determined by the Authority to require a variance; Pf

(ii) Add subparagraph 3-502.11 (I) to read: Except as allowed under OAR 333-162-0030(3), mobile food units may not conduct activities that require a variance unless those activities occur in a licensed restaurant or commissary that meets the applicable requirements of OAR 333-150-0000.Pf

(jj) Add subparagraph 3-603.11(B)(3) to read: Food service establishments that serve predominantly raw foods may disclose those items that are not served raw or do not require cooking before consumption.Pf

(kk) Add paragraph 3-701.11(E) to read: Time/temperature control for safety foods (TCS) that have been kept at temperatures above 5 degrees Celsius (41 degrees Fahrenheit) or below 57 degrees Celsius (135 degrees Fahrenheit) for more than four hours shall be discarded.P

(ll) Amend paragraph 4-101.17(A) to read: Except as specified in paragraphs (B), (C), (D) and (E) of section 4-101.17, wood and wood wicker may not be used as a food-contact surface.

(mm) Add paragraph 4-101.17(E) to read: Untreated wood planks, such as cedar, may be used as a cooking surface for grilling or baking.

(nn) Amend 4-204.110(B) to read: Molluscan shellfish life-support system display tanks that are used to store or display shellfish that are offered for human consumption shall be operated and maintained in accordance with a variance granted by the Authority as specified in section 8-103.10 and a HACCP PLAN that: Pf

(A) Is submitted by the permit holder and approved as specified under section 8-103.11;Pf and

(B) Ensures that:

(I) Water used with fish other than molluscan shellfish does not flow into the molluscan tank;Pf

(II) The safety and quality of the shellfish as they were received are not compromised using the tank;Pf and

(III) The identity of the source of the shellstock is retained as specified under section 3-203.12.Pf

(oo) Amend 4-204.117 to read: Warewashing Machines, Automatic Dispensing of Detergents and Sanitizers. A warewashing machine that is installed after adoption of this code by the Authority, shall be equipped to:

(pp) Amend paragraph 4-301.12(A) to read: Except as specified in paragraphs (C) and (F) of this section, a sink with at least three compartments shall be provided for manually washing, rinsing, and sanitizing equipment and utensils.Pf

(qq) Amend subparagraph 4-301.12(C)(5) to read: In establishments licensed by the Oregon Department of Agriculture, two-compartment sinks as specified in paragraphs (D) and (E) of section 4-301.12.

(rr) Add paragraphs 4-301.12(F), (G) and (H) to read: (F) A commercial warewashing machine is allowed in lieu of a manual warewashing sink as required in this section.

(A) For mobile food units:

(i) Class I, II and III mobile food units are not required to provide warewashing facilities on the unit, if adequate facilities exist at the commissary.Pf

(ii) Multiple or disposable utensils may be used for food handling on the unit. There shall be at the beginning of each day's business a sufficient supply of clean utensils necessary to properly prepare, assemble, or dispense the food. For mobile food units that do not have a warewashing sink on the unit, this supply shall consist of at least one of each type of utensil for every two hours of operation. If the unit operates less than four hours in a day, the unit shall provide a minimum of two sets of each type of utensil. Utensils shall not be used if they become contaminated.Pf

(iii) Class IV mobile food units must provide a sink with at least three compartments.Pf

(iv) A Class II or III mobile food unit that is designed with a small three compartment sink that will not be used for warewashing is not required to remove the sink from the unit.

(B) Temporary food establishments are not required to provide warewashing facilities on the premises if multiple utensils are provided as specified in subparagraph (G)(2) of section 4-301.12 and the operator uses a licensed restaurant or commissary as a base of operation.Pf

(ss) Amend section 4-301.14 to read: Ventilation hood systems and devices shall be sufficient in number and capacity to prevent grease or condensation from collecting on walls and ceilings. For mobile food units, violations of this section shall be considered a priority foundation item.

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 m

(tt) Add paragraph 4-502.13(C) to read:

(A) A food or beverage provider or convenience store may not provide a single-use plastic straw to a consumer unless the consumer specifically requests the single-use plastic straw.

(B) A food and beverage establishment may offer a single-use plastic straw to a consumer seated in or on a vehicle.

(C) A convenience store may leave single-use straws in an unattended location if they do not have space in a location attended by employees.

(D) A convenience store may sell or offer single-use straws for sale in bulk or unconnected with a sale or provision of food or a beverage.

(E) The following definitions apply to this section:

(i) "Consumer" means an individual who orders a beverage of any description from a food and beverage provider in this state.

(ii) "Convenience store" means a business that, for compensation, offers or provides a range of commodities that includes food and beverages.

(iii) "Enforcement officer" means an authorized representative of the State Department of Agriculture who conducts inspections under ORS 616.286 or an authorized representative of the Director of the Oregon Health Authority or of a local government who conducts inspections under ORS 624.010 to 624.121 or 624.310 to 624.430.

(iv)(I) "Food and beverage provider" means a business that, for compensation, offers or serves food or beverages to a consumer.

(II) "Food and beverage provider" does not include a health care facility, as defined in ORS 442.015, or a residential care facility, as defined in ORS 443.400, that provides single-use plastic straws to patients or residents.

(v) "Single-use plastic straw" means a tube made primarily from plastic that is derived from petroleum or a biologically based polymer, such as corn or another plant source, and that is intended:

(I) To transfer liquid from a container to a consumer's mouth;

(II) For a single use; and

(III) For disposal after the single use.

(vi) "Single-use plastic straw" does not include:

(I) A straw made from materials other than plastic, including but not limited to paper, pasta, sugar cane, wood or bamboo; and

(II) A plastic straw that is attached to or packaged with a beverage container before the beverage container is offered for retail sale.

(uu) Amend subparagraph 4-602.11(D)(7) to read: In-use utensils are intermittently stored in a container of water in which the water is maintained at 5 degrees Celsius (135 degrees Fahrenheit) or more or 5 degrees Celsius (41 degrees Fahrenheit) or less and the utensils and container are cleaned at least every 24 hours or at a frequency necessary to preclude accumulation of soil residues.

(vv) Adopt paragraphs 4-603.16(A), (B), (D) and (E) as written.

(ww) Amend section 5-101.11 to read: Approved System. Drinking water shall be obtained from an approved source that is:

(A) A public water system that is constructed, maintained and operated according to law;P or

(B) A nonpublic water system that is constructed, maintained, and operated according to law.P

(xx) Amend section 5-102.11 to read: Except as specified under section 5-102.12(A), food establishments shall only use water from a public water system if it meets 40 CFR 141 - National Primary Drinking Water Regulations and state drinking water quality standards.P The following drinking water standards apply to licensed food establishments that use or provide drinking water that is not from a water system that is required to comply with the requirements in OAR chapter 333, division 61.P Unless the context indicates otherwise, the definitions from OAR 333-061-0020 apply to this subsection.

(A) General Sampling Requirements:

DEFENDANTS' EXHIBIT 510

(i) All samples required by this rule must be analyzed by a laboratory accredited by the Oregon Environmental Laboratory Accreditation Program (ORELAP) to conduct the testing and must be handled and documented in accordance with ORELAP standards.P

(ii) Samples submitted to laboratories for analysis shall be clearly identified with the name of the water system, food establishment license number, sampling date, time, sample location identifying the sample tap, the name of the person collecting the sample and whether it is a routine or a repeat sample.P

(I) Routine: These are samples collected from established sampling locations within a water system at specified frequencies to satisfy monitoring requirements as prescribed in this rule;P

(II) Repeat: These are samples collected as a follow-up to a routine sample that is positive for coliform bacteria or that exceeds the maximum contaminant level for nitrate as specified in OAR 333-061-0030(1) Table 1;P

(iii) Reporting: All sample results shall be maintained at the food establishment and provided to the regulatory authority upon request.P

(iv) The regulatory authority may collect additional samples to determine compliance with applicable requirements of these rules.P

(B) Sampling for coliform bacteria:

(i) Food establishments utilizing groundwater sources as defined in OAR chapter 333, division 61 must collect one sample annually. If the food establishment does not operate all year, then the food establishment must collect one sample prior to the operational period.P

(ii) Food establishments utilizing surface water sources must collect one sample every calendar quarter.P

(C) Sampling for chemicals:

(i) Every food establishment must collect one arsenic sample before beginning operation for the first time. This requirement does not apply to food establishments that previously obtained water from a water system regulated under OAR chapter 333, division 61 and that have sampling results from samples collected prior to January 1, 2003.P

(ii) Every food establishment must collect one nitrate sample every year while open to the public.P

(D) Additional sampling may be required for coliform bacteria, arsenic, or nitrate at the discretion of the regulatory authority. It is the responsibility of the operator to correct any problems or deficiencies and to assure that water provided to the public does not present a risk to public health.P

(E) Failed test: A food establishment fails to satisfy drinking water standards in this rule when a sample exceeds the permissible MCL and a second sample collected within 10 days of being notified of the results also exceeds the MCL. The food establishment must collect one confirmation sample at the same or a nearby location within 10 days of the date the coliform-present result was reported by the laboratory.P

(i) Total coliform: Food establishments must report samples positive for total coliform to the regulatory authority within 10 days of being notified of the sample results.

(ii) E.coli: Food establishments must report samples positive for E. coli to the regulatory authority within 24 hours of being notified of the sample results.P

(I) Food establishments must publish public notification for this potential acute health risk as prescribed by OAR 333-061-0042.P

(II) An alternative procedure approved by the regulatory authority that addressed potential risks posed by the water must be in place before serving the public.P

(iii) Food establishments must report samples that exceed the MCL for nitrate as specified in OAR 333-061-0030(1) Table 1 to the regulatory authority within at least 24 hours.P

(iv) Food establishments must report samples that exceed the MCL for arsenic as specified in OAR 333-061-0030(1) Table 1 to the regulatory authority within at least 24 hours;P

(F) Public Notice: All public notification must be posted conspicuously on site at the food establishment and must include elements from the templates available on the Authority's Foodborne Illness Prevention Program webpage.

(G) Surface Water Sources: Food establishments with surface water sources must comply with OAR chapter 333, division 61, except those establishments existing prior to January 1, 2005 in compliance with OAR 333-061-0032 may continue to operate.P

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510 *o*

(H) Courtesy Review: All new food establishments that are not regulated by OAR chapter 333, division 61 must submit plans to the Authority's Drinking Water Services program for review prior to operation. Systems regulated prior to January 1, 2003 by OAR chapter 333, division 61 are not required to re-submit plans. The courtesy review may be conducted in accordance with the procedures specified in OAR chapter 333, division 61.P

(yy) Add paragraph 5-103.11(C) to read: Hot and cold or tempered water must be provided at all handwashing sinks in the establishment.Pf

(zz) Amend section 5-104.12 to read:

(A) Water meeting the requirements specified under subparts 5-101, 5-102, and 5-103 of the 2022 FDA Food Code shall be made available for a mobile unit, for a temporary food establishment without a permanent water supply, and for a food establishment with a temporary interruption of its water supply through:

(i) A supply of containers of commercially bottled drinking water;Pf

(ii) One or more closed portable water containers;Pf

(iii) An enclosed vehicular water tank;Pf

(vi) An on-premises water storage tank;Pf or

(v) Piping, tubing, or hoses connected to an adjacent approved source.Pf

(B) If approved by the regulatory authority, water for single-event temporary food establishments without a permanent water supply may be obtained from a well that has been tested for coliform bacteria within 60 days prior to the event. The regulatory authority may require additional testing or an evaluation of the well and premises as part of the approval process. Sampling, reporting and correction of MCL violations shall be in accordance with the applicable provisions of 5-102.11.Pf

(C) The regulatory authority may grant a temporary variance from requirements of subparts 5-101, 5-102, and 5-103 of the 2022 FDA Food Code by continuing or re-issuing previously issued permits where:

(i) Failure to comply with the code requirements is due to a failure of a community, municipal or public utility water supply system to meet the regulatory authority's requirements;

(ii) The regulatory authority is satisfied that necessary remedial action is ongoing or reasonably imminent in connection with such water supply system; and

(iii) Continuance or re-issuance of the permit is conditional upon the carrying out of such remedial action and the provision of such other measures by the certificate or license holder which will in the judgment of the regulatory authority afford reasonable interim protection to the public health including, but not limited to, adequate warnings to public and personnel as to the safety of the water delivered to the premises from the distribution system and notice of measures to avoid use or consumption of such water or to render it safe for consumption; adequate warnings as to the need for supervision of children and others needing supervision against use of such water; provision of alternative potable water and adequate notification as to its availability; and measures to avoid the use and the availability of water on the premises.Pf

(aaa) Amend paragraph 5-203.11(A) to read: Except as specified in (B), (C), (D) and (E) of section 5-203.11, at least one handwashing sink or the number of handwashing sinks necessary for their convenient use by employees in areas specified under section 5-204.11 shall be provided. Food establishments opened prior to July 1, 1965 are exempt from this requirement provided that employees can meet the requirements under sections 2-301.12 and 2-301.13.Pf

(bbb) Amend paragraph 5-203.11(C) to read: An adequate number of handwashing stations shall be provided for each temporary food establishment to include:

(A) A minimum of one enclosed container that has a minimum water capacity of five gallons;Pf

(B) A spigot that can be opened to provide a constant flow of water;Pf

(C) Soap;Pf

(D) Water;Pf

(E) Paper towels;Pf and

(F) A collection container for wastewater with a minimum capacity of five gallons.Pf

(ccc) Add paragraph 5-203.11(D) and (E) to read: (D) Class II, III and IV mobile food units must provide a handwashing sink;Pf (E) Outdoor cooking and beverage dispensing operations must be equipped with or located adjacent to a plumbed handwashing sink. Outdoor cooking and beverage dispensing operations that are not permanently constructed

3:23-cv-01833-AN

DEFENDANTS' EXHIBIT 510 ρ

may provide a handwashing system that meets the requirements of paragraph 5-203.11(C) if approved by the regulatory authority.Pf

(ddd) Amend section 5-203.12 to read:

(A) Except as specified in paragraph (B) of section 5-203.12, toilet facilities shall be installed according to ORS 455.010 through 455.895 (2022 Oregon Structure Specialty Code) for the number of toilets.Pf

(B) Food establishments with occupancy of 15 or less to include both employees and patrons may have only one toilet fixture and adjacent lavatory on the premises.

(C) Mobile food units shall provide toilet facilities as provided for in section 6-402.11.Pf

(eee) Add section 5-203.13 (C) to read: For mobile food units, if wet mopping is used as a method for cleaning the floor, then a separate sink must be provided in the unit for cleaning mops and cleaning tools and for the disposal of mop water or similar liquid wastes.

(fff) Amend section 5-302.16 to read: A food grade hose shall be used for conveying drinking water from a water tank and shall be:

(ggg) Adopt paragraphs 5-302.16(A) through (E) as written.

(hhh) Add section 5-304.15 to read: Water Tank Cleaning.

(A) The potable water tanks of a mobile food unit shall be designed to be accessible and translucent so that the cleanliness can be determined though a visual inspection. Mobile food units licensed prior to February 1, 2020 do not have to meet this requirement.

(B) The potable and waste water tanks must be cleaned at least every six months or as recommended by the manufacturer, whichever is more frequent.

(iii) Add section 5-305.11 to read: Water System Requirements.

(A) A Class IV mobile food unit must have a potable water system of sufficient capacity to furnish enough hot and cold water for food preparation, warewashing, and handwashing, and the requirements of these rules. This supply must consist of a minimum of five gallons of water for handwashing, and 30 gallons or twice the volume of the three-compartment sink, whichever is greater, of water for warewashing.P

(B) Class II and III mobile food units must have a water supply that provides sufficient water for food preparation, handwashing, warewashing or any other requirements as set forth in these rules. If warewashing is conducted on the unit, a minimum of 30 gallons or twice the volume of the three-compartment sink, whichever is greater, of water must be dedicated for this purpose. A minimum of five gallons of water must be provided for handwashing.P

(C) All mobile food units must be designed with integral potable and waste water tanks on board the unit. A mobile unit may connect to water and sewer if it is available at the operating location, however, the tanks must remain on the unit at all times. A mobile unit may not connect to a fresh water system without also connecting to an approved sewer system. A mobile food unit licensed prior to February 1, 2020 in which the water tanks and associated plumbing have been removed prior to that date is not required to reinstall the water system if the unit is connected to an approved water and sewer system.Pf

(D) Mobile food units that utilize potable and waste water storage tanks that are not integral to the unit must discontinue the use of these tanks by January 1, 2023.Pf

(E) When calculating the potable water supply tank capacity as required in this section, the volume of the hot water heater may not be included.

(F) All sinks must provide water under pressure of at least 20 PSI or provide for a continuous flow and may not use gravity as the sole means to create the pressure. Units licensed prior to February 1, 2020 are not required to meet this standard if hands can be effectively washed as required.Pf

(jjj) Add paragraph 5-401.11(C) to read: For a mobile food unit selling only beverages, such as coffee, espresso, or soda, and where most of the potable water supply is used in the product, the waste water retention tank may be at least one half the volume of the potable water storage tank. This determination must be made by the regulatory authority.

(kkk) Amend section 5-402.14 to read: Sewage and other liquid wastes shall be removed from a mobile food establishment at an approved waste servicing area or by a sewage transport vehicle in such a way that a public health hazard or nuisance is not created.Pf

(A) Mobile food units that generate only gray water liquid wastes may hand-carry those wastes to a specific disposal location approved by the regulatory authority.

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510

(B) The waste transport container must be designed and intended to hold and transport gray water without leaks or spills and have a capacity no greater than 20 gallons.Pf

(lll) Amend subparagraph 6-101.11(B)(2) to read: Walls and ceilings may be constructed of a material that protects the interior from the weather and windblown dust and debris. Benevolent meal sites, as defined in paragraph 1-201.10(B), are exempt from the requirement to provide ceilings or overhead protection.

(mmm) Amend paragraph 6-202.15(E) to read: Paragraph (D) of section 6-202.15 does not apply:

(A) If flying insects or other pests are absent due to the location of the establishment, the weather, or other limiting condition; and

(B) The establishment develops a pest management plan to control the presence of flying insects or other pests. The pest management plan must be approved by the regulatory authority prior to implementation.Pf

(nnn) Amend section 6-202.19 to read: Exterior walking and driving surfaces shall be graded to drain if required by law.

(ooo) Amend section 6-202.110 to read: Outdoor Refuse Areas, Drainage. Outdoor refuse areas shall be constructed in accordance with law and shall be designed and maintained to prevent the accumulation of liquid waste that results from the refuse and from cleaning the area and waste receptacles.

(ppp) Amend section 6-202.111 to read: Except under a domestic kitchen license issued by the Oregon Department of Agriculture, a private home, a room used as living or sleeping quarters, or an area directly opening into a room used as living or sleeping quarters may not be used for conducting food establishment operations.P

(qqq) Amend section 6-304.11 to read: If necessary to keep rooms free of excessive heat, steam, condensation, vapors, obnoxious odors, smoke, and fumes, mechanical ventilation of sufficient capacity shall be provided. For mobile food units, violations of this section shall be considered a priority foundation item.

(rrr) Amend section 6-402.11 to read:

(A) Except for paragraphs (B) through (F) of section 6-402.11, toilet rooms shall be conveniently located and accessible to employees during all hours of operation and shall be an integral part of the building.

(B) A food service establishment may be approved without an integral toilet room under the following conditions:

(i) An integral toilet room is not required by law; and

(ii) A toilet room is located within 500 feet of the food establishment; and

(iii) A written agreement is in place that allows the use of the toilet room; or

(iv) The food service establishment is located in an outdoor mall or shopping center.

(C) Toilet facilities for the customer are required only in establishments constructed or extensively remodeled after May 11, 1974,

(D) Food establishments limited to drive-in or handout service are not required to provide toilet rooms facilities for the customer.

(E) For mobile food units:

(i) On board toilet facilities are not applicable to most mobile food units. If the unit is not so equipped, then the mobile food unit must operate within one-quarter mile or a five-minute walk of an accessible restroom facility. New mobile food units first licensed on or after February 1, 2020 must be located within 500 feet of an accessible restroom. Mobile food units that operate on a designated route that do not stop at a fixed location for more than two hours during the workday, or are operating in conjunction with an event are exempt from this subparagraph.

(ii) Mobile food units that do not provide on board restroom facilities must have restroom facilities that shall be accessible to employees during all hours of operation. The restroom facilities must have a handwashing system that meets the requirements of sections 5-202.12, 6-301.11, 6-301.12, 6-301.20 and 6-302.11. Employees may use a restroom located in a private home or a portable toilet to satisfy this requirement.

(F) Food service establishments that are constructed in or adjacent to a single-family residence are not required to provide a separate restroom for employees, if a restroom in the residence is available during all hours of operation. The restroom facility must meet the requirements of sections 5-202.12, 6-301.11, 6-301.12, 6-301.20 and 6-302.11.

(sss) Amend section 6-501.111 to read: Controlling Pests. The premises shall be maintained free of insects, rodents, and other pests.Pf The presence of insects, rodents, and other pests shall be controlled to minimize their presence on the premises by:

(A) Routinely inspecting incoming shipments of food and supplies;

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 𝑐

(B) Routinely inspecting the premises for evidence of pests;

(C) Using methods, if pests are found, such as trapping devices or other means of pest control as specified under sections 7-202.12, 7-206.12, and 7-206.13;Pf and

(D) Eliminating harborage conditions.

(ttt) Amend section 6-501.115 to read: Prohibiting Animals.

(A) Except as specified in paragraph (B), (C), (D) and (E) of section 6-501.115, live animals may not be allowed on the premises of a food establishment.

(B) A food establishment shall permit the use of a service animal by an individual with a disability on its premises unless the service animal poses a direct threat to the health and safety of others.

(i) For purposes of section 6-501.115 the term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by modification of policies, practices, or procedures or by provision of auxiliary aids or services.

(ii) In determining whether a service animal poses a direct threat to the health or safety of others, a food establishment must make an individualized assessment, based on reasonable judgment that relies on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk.

(iii) A food establishment may ask an individual with a disability to remove a service animal from the premises if:

(I) The animal is out of control and the animal's handler does not take effective action to control it; or

(II) The animal is not housebroken.

(C) Live animals may be allowed in the following situations if the contamination of food; clean equipment, utensils, and linens; and unwrapped single-service and single-use articles can not result:

(I) Edible fish or decorative fish in aquariums, shellfish or crustacea on ice or under refrigeration, and shellfish and crustacean in display tank systems;

(II) Patrol dogs accompanying police or security officers in offices and dining, sales, and storage areas, and sentry dogs running loose in outside fenced areas;

(III) Pets in the common dining areas of group residences at times other than during meals if:

(I) Effective partitioning and self-closing doors separate the common dining areas from food storage or food preparation areas;

(II) Condiments, equipment, and utensils are stored in enclosed cabinets or removed from the common dining areas when pets are present; and

(III) Dining areas including tables, countertops, and similar surfaces are effectively cleaned before the next meal service.

(iv) In areas that are not used for food preparation, storage, sales, display, or dining, in which there are caged animals or animals that are similarly restricted, such as in a variety store that sells pets or a tourist park that displays animals.

(D) Live or dead fish bait may be stored if contamination of food; clean equipment, utensils, and linens; and unwrapped single-service and single-use articles can not result.

(E) Pet dogs may be allowed in outside seating areas of a food establishment under the following conditions:

(i) The food establishment prepares written procedures that include:

(I) A diagram of the outdoor area to be designated as available to consumers with pet dogs;Pf

(II) The establishment's procedure for ensuring that employees do not touch, pet or otherwise handle pet dogs and for immediately cleaning accidents involving dog waste. The procedure must also describe the location of materials and equipment necessary to clean up accidents involving dog waste;Pf and

(III) The establishment's procedure for notifying employees and consumers of the requirements of this paragraph.Pf

(ii) Pet dogs may not come into contact with serving dishes, utensils and tableware. Pet dogs are also not allowed on chairs, tables and other furnishings.Pf

(iii) Employees and consumers may not provide food to pet dogs.Pf

(iv) Pet dogs must be on a leash and under control of the consumer at all times.Pf

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 5105

(v) At no time may pet dogs be permitted to travel through the indoor or non-designated outdoor portions of the food establishment.Pf

(uuu) Amend subparagraph 7-202.12(A)(4) to read: Additional conditions that may be established by the regulatory authority;P and

(vvv) Add paragraph 8-101.10(C) to read: Plans submitted shall be reviewed and commented on by an environmental health specialist registered in accordance with ORS chapter 700.

(www) Amend section 8-103.10 to read:

(A) The Authority may grant a variance from requirements of this code as follows:

(i) Where it is demonstrated to the satisfaction of the Authority that strict compliance with the rule would be highly burdensome or impractical due to special condition or cause;

(ii) Where the public or private interest in the granting of the variance is found by the Authority to clearly outweigh the interest of the application of uniform rules; and

(iii) Where such alternative measures are provided which in the opinion of the Authority will provide adequate public health and safety protection.

(B) Such variance authority is not conferred upon any Local Public Health Authority notwithstanding contractual authority in administration and enforcement of the food service statutes and rules;

(C) The applicant must include all necessary information to support the variance request, which may include, but is not limited to, required testing, challenge data and research results;

(D) If a variance is granted, the regulatory authority shall retain the information specified under section 8-103.11 in its records for the food establishment;

(E) The Authority shall review variances at least triennially;

(F) Revocation or denial of the variance request shall be subject to the appeal process provided under ORS Chapter 183.

(xxx) Amend 8-103.11 to read: Documentation of Proposed Variance and Justification. Before a variance from a requirement of this code is approved, the information that shall be provided by the person requesting the variance and retained in the Authority's file on the food establishment includes:

(yyy)Add paragraph 8-103.11(D) to read: If required by the Authority, provide documentation that a recognized process authority has reviewed the variance request and approved the process. Any necessary or required training or documentation must be successfully completed prior to variance approval.Pf

(zzz) Amend 8-103.12 to read: Conformance with Approved Procedures. If the Authority grants a variance as specified in section 8-103.10, or a HACCP plan is otherwise required as specified under section 8-201.13, the permit holder shall:

(aaaa) Add paragraph 8-201.11(D) to read: Notwithstanding paragraphs (A) through (C) of section 8-201.11, vending machines having the sanitary approval of the National Automatic Merchandizing Association shall be exempt from the requirement to submit plans for review and approval.

(bbbb) Amend paragraph 8-302.14(A) to read: The name, mailing address, telephone, number, and signature of the person applying for the permit and the name, mailing address, and location of the food establishment;

(cccc) Amend paragraph 8-303.30(C) to read: Advisement of the applicant's right of appeal and the process and time frames for appeal that are provided under ORS chapter 183.

(dddd) Amend paragraph 8-304.10(A) to read: (A) At the time a permit is first issued, the regulatory authority shall provide to the permit holder information on how to obtain a copy of this code so that the permit holder is notified of the compliance requirements and the conditions of retention, as specified under section 8 304.11, that are applicable to the permit.

(eeee) Amend subparagraph 8-304.11(G)(2) to read: The regulatory authority directs the replacement to meet current code requirements after the food establishment has been unlicensed for a minimum of six consecutive months. This provision also applies to mobile food units that were licensed prior to February 1, 2020; or

(ffff) Amend paragraph 8-304.11(I) to read: Accept notices issued and served by the regulatory authority as may be authorized under ORS chapters 183 and 624; and

(gggg) Amend paragraph 8-304.11(J) to read: Be subject to the administrative, civil, injunctive, and criminal remedies as may be authorized under ORS chapters 183 and 624.

(hhhh) Amend paragraph 8-401.10(C) to read: For temporary food establishments:

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 ₺

(A) Except for subparagraph (C)(2) of section 8-401.10, the regulatory authority shall inspect at least once during the operation of a temporary food establishment.

(B) For benevolent single-event temporary food establishments, the regulatory authority shall either:

(i) Inspect; or

(ii) Provide a consultation.

(iiii) Amend paragraph 8-403.10(A) and (B) to read:

(A) Administrative information about the food establishment's legal identity, street and mailing addresses, type of establishment and operation as specified under 8-302.14(C), inspection date, and employee food handler certificates; and

(B) Specific factual observations of violative conditions or other deviations from this code that require correction by the permit holder including:

(i) Failure of the person in charge to demonstrate the knowledge of foodborne illness prevention, application of HACCP principles, and the requirements of this code as specified under section 2-102.11;

(ii) Failure of food employees, conditional employees, and the person in charge to report a disease or medical condition as specified under section 2-201.11;

(iii) Nonconformance with priority items or priority foundation items of this code;

(iv) Failure of the appropriate food employees to demonstrate their knowledge of, and ability to perform in accordance with, the procedural, monitoring, verification, and corrective action practices required by the regulatory authority as specified under section 8-103.12;

(v) Failure of the person in charge to provide records required by the regulatory authority for determining conformance with a HACCP plan as specified under subparagraph 8-201.14(D)(6); and;

(vi) Nonconformance with critical limits of a HACCP plan.

(jjjj) Amend section 8-403.20 to read: The regulatory authority shall specify on the inspection report form the time frame for correction of the violations as specified under sections 8-404.11, and 8-405.11.

(kkkk) Amend paragraph 8-405.11(B) to read: Considering the nature of the potential hazard involved and the complexity of the corrective action needed, the regulatory authority may agree to or specify a longer time frame, not to exceed 14 calendar days after the inspection, for the permit holder to correct violations of a priority item or priority foundation item or HACCP plan deviations.

(llll) Amend paragraph 8-501.20(C) to read: (C) Closing the food establishment by summarily suspending a permit to operate as provided under ORS chapter 624.

(mmmm) Amend paragraph 8-501.30(C) to read: (C) States that the suspected food employee or the permit holder may request an appeal hearing by submitting a timely request as provided under ORS chapter 183.

Note: Food Sanitation Rule document available at www.healthoregon.org/foodsafety

Statutory/Other Authority: ORS 624.041, ORS 624.355, ORS 616.902 & ORS 616.892
Statutes/Other Implemented: ORS 624.041, ORS 624.355, ORS 616.902 & ORS 616.892
History:
PH 26-2025, amend filed 12/30/2025, effective 01/01/2026
PH 67-2024, amend filed 06/24/2024, effective 06/24/2024
PH 11-2020, amend filed 01/30/2020, effective 02/01/2020
PH 29-2019, amend filed 12/19/2019, effective 01/01/2020
PH 12-2012, f. 8-30-12, cert. ef. 9-4-12
PH 3-2008, f. & cert. ef. 3-5-08
PH 14-2006, f. 6-27-06, cert. ef. 7-1-06
PH 1-2005, f. & cert. ef. 1-14-05
PH 15-2004, f. & cert. ef. 4-9-04
PH 5-2004(Temp), f. & cert. ef. 2-13-04 thru 7-30-04
OHD 11-2002, f. & cert. ef. 8-7-02
OHD 24-2001, f. 10-31-01, cert. ef. 1-1-02
HD 16-1995, f. 12-28-95, cert. ef. 1-1-96
HD 19-1994, f. & cert. ef. 7-1-94
HD 10-1992, f. 10-2-92, cert. ef. 10-5-92

3:23-cv-01833-AN
DEFENDANTS' EXHIBIT 510 и

Verified Correct Copy of Original 8/12/2025.

Robert Mahler, Pro Se
P.O. Box 7658
Salem, Oregon 97303
(503) 589-4878

ENTERED
AUG 0 5 2025
By: SDR

CLACKAMAS CIRCUIT COURT
AUG 5 '25 PH 2:45

IN THE CIRCUIT FOR THE STATE OF OREGON

FOR THE COUNTY OF CLACKAMAS

25CV44282

Robert Evans Mahler,               )  Case No. _____
                                   )
        Plaintiff,                 )  COMPLAINT FOR DAMAGES
                                   )
        v.                         )  Negligence; Intentional
                                   )
Bill Daggett, Does 1-5,            )  Infliction of Emotional
                                   )
        Defendants                 )  Distress; Theft by Conversion;
                                   )
                                   )  Filing Fee: ORS 21.160(1)(c)
                                   )
                                   )  CLAIM FOR $250,000.00 NOT
                                   )
                                   )  SUBJECT TO MANDATORY
                                   )
                                   )  ARBITRATION
                                   )
                                   )  JURY TRIAL REQUESTED
                                   )
                                   )

## PARTIES AND VENUE

Robert Mahler, Pro Se, brings this lawsuit against Defendant(s) Bill Daggett and Does 1-5. In support of these allegations, plaintiff states:

1. The plaintiff is a resident of the County of Marion, State of Oregon. The venue that is a most appropriate is Clackamas County, Oregon as defendant Bill Daggett at all material times

COMPLAINT                     1

25CV44282
CRI
Complaint
19373970

Verified Correct Copy of Original 8/12/2025.

herein has been a resident of Clackamas County, Oregon and the person who harmed plaintiff.

2.    This Court has subject matter jurisdiction over this action and venue is proper in this county under ORS 14.080(1) in that the action is being commenced in the county where defendant resides and where the cause of action arose.

## GENERAL ALLEGATIONS

3.    At all material times herein, plaintiff is the owner of personal property stored at defendant's small farm and residence located at 10456 S. Comer Creek, Mollala, Oregon. Defendant(s) agreed to store plaintiff's personal property for an indefinite period of time in exchange for a registered Doberman puppy and limited use of plaintiff's 5 ton military cargo truck, four 5 ton cargo truck jack stands, two free standing security safes, an Aljo 5th wheel travel trailer, job boxes, multiple plastic totes, emergency clothing, tools, medical supplies, and food.

4.    After multiple attempts to secure and retrieve his personal property, plaintiff filed a police theft by conversion report #24-40541 with Marion County Sheriff on August 13, 2024. Marion County Sheriff Officer White reported to plaintiff, after speaking with defendant Daggett, that defendant Daggett had disposed of all of plaintiff's personal property without plaintiff's permission and or notice.

5.    Defendant Daggett consistently refused to allow plaintiff access to verify and inspect that his personal property was still located at defendant's home, intact, and in the case of mechanical oriented property, such as safes and vehicles, in

COMPLAINT                                    2

working order. At no time did defendant contact plaintiff directly to ask plaintiff to remove plaintiff's property.

6.    All of plaintiff's personal property that was stored at defendant's home was to be used to prepare and develop a Civilian Emergency Response Team (CERT) for Mt. Angel city.

7.    Plaintiff suffers disabilities from advanced osteo-arthritis, left-sided hemiplegia as the result of a C-3 cervical fracture, vasovagal syncope, left and right knee implant prosthetics, and right hip surgery. As a result of plaintiff's disabilities, he has used a service dog for 30+ years. Defendant(a) knew of plaintiff's infirmities and insisted that plaintiff not receive help moving his property from defendant's home. Indeed, defendant knew where plaintiff lives and made no effort to contact plaintiff nor return plaintiff's property.

8.    Defendant(s) stole plaintiff's property in retaliation for defendant's wife, Connie Daggett, fleeing defendant, moving in with another man, then divorcing defendant Bill Daggett. Defendant's ex-wife, Connie Daggett, has an out of wedlock son who she abandoned and was raised by a family friend. Defendant(s) also retaliated against plaintiff because of legal difficulties plaintiff was experiencing by allowing defendant(s) to store firearms in plaintiff's safes. On August 13, 2024, plaintiff discovered that defendant(s) had either stole, sold, or gifted all of plaintiff's personal property by filing a theft report with the Marion County Sheriff's office.

9.    Defendant(s) were aware that plaintiff requested return of his personal property several times personally and through intermediaries. Defendant(s) refused to return plaintiff's personal property, refused to allow plaintiff and plaintiff's

COMPLAINT                                    3

Verified Correct Copy of Original 8/12/2025.

representatives to retrieve plaintiff's property, and refused to pay plaintiff for the purchase of a Doberman puppy. As a result of defendant's actions plaintiff was deprived of his personal property, the use of his property, and the value of his property.

## CAUSES OF ACTION

10. Plaintiff is entitled to recover damages from defendant(s) jointly and each of them based on the theories of liability hereinafter enumerated in Counts I through 3, and under such other theories of liability as may be appropriate based upon the facts as alleged herein or as revealed during discovery.

## FIRST CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

11. Plaintiff is entitled to recover damages from defendants jointly and each of them based on the theories of liability hereinafter enumerated in Counts I through 3, and under such other theories of liability as may be appropriate based upon the facts as alleged herein or as revealed during discovery.

12. Plaintiff re-alleges and incorporates by reference paragraphs 1-11 pursuant to this cause of action.

13. Plaintiff was informed on August 13, 2024 by Marion County Sheriff's office that defendant(s) had disposed of plaintiff's personal property. Plaintiff's personal property consisted of a 5 ton military cargo truck, four 5 ton cargo truck jack stands, two free standing security safes, an Aljo 5th wheel travel trailer, job boxes, multiple plastic totes, emergency clothing, tools, medical supplies, and food.

14. Defendant(s) agreed to keep plaintiff's personal property safe and in good running order in the matters of plaintiff's Aljo

COMPLAINT                                    4

Verified Correct Copy of Original 8/12/2025

5th wheel travel trailer and 5 ton military cargo truck.  In the matters of plaintiff's two free standing security safes, job boxes, multiple plastic totes, emergency clothing, tools, medical supplies, and food, defendant(s) agreed to keep plaintiff's personal property safely contained and under cover.

15.  Defendant's theft and disposal of plaintiff's personal property caused plaintiff to suffer economic and emotional distress.

16.  On, or about, August 13, 2024, defendant's deliberate conduct, by disposing of plaintiff's personal property in an unlawful manner, caused plaintiff to suffer emotional distress which will continue into the foreseeable future.

17.  As a direct and proximate result of the intentional acts of all defendant(s) as alleged, plaintiff has suffered economic physical damages as more specifically set forth below.

## SECOND CLAIM FOR RELIEF
## NEGLIGENCE

18.  Plaintiff re-alleges and incorporates by reference paragraphs 1-17 pursuant to this cause of action.

19.  Defendant(s) had a duty to plaintiff to provide plaintiff's vehicles and personal property with standards of maintenance and care.

20.  Defendant(s) breached their duty to plaintiff by failing to inform the plaintiff of the changes in the care, maintenance, and storage of plaintiff's personal property and vehicles.

21.  By reason of defendant's conduct and failures, plaintiff suffers intentional infliction of emotional distress ,

COMPLATNT                                    5

Verified Correct Copy of Original 8/12/2025.

Verified Correct Copy of Original 8/12/2025

22.   Plaintiff avers that defendants' breach of duty and negligence was a proximate cause of intentional infliction of emotional distress to plaintiff that resulted from failures by defendant(s) to provide agreed upon care, maintenance, and storage of plaintiff's personal property and vehicles.

## THIRD CLAIM FOR RELIEF

## THEFT BY CONVERSION

23.   Plaintiff re-alleges and incorporates by reference paragraphs 1-22 pursuant to this cause of action.

24.   Plaintiff avers that defendant(s) breached their duty to him by wantonly injuring and damaging plaintiff by not providing applicable standards of care, maintenance, and without consent of plaintiff, disposed, sold, and or stole plaintiff's personal property and vehicles.  For example:

a. Defendant(s) repeatedly forbade plaintiff, and his representatives, access to defendant's farm property to allow plaintiff to repair, restore, and remove plaintiff's personal property.

b. Defendant(s) stole, converted, damaged, and otherwise removed plaintiff's personal property of which he has rightful ownership and possession .

c. Defendant(s) converted plaintiff's personal property including but not limited to vehicles, 5th wheel travel trailer, 4 heavy duty 5 ton cargo truck jack stands, tools, job boxes, two free standing security safes, job boxes, multiple plastic totes, emergency clothing, tools, medical supplies, and food by wrongful and willful means to plaintiff's damages.

COMPLAINT                                    6

Verified Correct Copy of Original 8/12/2025.

d. On, or before, August 13, 2024 defendant(s) notified Marion County Sheriff's office that defendant(s) had disposed of plaintiff's vehicles and personal property.

25. As a result of the defendant's theft and conversion of plaintiff's personal property, plaintiff has been damaged to an extent not presently exactly known, but not less than $45,000.00.

## PRAYER

WHEREFORE, plaintiff prays judgment against the defendant(s), jointly and severally, as follows:

a.    For economic damages, $45,000.00;

b.    For general damages, including damages for emotional distress, humiliation and mental anguish $250,000.00;

c.    The costs and disbursements of this action;

d.    Such other relief as the Court deems proper and just.

_Robert Mahler_    Dated _8/5/25_

Robert Mahler, Pro Se
P.O. Box 7658
Salem, Oregon 97303

(503)589-4878

COMPLAINT                                    7

DEFENDANTS' EXHIBIT 511g