Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER, | Case no. 3:23-cv-1833-AN |
| Plaintiff, | DEFENDANTS' LAY WITNESS STATEMENT |
| vs. | |
| JINDI OU; STEADY STREAM, INC.; MIZUMI BUFFET; LUCY CHEN; and DOES 1-10, | |
| Defendants. | |

Pursuant to the Court's February 20, 2026 Trial Management Order and Supplemental Jury Trial Management Order Regarding the JERS System, and on the 21st day before the pretrial conference in this action as ordered, defendants, by and through counsel, hereby provide this Court their lay witness statement for trial.

1

**1.** Defendants' lay witness is Lucy Chen, one of the named defendants, and the owner and manager of the restaurant at issue.

**2.** Her estimated time estimate for testimony is two hours as to direct, cross, and re-direct examination.

**3.** The complete substance of her testimony will be as follows:

Defendants' business is a highly reputable, clean and healthy, professionally run, and well-established local Chinese buffet restaurant in Tigard, Oregon. Plaintiff was a "regular" at defendants' restaurant who had been a customer three to four times a month for most months over the last six years. Every time plaintiff had come into the restaurant, he had acted like he was at home, he had been treated very well and in a friendly and respectful fashion, and the staff knew exactly which table he preferred and what drink he liked to order.

The majority of times plaintiff had come into the restaurant he would bring the same gold colored pet dog with him, an animal which simply wears a collar with a leash attached and which usually sits under or near the table where plaintiff eats. The dog always walks behind him and never leads him anywhere. Nothing about the animal indicates in any manner that it is specially trained nor does it wear any vest or other signifying emblem, badge, or device indicating it is anything other than simply a person's pet, which is exactly what it acts like throughout every visit, including on the date plaintiff has identified as the date of the incident

on which his <u>Complaint</u> is based. Over the course of six years of plaintiff being at the restaurant with his dog, plaintiff had never indicated or mentioned to any staff member that the dog was a service or assistance dog.

On March 4, 2022, the day when plaintiff came into the restaurant and the day which he refers to in his lawsuit as the date of the incident, he arrived around 2:00 p.m. as usual while Ms. Chen was assisting a customer with their payment. Before Ms. Chen had a chance to greet him like she normally would, plaintiff walked straight to the hot food counter with his dog to get food. As plaintiff was helping himself to food from the buffet, another customer noticed plaintiff's dog standing with its head up, leaning directly on the buffet counter, sniffing a tray of spring rolls. The concerned customer informed the staff.

One of the staff members then said to plaintiff that a customer said his dog was too close to the food. A different customer then approached Ms. Chen and noted that the dog's head was still on the buffet counter. When Ms. Chen turned around, she saw that the dog's head was indeed on the food counter, almost as high as a child of five or six right where the food was. She immediately walked over to plaintiff and politely told him that his dog was too close to the food, and that some other customers had complained. She asked him if he could simply keep the dog under the table like he usually did. Plaintiff gave no verbal response to her statement and simply took his dog back to his seat.

Out of concern for the customers' health and hygiene, Ms. Chen then arranged for the chef to throw away all six trays of food and remake them. Instead of sitting down to eat, however, plaintiff then immediately walked over to the sushi counter with his dog. As he passed by, Ms. Chen then offered to hold his dog while he got some sushi. He ignored her completely, didn't even make eye contact, and mumbled something under his breath as he walked away, which she couldn't make out. Plaintiff walked by the food again with his dog, stopping briefly to chat with another customer for about five minutes before finally leaving the restaurant. Throughout his entire visit, even when Ms. Chen spoke directly to him, plaintiff never once looked at her or said a single word. From the moment he entered to when he left, it couldn't have been much more than ten to fifteen minutes.

Defendants never ordered plaintiff to leave the restaurant or to take the dog out of the restaurant. Defendants never commanded or instructed or demanded of plaintiff anything in any fashion. Defendants encouraged plaintiff to stay and enjoy his meal with his dog and asked him simply to refrain from allowing his dog to try to get food directly off the buffet for health and hygiene reasons. It is a direct threat to the health and safety of the customers of the restaurant to have an animal touching or near the food in the buffet, and numerous state and county health rules, including several via posted signs in the restaurant, reflect that it is both unhealthy and unsafe for the dog to be touching or near the food in the buffet.

4

Throughout the March 4th visit, no defendant or agent made any physical contact with plaintiff's dog or with plaintiff himself, nor did any defendant or agent of defendant expose plaintiff or plaintiff's dog to any risk of harm in any manner.

Over the course of six years of plaintiff having been at the restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, it has always been clear that no work or tasks have been or are ever being performed by plaintiff's dog at all, much less any work or tasks directly related to any disability of plaintiff's.

At no time over the course of six years of plaintiff being at the restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog ever a) assisted plaintiff with vision issues or navigation problems; b) alerted plaintiff to the presence of people or sounds; c) provided non-violent protection or rescue work; d) pulled any wheelchair or other device; e) assisted plaintiff during any seizure or episode; f) alerted plaintiff to the presence of allergens or toxins; g) retrieved items such as medicine or other objects for plaintiff; h) provided any physical support or assistance with any mobility, balance, or stability issues plaintiff has had; or i) assisted plaintiff with any psychiatric or neurological disability by preventing or interrupting impulsive or destructive behaviors.

At no time over the course of six years of plaintiff having been at the restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog shown any sign whatsoever of being specially trained to assist plaintiff with any disability and it is clearly apparent that the animal is not trained in that or in any respect.

4. Ms. Chen's testimony is also supported by her sworn declaration previously submitted by defendants in conjunction with their summary judgment motion, such document being attached hereto and incorporated in full herein.

DATED: April 8 , 2026

By: _____
Geordie Duckler, OSB #873780
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ROBERT EVANS MAHLER, | ) Case no. 3:23-cv-1833-AR |
| Plaintiff, | ) |
| | ) AFFIDAVIT OF LUCY CHEN |
| | ) IN SUPPORT OF |
| vs. | ) DEFENDANTS JINDI OU, |
| | ) STEADY STREAM, INC., |
| JINDI OU; STEADY STREAM, INC.; | ) MIZUMI BUFFET, AND LUCY |
| MIZUMI BUFFET; LUCY CHEN; | ) CHEN'S MOTION FOR |
| and DOES 1-10, | ) SUMMARY JUDGMENT |
| | ) |
| Defendants. | ) |

STATE OF OREGON    )
                                        ) ss.
County of Multnomah    )

I, Lucy Chen, do hereby attest and declare:

1

1. I am one of the named defendants in the instant civil action and am the owner and operator of the business which plaintiff has named in his suit. My business is a highly reputable, clean and healthy, professionally run, and well-established local Chinese buffet restaurant in Tigard, Oregon.

2. I am aware of plaintiff as a "regular" at my restaurant who has been a customer for the last six years, a period as long as I myself have worked at the restaurant. He sometimes frequented our restaurant two to three times a month. Every time plaintiff has come in, he has acted like he was at home, he has been treated very well and in a friendly and respectful fashion, and staff knows exactly which table he prefers and what drink he likes to order.

3. The majority of times plaintiff has come into the restaurant he brings the same gold colored dog with him, an animal which simply wears a collar with a leash attached and which usually sits under or near the table where plaintiff eats. The dog usually walks behind him and doesn't lead him anywhere. Nothing about the animal indicates in any manner that it is specially trained nor does it wear any vest or other signifying emblem, badge, or device indicating it is anything other than a person's pet, which is exactly what it acts like throughout every visit, including on the date in question. Over the course of six years of plaintiff being at my restaurant with his dog, plaintiff has never indicated or mentioned to myself or any staff member that the dog is a service or assistance dog.

2

4.    On March 4, 2022, the day when plaintiff came into our restaurant and the day which he refers to in his lawsuit as the date of the incident, he arrived around 2:00 p.m. while I was assisting a customer with their payment.

5.    Before I had a chance to greet him like I normally do, he walked straight to the hot food counter with his dog to get food.

6.    As plaintiff was helping himself to food from the buffet, another customer noticed plaintiff's dog standing with its head up, leaning directly on the buffet counter, sniffing a tray of spring rolls. The concerned customer informed our staff.

7.    One of my staff members then said to plaintiff that a customer said his dog was too close to the food. A different customer then approached me and noted that the dog's head was still on the buffet counter.

8.    When I turned around, I saw that the dog's head was indeed on the food counter, almost as high as a child of five or six right where the food was. I immediately walked over to plaintiff and politely said to him that his dog was too close to the food, and that some other customers had complained. I asked him to please keep his dog under the table like he usually had done in the past.

9.    Plaintiff gave no verbal response to my statement and simply took his dog back to his seat.

3

10. For the health and safety of other customers, I arranged for the chef to throw away all six trays of food and remake them. Instead of sitting down to eat, however, plaintiff then immediately walked over to the sushi counter with his dog. As he passed by, I offered to hold his dog while he got some sushi. He ignored me completely, didn't even make eye contact, and mumbled something under his breath as he walked away, which I couldn't make out.

11. The customers at tables B4, B5, and B6 overheard him and appeared to have said something to him, though I couldn't understand it either. Soon after, plaintiff was talking loudly with the customer at table B5. Just as the situation was escalating, I heard the phone ring and hurried to the front to answer it. The argument seemed to quiet down after that. Still visibly upset, plaintiff eventually walked by with his dog, stopping briefly to chat with the customer at table C2 for about five minutes before finally leaving. Throughout his entire visit, even when I spoke directly to him, he never once looked at me or said a single word. From the moment he entered to when he left, it couldn't have been much more than ten to fifteen minutes.

12. As a business owner, I especially welcome returning customers, so I never ordered plaintiff to leave the restaurant or to take the dog out of the restaurant. I never commanded or instructed or demanded of him anything in any fashion. To the contrary, I encouraged him to stay and enjoy his meal with his dog

and asked him simply to refrain from allowing his dog to try to get food off the buffet for health and hygiene reasons.

13.    Throughout the March 4th visit, neither I nor any of my staff made any physical contact with plaintiff's dog or plaintiff himself, nor did either I or any staff member expose plaintiff or his dog to any risk of harm in any manner.

14.    Over the course of six years of plaintiff being at my restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, I did not see any work or tasks being performed by plaintiff's dog at all, much less any work or tasks directly related to any disability of plaintiff's.

15.    At no time over the course of six years of plaintiff being at my restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog ever a) assisted plaintiff with vision issues or navigation problems; b) alerted plaintiff to the presence of people or sounds; c) provided non-violent protection or rescue work; d) pulled any wheelchair or other device; e) assisted plaintiff during any seizure or episode; f) alerted plaintiff to the presence of allergens or toxins; g) retrieved items such as medicine or other objects for plaintiff; h) provided any physical support or assistance with any mobility, balance, or stability issues plaintiff has had; or i) assisted plaintiff with any psychiatric or neurological disability by preventing or interrupting impulsive or

5

destructive behaviors.

16.    At no time over the course of six years of plaintiff being at my restaurant with his dog, and throughout the March 4th visit no differently than with any other visit, has the dog shown any sign whatsoever of being specially trained to assist plaintiff with any disability. I am not aware of it as a service dog.

17.    I am competent to testify to the foregoing of my own personal knowledge, except for those matters stated upon information and belief, which such matters I do believe to be true.

Executed this 30 day of September, 2024, at Portland, Oregon.

I declare under penalty of perjury under the laws of the United States and of the state of Oregon that the foregoing is true and correct.

_____
Lucy Chen

Submitted by:
Geordie Duckler, OSB #873780
831 SW Hume St.
Portland, Oregon 97219
Telephone: (503) 546-8052
Facsimile: (503) 841-6278
geordied@animallawpractice.com
Attorney for Defendants JINDI OU,
STEADY STREAM, INC., MIZUMI
BUFFET, and LUCY CHEN

6

## CERTIFICATE OF SERVICE

I certify that on the 8th day of April, 2026, I served a true and correct copy of DEFENDANTS' TRIAL MEMORANDUM; DEFENDANTS' LAY WITNESS STATEMENT; DEFENDANTS' PREMARKED EXHIBIT LIST on:

Kevin T Lafky
Lafky & Lafky
429 Court St NE
Salem OR  97301
klafky@lafky.com

by mailing and emailing said documents via first class mail in a sealed envelope with postage prepaid to the address shown above, and deposited in the U.S. Mail at Portland, Oregon, on the 8th day of April, 2026.

GEORDIE DUCKLER, P.C.

By:_____
Geordie Duckler, OSB No. 873780
Attorney for defendants

PAGE 1 - CERTIFICATE OF SERVICE