Kevin T. Lafky, OSB#852633
klafky@lafky.com
**LAFKY & LAFKY**
429 Court Street NE
Salem, OR 97301
Tel: 503.585.2450
Fax: 503.585.0205
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| ROBERT EVANS MAHLER,<br><br>Plaintiff,<br><br>vs.<br><br>JINDI OU; STEADY STREAM, INC.; MIZUMI BUFFET; LUCY CHEN; and DOES 1-10,<br><br>Defendants. | Case No. 3:23-cv-1833-AN |

## PLAINTIFF'S TRIAL MEMORANDUM

Plaintiff provides the following summary of material facts, summary of factual and legal contentions, and a summary of the elements of each claim and defense for the Court's use and review prior to trial in this matter. Trial is scheduled to commence on May 19, 2026, and estimated to last two days.

Page 1 of 10 – PLAINTIFF'S TRIAL MEMORANDUM

The parties' respective versions of the facts share similarities, but their respective understandings of the particular facts and motivations differ. Plaintiff sets forth his understanding of the agreed-upon facts and factual contentions below, separately.

<u>SUMMARY OF FACTS</u>

Plaintiff, Robert "Bob" Evans Mahler, at all times relevant, had a disability and used a service dog named "Guliet" to assist with activities of daily living. Mr. Mahler occasionally visited Mizumi Buffet, a restaurant in Portland, Oregon ("Mizumi's" or "the restaurant"). "Mizumi Buffet" is the assumed business name of Steady Stream Inc, an Oregon corporation. Defendant Jindi Ou serves as Steady Stream's president and defendant Lucy Chen serves as Steady Stream's secretary and as Mizumi's owner/operator.

On or around March 4, 2022, Mr. Mahler visited Mizumi's with Guliet. Mr. Mahler went to the buffet to prepare a plate of food for himself and had Guliet with him on a leash when he approached the buffet. Ms. Chen and Mr. Mahler interacted with one another regarding the presence of the dog. The parties' descriptions of those interactions differ. Mr. Mahler exited the restaurant visibly upset. The parties' explanations as to why Mr. Mahler left and whether his leaving was voluntary or compulsory also differ.

<u>SUMMARY OF FACTUAL CONTENTIONS</u>

Based on the record and arguments presented thus far, Plaintiff anticipates that Defendant will proffer that Guliet was too close to the food, that customers had complained, and that Ms. Chen asked Mr. Mahler to keep his dog under a table. Mr. Mahler contends that Guliet was wearing her Ask to Pet / Service Dog vest, was well-behaved, and was a reasonable distance from the food when Ms. Chen approached him and told him he could not have a dog and that he

Page 2 of 10 – PLAINTIFF'S TRIAL MEMORANDUM

needed to leave.  Mr. Mahler contends that – had Guliet placed her head too closely to food – he would have corrected the behavior immediately.

Defendants contend that Ms. Chen told Mr. Mahler that his dog was too close to the food and asked him to keep his dog under the table.  Plaintiff contends that Ms. Chen walked over to him and said, "No dog."

Defendants contend that Mr. Mahler ignored Ms. Chen and went to his seat.  Mr. Mahler contends that he gave Ms. Chen his plate of food and followed her to the front of the restaurant where tried to explain the law to Ms. Chen, including what she was legally permitted to ask about Guliet and that the law required her to allow him to stay and eat, but that Ms. Chen did not listen and Mr. Mahler and Guliet left the restaurant.

Mr. Mahler was extremely embarrassed and distressed by being singled-out in public and being told loudly that he was unwelcome and had to leave because of his disability.

## SUMMARY OF LEGAL CONTENTIONS

Plaintiff alleges negligence, gross negligence, and failure to accommodate under the Americans with Disabilities Act as Amended ("ADAAA").  The primary legal contention is whether there was a direct threat that served as a quasi-exception to the requirement to provide accommodation under the ADAAA.  That legal contention is highly dependent upon the jury's factual findings regarding the defendants' intentions.

## ELEMENTS OF EACH CLAIM

1. <u>Negligence</u>

*<u>Generally</u>.*  Courts generally recognize a claim for negligence as the imposition of liability stemming from conduct that "unreasonably created a foreseeable risk to a protected interest of the kind of

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

harm that befell the plaintiff." Stone v. Witt, 374 Or. 524, 532-533, 581 P.3d 919 (2025) (en banc)

quoting Fazzolari v. Portland School District No. 1J, 303 Or. 1, 17, 734 P.2d 1326 (1987); see also

Scott v. Kesselring, 370 Or. 1, 12, 513 P.3d 581 (2022).  The law seeks to define "the factual

circumstances in which a person must take care with regard to the interests of others and the

liability that flows from a failure to do so." Stone, 374 Or. at 532 (discussing the fundamental

principles of negligence). The factual circumstances under which a person must exercise care

with due regard for another's interests depend upon whether that interest is the kind protectable

under the law. Id.  In case law, the courts typically refer to such an interest as a "legally protected

interest." Id.  One of the most commonly explored "legally protected interests" is the "legally

protected interest to be free from physical harm at the hands of another." Id., citing Philibert v.

Kluser, 360 Or. 698, 703, 385 P.3d 1038 (2016).

*__Legally Protected Interest__*. Once the legally protected interest is defined, the question becomes

"whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected

interest of the plaintiff." Stone, 374 Or. at 533.  The jury must decide "whether the defendant's

conduct was unreasonable in light of foreseeable risks of harm and whether the plaintiff's injury

was among the types of foreseeable harms that made the defendant's conduct unreasonable." Id.,

at 534, citing Piazza v. Kellim, 360 Or. 58, 377 P.3d 492 (2016).

In the present matter, the plaintiff had a legally protected interests in being free from

discrimination because of his disability, enumerated in the plaintiff's Complaint as the "duty to

plaintiff to provide him with the applicable standards of his civil rights" (Complaint, ¶ 19) breached

by "informing plaintiff that he could not have his service dog accompany him, could not eat at

their restaurant, and ordering him to leave." Complaint, ¶ 20; See also ORS 659A.142

Page 4 of 10 – PLAINTIFF'S TRIAL MEMORANDUM

(discrimination against individual in a place of public accommodation because of disability); 42 U.S.C. § 12101 et seq.

***Negligence per se***. A statute can provide the standard of care expected of the alleged tortfeasor in a negligence claim. Moody v. Oregon Community Credit Union, 317 Or. App. 233, 240-243, 505 P.3d 1047 (2022). Here, several laws support the proposition that a restaurant must make reasonable modifications to enable individuals with a disabilities to enjoy the same services, facilities, privileges, and advantages as others, i.e.: 42 U.S.C. § 12181(7)(B) (a restaurant is a public accommodation); 42 U.S.C. § 12182(2)(A)(ii) ("failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations"); 42 U.S.C. § 12182(2)(A)(iii) ("failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids or services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden"); and ORS 659A.142 ("It is an unlawful practice for any place of public accommodation *** or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability"). These laws are pertinent to the present

Page 5 of 10 – PLAINTIFF'S TRIAL MEMORANDUM

matter for two reasons: (1) they set the standards for the place of public accommodation; and (2) they clarify that the standard extends to a person acting on behalf of such a place.[1]

2. <u>Gross Negligence</u>

Gross negligence focuses on the alleged tortfeasor's state-of-mind and "is characterized by conscious indifference to or reckless disregard of the rights of others." Garrison v. Pacific Northwest Bell, 45 Or. App. 523, 532, 608 P.2d 1206 (1980). The jury must decide whether the "defendant's conduct, when measured objectively, reveals a 'state of mind indicative of an indifference to the probable consequences of one's acts.'" Id. As the court described in Garrison, "This state of mind has been described as an 'I don't care what happens' attitude." Id., citing Bottom v. McClain, 260 Or. 186, 191-192, 489 P.2d 940 (1971) and Hill v. Garner, 277 Or. 641, 646, 561 P.2d 1016 (1977).

3. <u>Failure to Accommodate under the ADAAA</u>

*<u>Generally</u>*. Pursuant to 28 C.F.R. § 36.302(c)(1), "Generally, a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.201(a).

---

[1] Thus far, there has not been any argument that a restaurant is not a place of public accommodation. For purposes of reference, ORS 659A.400 defines a place of public accommodation as, "Any place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise."

Page 6 of 10 – PLAINTIFF'S TRIAL MEMORANDUM

*Out-of-Control Animals*. The exception to the foregoing mandate is if there is a direct threat (discussed below) or if "[t]he animal is out of control and the animal's handler does not take effective action to control it…." 28 C.F.R. § 36.302(c)(2)(i).  The service animal must be under the handler's control, which means the "service animal shall have a harness, leash, or other tether, unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, lease, or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control (e.g., voice control, signals, or other effective means)." 28 C.F.R. § 36.302(c)(4).

*Permissible Inquiries Regarding a Service Animal*. When evaluating whether the animal (in this case, Guliet) was a "service animal" within the meaning of the statute, the place of public accommodation is prohibited from asking the nature or extent of an individual's disability but "may as if the animal is required because of a disability and what work or task the animal has been trained to perform." 28 C.F.R. § 36.302(c)(6).

*Exception When Readily Apparent Animal Trained to do Work/Tasks*. If "it is readily apparent that an animal is trained to do work or perform tasks for an individual with a disability (e.g., the dog is observed guiding an individual who is blind or has low vision, pulling a person's wheelchair, or providing assistance with stability or balance to an individual with an observable mobility disability)" then the law prohibits the public accommodation from making the aforementioned inquiries. 28 C.F.R. § 36.302(c)(6).

*Access to Areas of Public Accommodation*. If an individual with a disability has a service animal with them, they "shall be permitted to be accompanied by their service animals in all areas of a place

Page 7 of 10 – PLAINTIFF'S TRIAL MEMORANDUM

of public accommodation where members of the public, … customers, patrons=, or. Invitees, as relevant, are allowed to go." 28 C.F.R. § 36.302(c)(7).

***Opportunity to Dine without Animal***. If defendant properly excluded the plaintiff's service animal from the restaurant, "it shall give the individual with a disability the opportunity to obtain goods, services, and accommodations without having the service animal on the premises." 28 C.F.R. § 36.302(c)(3).

ELEMENTS OF EACH DEFENSE

## 1. Comparative Fault

When a plaintiff's own negligence contributes to his injury, he can still recover "so long as the defendant's negligence was greater than the plaintiff's negligence; however, the plaintiff's recovery is diminished in proportion to his or her own negligence." Miller v. Agripac, Inc., 322 Or. App. 202, 209, 518 P.3d 957 (2022). ORS 31.600(2), regarding comparative negligence, states, "The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection."

Comparative fault can apply to gross negligence claims. DeYoung v. Fallon, 104 Or. App. 66, 70, 798 P.2d 66 (1990). If, however, the defendant engaged in willful misconduct, reducing plaintiff's award for his comparative fault would be inappropriate. See e.g. Hampton Tree Farms, Inc. v. Jewett, 158 Or. App. 376, 395, 974 P.2d 738 (1999), rev. denied, 329 Or. 61,

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

994 P.2d 120 (1999); see also Shin v. Sunriver Preparatory School, Inc., 199 Or. App. 352, 376, 111 P.3d 762 (2005), rev. denied, 339 Or. 406, 122 P.3d 64 (2005).

The court may require the jury to make special findings assigning percentage of fault to each of the parties. Hammagren v. Wald Construction, Inc., 274 Or. 267, 545 P.2d 859 (1976).

2. Direct Threat

A public accommodation is not required to permit an individual to participate in or benefit from its goods, services, facilities, privileges, advantages and accommodations when that individual poses a direct threat to the health or safety of others." 28 C.F.R. § 36.208(a). To determine whether a direct threat exists, however, "a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices or procedures or the provisions of auxiliary aids or services will mitigate the risk." 28 C.F.R. § 36.208. The place of public accommodation must make a risk assessment based on medical or other objective evidence and a mere belief that an individual poses a direct threat is not enough. See e.g., Reaves v. Immediate Medical Care, P.A., M.D., 770 F.Supp.3d 1322 (M.D. Fla. 2025). "This determination must be based on actual risks and not on mere speculation, stereotypes or generalizations." 28 C.F.R. §301(b); Tamara v. El Camino Hospital, 964 F. Supp.2d 1077, 1085 (N.D. Cal. 2013). The court in Tamara also noted that "the requirement of an individualized assessment requires that the public accommodation look into each particular circumstance to determine 'what modifications, if any, [are] plausible to

LAFKY & LAFKY
429 Court Street NE, Salem, OR 97301
www.lafky.com • info@lafky.com • T. 503.585.2450 • F. 503.585.0205

accommodate Plaintiff's disability.'" Id., citing Shultz By and Through Shultz v. Hemet Youth Pony League, Inc., 943 F. Supp. 1222, 1225 (C.D. Ca. 1996).

Perhaps most importantly, "it is clear that ultimately the entity asserting a 'direct threat' as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others." Lockett v. Catalina Channel Exp., Inc., 406 F.3d 1061 (9th Cir. 2007) (emphasis added), citing Bragdon v. Abbott, 524 U.S. 624, 649-650, 118 S.Ct. 2196 (1998).

DATED this April 8, 2026.

/s/ *Kevin T. Lafky*
Kevin T. Lafky, OSB#852633
klafky@lafky.com
**LAFKY & LAFKY**
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I certify that on the 8th day of April 2026, I served a true and correct copy of the foregoing on Geordie Duckler, attorney for defendants through the court's electronic filing system.

DATED this April 8, 2026.

/s/ Daemie M. Kim
Daemie M. Kim, OSB#123624
dkim@lafky.com
**LAFKY & LAFKY**
*Attorneys for Plaintiff*

Page 10 of 10 – PLAINTIFF'S TRIAL MEMORANDUM